UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. 16CR2892-JAH |
| | ) | |
| VS. | ) | SAN DIEGO, CALIFORNIA |
| | ) | |
| TYRONE CEDRIC DUREN, | ) | MONDAY, |
| JENNIFER LYNN DUREN, | ) | MARCH 19, 2018 |
| | ) | 11:22 A.M. |
| DEFENDANTS. | ) | |
| _____ | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTION HEARING

BEFORE THE HONORABLE JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

REPORTED BY:  CAMERON P. KIRCHER
              CSR NO. 9427, RPR, CRR, RMR
              333 W. BROADWAY, SUITE 420
              SAN DIEGO, CALIFORNIA  92101
              E-MAIL:  CPKIRCHER@GMAIL.COM

COMPUTER-AIDED TRANSCRIPTION

1    APPEARANCES:

2    FOR THE GOVERNMENT:

3                          ADAM BRAVERMAN, U.S. ATTORNEY
                           BY:  KEVIN M. RAPP, ESQ.
4                          ASSISTANT U.S. ATTORNEY
                           880 FRONT STREET
5                          SAN DIEGO, CALIFORNIA  92101

6                          U.S. ATTORNEY, DOJ
                           BY:  ABBIE BROUGHTON MARSH, ESQ.
7                          40 N. CENTRAL
                           PHOENIX, ARIZONA  85004

8

9    FOR DEFENDANT TYRONE DUREN:

10                         JOHN D. KIRBY
                           ATTORNEY AT LAW
11                         110 WEST A STREET
                           SUITE 100
12                         SAN DIEGO, CALIFORNIA  92102

13   FOR DEFENDANT JENNIFER DUREN:

14                         ARENDSEN CANE MOLNAR, LLP
                           BY:  HAMILTON E. ARENDSEN, ESQ
15                         550 WEST C STREET
                           SUITE 1150
16                         SAN DIEGO, CALIFORNIA  92101

17

18

19

20

21

22

23

24

25

SAN DIEGO, CALIFORNIA - MONDAY, MARCH 19, 2018

11:22 A.M.

THE CLERK:  NO. 7 IS 16CR2892, THE UNITED STATES OF
AMERICA VERSUS TYRONE CEDRIC DUREN AND JENNIFER LYNN DUREN.

MR. RAPP:  GOOD MORNING.  KEVIN RAPP AND ABBIE MARSH
ON BEHALF OF THE UNITED STATES.

THE COURT:  GOOD MORNING.

MR. KIRBY:  GOOD MORNING, YOUR HONOR.  JOHN KIRBY
WITH TYRONE DUREN.  HE'S PRESENT ON BOND.

THE COURT:  GOOD MORNING, SIR.

MR. ARENDSEN:  GOOD MORNING, YOUR HONOR.  HAMILTON
ARENDSEN FOR JENNIFER DUREN.  HER PRESENCE WAS WAIVED TODAY.
AND THANK YOU FOR THAT, YOUR HONOR.

THE COURT:  THAT'S RIGHT.  THANK YOU.

IS THERE A NEED FOR YOU TO BE HERE, SIR?

MR. ARENDSEN:  I'M SORRY, YOUR HONOR?

THE COURT:  IS THERE A NEED FOR YOU TO BE HERE?  I
UNDERSTAND YOUR CLIENT MAY HAVE A DIFFERENT DISPOSITION.

MR. ARENDSEN:  CORRECT, YOUR HONOR.  SHE'S SET FOR
DISPOSITION TOMORROW, BUT I WASN'T SURE IF THE COURT WANTED
ME TO APPEAR; BUT IF THERE IS NO OBJECTION FROM THE COURT, I
MAY STAY FOR A FEW MINUTES AND THEN HEAD OUT.

THE COURT:  VERY WELL.

WE'RE HERE ON DEFENDANT DUREN'S MOTION FOR THE COURT
TO RECONSIDER THE DEPOSITIONS.

1      MR. KIRBY:  YES, YOUR HONOR.

2      THE COURT:  COUNSEL.

3      MR. KIRBY:  YOUR HONOR, AS I STATED IN MY PAPERS, I

4  THINK BOTH SETS OF PAPERS, THE SIXTH AMENDMENT IS OBVIOUSLY

5  IN PLAY HERE.  HAVING CONTINUED TO GO THROUGH THIS CASE, IT

6  APPEARS THAT THESE WITNESSES ARE ABOUT ALL THE GOVERNMENT HAS

7  AS FAR AS STEALING OF MONEY, WHICH THEY ALLEGE OCCURRED IN

8  THIS CASE.  THEIR DEMEANOR AND CREDIBILITY ARE GOING TO BE

9  CALLED INTO QUESTION, AND IT IS VERY IMPORTANT FOR THESE

10  WITNESSES TO BE ASKED QUESTIONS AND TO BE CROSSED IN FRONT OF

11  A JURY.

12      I'VE NEVER FELT MORE STRONGLY THAT THESE TWO

13  WITNESSES, IT IS IMPERATIVE FOR MR. DUREN TO GET A FAIR

14  TRIAL, FOR THE JURY TO LOOK AT THEM AND SEE HOW THEY TESTIFY

15  AND SEE HOW THEY ANSWER QUESTIONS ON CROSS-EXAMINATION.

16      THE COURT:  BUT WE'RE TALKING ABOUT A VIDEOTAPED

17  DEPO HERE; RIGHT?

18      MR. KIRBY:  YES, YOUR HONOR.  BUT IT'S NOT -- AS

19  YOUR HONOR KNOWS, IT'S NOT THE SAME AS HAVING THE WITNESSES

20  UP ON THE STAND.

21      I MEAN, THEY HAVE BEEN IN CONTACT WITH THESE

22  WITNESSES SINCE 2013.  I CAN'T IMAGINE THAT A FEW MORE MONTHS

23  IS GOING TO -- THEY ARE SUDDENLY GOING TO DISAPPEAR.  AND IF

24  THEY WERE, THEY COULD MAKE THEM ACTUAL MATERIAL WITNESSES AND

25  HAVE THEM SIGN A BOND AND THERE WOULD BE A HOLD ON THEM.

1    THE COURT:  WHAT'S YOUR TAKE ON THE DISCOVERY?

2 WELL, HOLD ON.  LET ME HEAR ABOUT THIS.  LET'S TALK ABOUT THE

3 DEPOSITIONS FIRST.

4    COUNSEL, WHO SPEAKS?

5    MS. MARSH:  YOUR HONOR, AS WE SUMMARIZED IN OUR

6 EARLIER MOVING PAPERS AND THEN AGAIN IN THIS RESPONSE, WE

7 HAVE BEEN IN CONTACT WITH THE WITNESSES OFF AND ON THROUGHOUT

8 2013, BUT THE CONTROLLING ISSUE HERE, OR THE MAIN ISSUE HERE

9 IS THAT THEY ARE NOT CITIZENS OF THE UNITED STATES; SO WE DO

10 NOT HAVE SUBPOENA POWER OVER THEM.

11    WHILE I UNDERSTAND IT IS COMMON FOR NON-CITIZENS TO

12 BE EITHER HELD AS MATERIAL WITNESSES OR CALLED IN CASES, THE

13 ISSUE HERE IS THAT THIS CONTACT HAS BEEN PERIODIC.  IT'S NOT

14 BEEN RELIABLE.  SOMETIMES THEY ARE AVAILABLE.  SOMETIMES THEY

15 ARE NOT.  SOMETIMES WE CAN REACH THEM.  SOMETIMES WE CANNOT.

16 SO THERE IS A NEED HERE TO CONDUCT THESE DEPOSITIONS AND

17 PRESERVE THEIR TESTIMONY.

18    IT IS ULTIMATELY THE GOVERNMENT'S GOAL TO CALL THEM

19 AT TRIAL.  THAT IS OUR HOPE AS WELL.  BUT A DEPOSITION, A

20 VIDEOTAPED DEPOSITION IS SUPPORTED BY THE CASE LAW, GIVEN THE

21 LACK OF SUBPOENA POWER OVER THESE WITNESSES, AND ADDRESSES

22 ANY CONCERNS ABOUT A SIXTH AMENDMENT RIGHT OR THE

23 CONFRONTATION CLAUSE.

24    SO THOSE THINGS -- THE ISSUES THAT DEFENSE COUNSEL

25 HAS RAISED, PARTICULARLY IN HIS MOST RECENT MOTION, IS REALLY

1  A NONISSUE BECAUSE THESE DEPOSITIONS WILL BE VIDEOTAPED.  AND

2  THE CASE LAW -- SINES IN PARTICULAR, THE CASE THAT I CITED --

3  IS VERY CLEAR THAT THIS IS AN APPROPRIATE REMEDY OR AN

4  APPROPRIATE AVENUE TO PRESERVE TESTIMONY OF WITNESSES WHO MAY

5  BECOME UNAVAILABLE.

6      THE COURT:  ALL RIGHT.  COUNSEL, ISN'T THIS CASE

7  DIFFERENT FROM -- WELL, THESE ARE NOT -- THIS IS NOT AN

8  ALIEN-SMUGGLING CASE, OKAY.  BUT THESE ARE YOUR PRIMARY

9  WITNESSES, I TAKE IT FROM MY REVIEW OF THIS CASE UP TO DATE.

10  THESE ARE THE WITNESSES THAT YOU HAVE TO PROVE THIS CASE.

11  THEY ARE NOT CITIZENS.

12      WHY ISN'T IT THAT THEY ARE NOT MAT WITS SO THAT THE

13  COURT HAS SOME CONTROL OVER THEM?

14      MS. MARSH:  DOES THE COURT MEAN "MAT WITS" IN THE

15  SENSE THAT WE WOULD HOLD THEM IN CUSTODY PENDING TRIAL?

16      THE COURT:  THEY COULD COME IN AND HAVE BOND

17  APPOINTED, BUT THEY ARE SUBJECT TO THE JURISDICTION OF THE

18  COURT THAT WAY.  THEY DON'T NECESSARILY HAVE TO BE IN

19  CUSTODY.  YOU CAN PRESENT THEM AND RECOMMEND BOND.

20      BUT IF THEY ARE THAT MATERIAL, AND, YOU KNOW, THEY

21  ARE IN AND OUT OF YOUR LIVES, AND THIS IS THE MEAT OF YOUR

22  CASE, WHY SHOULDN'T THE COURT HAVE SOME CONTROL OVER IT OR

23  HAVE SOME -- WHY SHOULDN'T SOMEONE OTHER THAN YOUR AGENTS

24  HAVE SOME CONTROL OVER THEM BY HAVING THEM POST A BOND?

25      MS. MARSH:  I THINK THAT'S A POSSIBILITY.  BUT I

1    THINK THAT, GIVEN THEIR POSTURE TO DATE, AND THEY HAVE BEEN

2    IN AND OUT OF CONTACT WITH THE AGENTS.  WE'VE MET THEM AT THE

3    PORT.  WE'VE MET THEM AT OTHER LOCATIONS.  ESPECIALLY LEADING

4    UP TO THE TRIAL DATE, IT DIDN'T SEEM APPROPRIATE TO HAVE THEM

5    POST A BOND YET.  AND IT SEEMS THAT THIS IS THE MOST

6    APPROPRIATE AVENUE, TO DO THE VIDEOTAPED DEPOSITIONS.

7         SO I UNDERSTAND THE COURT'S SUGGESTION.  I THINK

8    PROCEDURALLY TO THIS POINT THAT HAS NOT FELT TO BE NECESSARY.

9         THE COURT:  HOW LONG HAS THE INVESTIGATION BEEN

10   GOING ON?

11        MS. MARSH:  SINCE 2013.

12        THE COURT:  ALL RIGHT.  YOU'VE HAD CONTACT WITH THEM

13   SINCE THAT TIME?

14        MS. MARSH:  PERIODICALLY.  I MEAN, YES, THEY HAVE

15   BEEN -- WE'VE SORT OF LOST CONTACT AT CERTAIN PERIODS AND

16   THEN COME BACK INTO CONTACT WITH THEM.  ONE OF THEM HAS BEEN

17   IN CUSTODY ON ANOTHER CASE FOR A CERTAIN PERIOD OF TIME.  SO

18   IT'S BEEN SPORADIC CONTACT I WOULD SAY, WOULD BE HOW I WOULD

19   CHARACTERIZE IT.

20        THE COURT:  SO FOR YEARS, UP UNTIL THE TIME THAT YOU

21   REQUESTED THE VIDEOTAPED DEPOSITION, THIS CONTINGENCY HAS

22   ALWAYS BEEN THERE, THAT THEY MAY NOT BE AROUND?

23        MS. MARSH:  RIGHT.  AND THAT'S THE PURPOSE THAT WE

24   REQUESTED THE VIDEOTAPED DEPOSITION FOR.  I MEAN, IT'S

25   KNOWING THAT -- THEY ARE NOT PARTICULARLY RELIABLE AND THEY

1 ARE NOT SUBJECT TO SUBPOENA POWER IS THE PURPOSE THAT WE

2 REQUESTED THE VIDEOTAPED DEPOSITIONS.

3 I UNDERSTAND THE COURT'S SUGGESTION. WE'RE

4 REQUESTING THE VIDEOTAPED DEPOSITIONS AND WE'VE FILED ALL OF

5 THOSE MOVING PAPERS SHORT OF HAVING THEM TAKEN INTO CUSTODY

6 AND POSTING A BOND.

7 MR. KIRBY: YOUR HONOR, I MEAN, I DON'T WANT TO BEAT

8 A DEAD HORSE, BUT THEY HAVE SHOWN UP FOR A TOTAL OF NINE

9 INTERVIEWS. THEY HAVE BOTH -- I'M SORRY. JUST ONE OF THEM

10 HAS BEEN INTERVIEWED NINE TIMES BY HOMELAND. BOTH HAVE SAID

11 THEY ARE WILLING TO TESTIFY REPEATEDLY IN THE REPORTS THAT

12 I'VE READ.

13 SO, YOU KNOW, TO CRIPPLE MR. DUREN'S ABILITY TO HAVE

14 THE JURY LOOK AT THEM WHILE THEY ARE BEING CROSS-EXAMINED, I

15 THINK THERE ARE OTHER OPTIONS. AND, YOU KNOW, YOUR HONOR,

16 I'VE BEEN -- I'VE RECEIVED, UNZIPPED, 27 TERABYTES OF

17 INFORMATION. I'VE TRIED TO FOCUS IN ON THESE FOLKS. I FOUND

18 THAT THERE ARE INTERVIEWS THAT I DON'T HAVE; AT LEAST ONE.

19 THERE IS AN INTERVIEW THAT DOESN'T WORK.

20 BUT ALL OF THIS GOES TO I NEED TO PUT THIS CASE

21 TOGETHER, AND ASK ME TO DEPOSE THEM AT THIS STAGE, WHEN THERE

22 IS STILL SO MUCH INFORMATION, I'M JUST UNPREPARED TO DO SO.

23 I'M SIMPLY UNPREPARED TO DO SO.

24 THERE IS AN AUDIO RECORDING FROM ONE OF THE MAT WITS

25 THAT WE DON'T HAVE, SO I NEED TO REVIEW THAT. THERE IS

1    ANOTHER ONE THAT WE'VE TOLD THE GOVERNMENT REPEATEDLY DOES

2    NOT WORK, AND WE HAVEN'T HAD A REMEDY FOR THAT.  THERE IS

3    JUST A LOT OF INFORMATION TO GO THROUGH.  THIS IS THE

4    DATABASE THAT WE'VE COME UP WITH SO FAR.  THERE ARE MULTIPLE

5    ENTRIES ON EVERY PAGE.

6         I'M JUST -- I'M NOT -- I DON'T HAVE ENOUGH OF THE

7    CONTEXT OF THE CASE.

8         THE COURT:  BUT YOU'VE HAD THIS DISCOVERY FOR A LONG

9    PERIOD OF TIME.

10        MR. KIRBY:  33 -- WHAT WAS IT, 27 TERABYTES.  AND IT

11   KEEPS COMING IN, AND IT'S NOT COMING IN A PARTICULARLY

12   ORGANIZED FASHION.  WE'VE RECEIVED TWO REPORTS IN THE LAST

13   BATCH OF DISCOVERY THAT THE GOVERNMENT HAS SAID THEY HAD

14   ALREADY GIVEN US.  AND WE'RE SORTING THROUGH THIS.

15        I MEAN, MR. DUREN IS THE ONE WHO CREATED THIS.  WE

16   ARE WORKING VERY HARD ON THIS CASE.  BUT THERE IS A LOT TO

17   IT.  THERE ARE A LOT OF DIFFERENT CHARGES.  AND WE'VE BEEN

18   FOCUSING NOW, GIVEN THE WHOLE ISSUE OF THE MAT WITS,

19   SPECIFICALLY ON THEM, BUT THERE IS A LOT MORE AS FAR AS

20   MORTGAGE FRAUD, TAX EVASION, STRUCTURING; SO THERE IS JUST A

21   LOT TO THIS CASE.

22        AND I'VE TRIED TO FOCUS IN ON THE MAT WITS, BUT AS I

23   SAID, THERE IS STILL AUDIO I DON'T HAVE.  WE HAVEN'T

24   TRANSLATED ALL THE AUDIO, SPANISH AUDIO WE DO HAVE.  MY

25   PEOPLE SPENT 40 HOURS LAST WEEK TRANSCRIBING AN

1    HOUR-AND-15-MINUTE VIDEO. IT TAKES TIME. THESE TRANSLATIONS

2    NEED TO BE CERTIFIED BY A CERTIFIED LANGUAGE INTERPRETER AS

3    WELL. THERE IS JUST A LOT TO THIS. IT'S NOT JUST THROW ON

4    THE VIDEOTAPE AND ASK AWAY. I NEED MORE INFORMATION AND I

5    NEED MORE TIME.

6          AND I REALLY BELIEVE THAT -- THAT MR. DUREN SHOULD

7    HAVE THE ABILITY TO HAVE THESE WITNESSES LIVE IN COURT, WHICH

8    IS THE NORMAL COURSE OF DOING. IF THEY WANT TO PUT A MAT WIT

9    BOND ON, FINE. IT'S NOT LIKE I'M -- I'M SURE IT'S GOING TO

10   BE THE STANDARD MAT WIT BOND, WHICH IS DE MINIMIS; AND YOU

11   HAVE A HOLD OF THEM, AND THEY ARE NOT GOING TO JUST DECIDE,

12   OH, WE DON'T WANT TO TESTIFY, BECAUSE THEY KNOW THE NEXT TIME

13   THEY COME ACROSS THE LINE, THEY ARE GOING TO GET ARRESTED.

14         THE COURT: ALL RIGHT. THANK YOU.

15         SIR.

16         MR. RAPP: WELL, WITH RESPECT TO THE DISCOVERY,

17   JUDGE, WE HAVE MADE DISCLOSURES OF -- THE BULK OF OUR

18   DISCLOSURES STARTED SHORTLY AFTER THIS DEFENDANT WAS

19   INDICTED. WE HAVE BEEN GIVING THE DEFENSE THE DISCOVERY ON A

20   ROLLING BASIS. THERE IS A LOG THAT THE DEFENSE HAS PROVIDED

21   THAT GIVES A DESCRIPTION OF THE DISCOVERY. ON TOP OF THAT,

22   WE ARE HAPPY TO SIT DOWN WITH THE DEFENSE AND HAVE THEM

23   IDENTIFY AREAS THAT THEY DON'T UNDERSTAND, CAN'T ACCESS.

24   WE'RE HAPPY TO HELP THEM WITH THAT. AND WE HAVE BEEN FOR

25   OVER A YEAR.

1   THE NOTION THAT THEY ARE JUST NOW LOOKING AT THE

2   STATEMENTS REGARDING THESE WITNESSES IS ABSURD.  WE FILED

3   THIS DEPOSITION IN SEPTEMBER OF 2017.  THEY KNEW THAT THIS

4   WAS GOING TO HAPPEN, OR AT LEAST THE POSSIBILITY OF IT WAS

5   GOING TO HAPPEN.

6   THIS CASE IS ALMOST A YEAR AND A HALF.  I UNDERSTAND

7   THE ISSUES WITH THESE WITNESSES.  THERE IS NOBODY IN THIS

8   COURTROOM WHO WANTS THESE DEFENDANTS TO WALK IN AND TAKE THE

9   STAND AND TESTIFY AT THE TRIAL MORE THAN THE UNITED STATES,

10  BUT THE REALITY IS, THEY CANNOT COME INTO THE UNITED STATES.

11  THEY DON'T HAVE ANY LEGAL AUTHORITY TO COME INTO THE UNITED

12  STATES.  ONE OF THE WITNESSES WAS PROSECUTED AT THE STATE

13  LEVEL FOR POSSESSION OF METHAMPHETAMINE.  PRIOR TO THAT, HE

14  DID HAVE A BORDER-CROSSING CARD.  HE NO LONGER HAS THAT.

15  WE CAN ONLY GET THEM INTO THE UNITED STATES IF THEY

16  ARE WILLING TO MEET US AT THE BORDER AND HAVE THEM PAROLED

17  IN.  AND THEY SEEM, AT LEAST ONE OF THEM, JUST AS EARLY AS

18  THIS MORNING, ONE OF THE WITNESSES THAT IS SET FOR DEPOSITION

19  TOMORROW SAYS -- TOLD US THAT HE HAS A FUNERAL IN THE FAMILY.

20  HE WOULD LIKE HIS DEPOSITION RESCHEDULED.  HE CANNOT MAKE IT.

21  IF THAT WITNESS WAS IN THE UNITED STATES, WE WOULD

22  SAY, LOOK, WE'RE IN THE MIDDLE OF THE TRIAL.  PERHAPS WE

23  CAN -- YOU'RE UNDER SUBPOENA, PERHAPS WE CAN MOVE YOUR

24  TESTIMONY A DAY.  WE CAN'T DO THAT NOW.  WE JUST HAVE TO RELY

25  UPON HIS GOOD GRACES TO APPEAR AT THE BORDER TO GO THROUGH

1  THE PAROLE PROCESS SO HE CAN BE BROUGHT INTO SAN DIEGO FOR

2  THE DEPOSITION.

3       THE DISCOVERY LETTERS WE'VE SENT OUT TO THE DEFENSE

4  HAS VOLUNTEERED, LOOK, WHAT DO YOU NEED FROM US?  WE'RE HAPPY

5  TO SIT DOWN AND GO THROUGH THIS CASE WITH YOU.  THAT IS

6  EVIDENCED BY THE FACT THAT THE DEFENSE HAS AN EXHIBIT LIST,

7  NOT JUST FOR THE DEPOSITION, BUT AN EXHIBIT LIST FOR THE

8  TRIAL.  THEY HAVE HAD THAT FOR FOUR MONTHS.  AND ON THAT

9  EXHIBIT LIST HAS THE VAST MAJORITY OF THE EXHIBITS THAT THE

10  UNITED STATES INTENDS TO PRESENT AT TRIAL AND IT HAS THE

11  CORRESPONDING BATES NUMBER, SO THEY CAN LOOK AT IT AND GO AND

12  FIND THAT DOCUMENT THAT WE INTEND TO INTRODUCE.

13       THEY HAVE A WITNESS LIST.  THEY HAVE A WITNESS LIST

14  WITH 60-ODD WITNESSES THAT WE INTEND TO CALL.  THEY HAVE

15  GOTTEN THAT WELL BEFORE, AT LEAST IN THE PRACTICE IN ARIZONA

16  IS YOU DON'T GET THAT, MAYBE A MONTH, IF YOU'RE LUCKY, BEFORE

17  TRIAL; BUT THEY HAVE HAD IT HERE FOR FOUR MONTHS.  I DON'T

18  KNOW WHAT WE CAN DO FOR THE DEFENSE TO GET THEM READY TO GO

19  TO TRIAL.  THEY WERE OBLIGATED TO PROVIDE US A WITNESS LIST

20  AND AN EXHIBIT LIST, AND THAT'S NOT BEEN FORTHCOMING, AS THE

21  COURT ORDERED.

22       SO I THINK IF WE JUST KEEP GOING ON, WE'LL NEVER GET

23  THIS CASE RESOLVED.  WE'VE MADE A REASONABLE PLEA OFFER.

24  THEY REJECTED THAT.  SO WE'RE PREPARED TO DO THESE

25  DEPOSITIONS TOMORROW.  WE'LL FILE SOMETHING ON THIS OTHER

1  WITNESS.  WE DON'T KNOW WHAT HIS STATUS IS.  BUT IT APPEARS

2  THAT HE CANNOT BE PRESENT FOR TOMORROW'S DEPOSITION, BUT THE

3  OTHER WITNESS, AS OF RIGHT NOW, SAYS HE'LL BE READY TO

4  APPEAR.

5          THE COURT:  THE DEPOSITION THAT'S SET, TO WHICH

6  CHARGES WILL THAT WITNESS ADDRESS, ALL OF THEM OR JUST AN

7  ISOLATED CHARGE OR TWO?

8          MR. RAPP:  WELL, SO THE INDICTMENT IS KIND OF THE

9  SUM OF ALL THE PARTS.  IT'S THE THEORY OF THE UNITED STATES

10  THAT THIS DEFENDANT WAS STEALING MONEY FROM COURIERS THAT HE

11  WAS STOPPING.  OBVIOUSLY, WE HAVE THESE TWO COURIERS WHO

12  IDENTIFY MR. DUREN AS A LAW ENFORCEMENT AGENT WHO STOPPED

13  THEM.

14          FROM THERE, AN ANALYSIS OF HIS BANK ACCOUNTS SHOWS

15  NEARLY 1.7 MILLION DOLLARS COURSING THROUGH HIS ACCOUNTS.

16  THERE IS NO LEGITIMATE SOURCE OF THAT MONEY.  WE KNOW THAT

17  BASED UPON OUR EVIDENCE, THAT HE DIDN'T TAKE 1.7 MILLION

18  DOLLARS FROM THIS PARTICULAR -- THESE TWO PARTICULAR

19  COURIERS.

20          SO THEIR TESTIMONY IS RELEVANT, FRANKLY, FOR ALL THE

21  CHARGES.  THERE IS MONEY LAUNDERING, WHERE THE DEFENDANT IS

22  LENDING MONEY.  THERE IS MONEY LAUNDERING WHERE HE'S WIRING

23  MONEY.  THERE IS ENUMERABLE COUNTS OF STRUCTURING WHERE HE'S

24  PUTTING MONEY BELOW THE $10,000 LIMIT NUMEROUS TIMES A DAY.

25  THERE IS TAX EVASION, THREE COUNTS OF TAX EVASION.  HE HASN'T

1   FILED TAXES IN FIVE YEARS THAT HE WAS WITH HSI.

2        ALL OF THAT, ALL OF THOSE CHARGES FLOW FROM THESE

3   TWO PARTICULAR WITNESSES.

4        THE COURT:  I GOT IT.  SO I GUESS MR. SANCHEZ IS THE

5   ONE YOU'RE SPEAKING TO MOST FREQUENTLY?

6        MR. RAPP:  YES.

7        THE COURT:  ALL RIGHT.  WITH RESPECT TO HIS

8   TESTIMONY THAT YOU INTEND TO OBTAIN THROUGH A DEPOSITION, IS

9   IT ISOLATED TO ONE EVENT?

10        MR. RAPP:  YES.

11        THE COURT:  AND THE BALANCE OF YOUR INVESTIGATION

12   STEMS OFF OF THAT.

13        MR. RAPP:  YES.

14        THE COURT:  BUT IS IT FAIR TO SAY THAT MR. SANCHEZ

15   WOULD HAVE NO INFORMATION WITH RESPECT TO THE BALANCE OF THE

16   INVESTIGATION?

17        MR. RAPP:  NO.  HE HAS THAT ONE DISCRETE, ISOLATED

18   INTERACTION WITH MR. DUREN WHERE HE'S STOPPED ON THE I-5.  HE

19   TAKES THE MONEY OUT OF A FALSE COMPARTMENT.  HE ASKS BOTH OF

20   THE PASSENGER -- BOTH OF THE OCCUPANTS OF THIS CAR TO MEET

21   HIM AT A BANK OF AMERICA NEAR SAN YSIDRO OFF OF THE I-5.

22        HE HAS PROBABLY A TEN-MINUTE INTERACTION WITH HIM AT

23   THAT BANK OF AMERICA, WHERE HE TAKES A PHOTO AND AT LEAST

24   PURPORTS TO GET A THUMBPRINT FROM THEM.  AND THEN THEY AND

25   THE VEHICLE ARE ALLOWED TO LEAVE.  AND THAT'S IT.  AND THE

1  ONLY TIME THAT -- THE ONLY CONTACT THAT LAW ENFORCEMENT HAS

2  WITH HIM RELATED TO THAT IS TWO WEEKS LATER WHEN MR. SANCHEZ

3  DISCLOSES THIS EVENT.  AND FROM THERE, THERE IS A SERIES OF

4  INTERVIEWS WITH MR. SANCHEZ TO DETERMINE WHO IT WAS THAT

5  ACTUALLY STOPPED HIM.

6         THE COURT:  ALL RIGHT.  COUNSEL, WHY IS IT THAT YOU

7  CAN'T FOCUS ON WITH MR. SANCHEZ AND INTERACTIONS WITH

8  MR. SANCHEZ?  HE HAS NO INVOLVEMENT IN THE OTHER ALLEGATIONS.

9  YOU CAN DEAL WITH THE OTHER AGENTS OR OTHER WITNESSES WITH

10  RESPECT TO THOSE.

11         MR. KIRBY:  I DON'T HAVE ALL OF HIS STATEMENTS,

12  FIRST OFF.

13         THE COURT:  I UNDERSTAND ALL OF THEM WERE NOT

14  RECORDED.

15         MR. RAPP:  THAT'S TRUE IN THE FIRST INSTANCE, YES.

16  NO, NOT ALL OF THE STATEMENTS WERE RECORDED.

17         I THINK WHAT THE DEFENSE IS REFERRING TO IS HE WAS

18  STOPPED IN 2017.  AFTER HE HAD PROVIDED THIS INFORMATION TO

19  INVESTIGATORS WITH DHS AND HSI, WHICH IS NOT UNCOMMON WITH

20  PEOPLE INVOLVED IN THE DRUG TRADE, HE WAS STOPPED

21  TRANSPORTING METHAMPHETAMINE; UNRELATED TO OUR INVESTIGATION.

22  HE WAS ARRESTED AND PROSECUTED AT THE STATE LEVEL.

23         WE RECEIVED ALL THE REPORTS THAT SUMMARIZED HIS

24  INTERVIEW, ALL THE REPORTS RELATED TO THAT STOP AND

25  INVESTIGATION.  I GUESS THERE IS A CD WHERE THEY RECORDED AN

1    INTERVIEW.  WE DON'T HAVE THAT IN POSSESSION.  THAT'S IN THE

2    POSSESSION OF THE STATE AUTHORITIES.

3            THE COURT:  AND YOU'RE NOT GOING TO USE IT THEN?

4            MR. RAPP:  WE DON'T INTEND TO USE IT.

5            THE COURT:  ALL RIGHT.  IF YOU DON'T TURN IT OVER,

6    YOU DON'T USE IT.  YOU CAN'T USE ANY DERIVATIVE FROM IT IF

7    YOU AREN'T GOING TO GIVE IT OVER IN DISCOVERY.

8            MR. RAPP:  WE DON'T HAVE IT, NO.

9            THE COURT:  ALL RIGHT.  I JUST WANT TO MAKE THAT

10   CLEAR.  YOU SAY IT'S NOT IN YOUR POSSESSION; I UNDERSTAND

11   THAT UNDER RULE 16.  BUT YOU CAN'T TAKE INFORMATION FROM IT

12   TO DEVELOP YOUR INVESTIGATION FURTHER.  IN MY VIEW, IF YOU'RE

13   GOING TO USE ANY PART OF THE STATEMENTS TO STATE OFFICIALS,

14   EVEN THOUGH YOU DON'T HAVE POSSESSION OF THE AUDIO, TO

15   CONTINUE YOUR INVESTIGATION TO FIND OTHER LEADS, THEN YOU

16   AREN'T GOING TO USE IT.  OKAY.

17           MR. RAPP:  YEAH.

18           THE COURT:  BECAUSE, OTHERWISE, YOU'RE TURNING THAT

19   STATE INVESTIGATION INTO YOUR OWN AND YOU'RE MAKING IT PART

20   OF THE TEAM, ALL RIGHT, IN MY VIEW.

21           MR. RAPP:  WE JUST TURNED OVER WHAT THEY GAVE US.

22   IT'S NOT IN OUR POSSESSION.  THE DEFENSE HAS -- I THINK ON

23   MR. SANCHEZ'S CONVICTION, THEY HAVE MORE THAN WE'RE FRANKLY

24   OBLIGATED TO GIVE.  WE CAN JUST FRANKLY SAY HE GOT ARRESTED,

25   CONVICTED, HERE IS HIS J&C.  BUT WE GAVE HIM ALL THE REPORTS

1    RELATED TO THAT INVESTIGATION.

2              THE COURT:  ALL RIGHT.  SIR.

3              MR. KIRBY:  YOUR HONOR, IT'S STILL JENCKS.  IT WAS

4    GIVEN OVER TO A TASK FORCE OFFICER; NOT THE STATE.

5              THE COURT:  BUT IT'S NOT TIME FOR JENCKS.  IF HE'S

6    GOING TO TESTIFY SOON, IT'S JENCKS TIME.

7              MR. KIRBY:  RIGHT.

8              THE COURT:  IF HE'S GOING TO TESTIFY IN A

9    DEPOSITION, IT'S JENCKS TIME.

10             MR. RAPP:  YEAH.  WE DON'T HAVE IT, THOUGH.  WE

11   DON'T HAVE IT IN OUR POSSESSION.  WE HAVE ONLY A SUMMARY OF

12   THE INTERVIEW THAT HE GAVE.

13             MR. KIRBY:  YOUR HONOR, HE WORKS FOR THE FEDERAL

14   TASK FORCE, AND IT'S ON -- IT'S ON THEIR REPORT.  I'M LOOKING

15   FOR THE REPORT THAT SHOWS THAT.

16             THERE WAS A DVD TAKEN, CONTAINED POST-ARREST

17   INTERVIEW.  T.F.O. FORMAN WITH THE TASK FORCE, THE FEDERAL

18   TASK FORCE, MADE AN EXTRA COPY OF IT.  SO IT'S IN THE

19   POSSESSION OF THE FEDERAL GOVERNMENT.

20             YOUR HONOR, WE CAN -- YOU KNOW, WE CAN WORK THAT

21   PART OF IT OUT, BUT, YOUR HONOR, STILL AS TO MR. SANCHEZ,

22   THERE ARE A LOT OF INTERVIEW MATERIAL THAT'S IN SPANISH THAT

23   HASN'T BEEN TRANSLATED, AND I NEED TIME TO DO THAT.

24             THE COURT:  HOW LONG HAVE YOU HAD IT?

25             MR. KIRBY:  I DON'T KNOW, YOUR HONOR.

1    YOUR HONOR, I WANT TO ASSURE THE COURT IT'S NOT AS

2  THOUGH I'VE JUST BEEN SITTING ON ALL THIS INFORMATION OR

3  SITTING ON THE INTERVIEWS.  THEY ARE VERY EXPENSIVE TO

4  TRANSCRIBE, AND AS SOON AS YOUR HONOR ORDERED THE

5  DEPOSITIONS, I STARTED THAT PROCESS.  BUT AS I SAID, IT'S

6  PAINSTAKING.  PLUS, A CERTIFIED -- FOR THEM TO COME INTO

7  EVIDENCE, A CERTIFIED TRANSLATOR HAS TO CERTIFY THEM AS WELL.

8    THE COURT:  WELL, I CAN APPRECIATE THE TIME TO

9  TRANSCRIBE A VIDEO.  ANY TYPE OF INTERVIEW, IT DOES TAKE

10  TIME.  IT'S NOT A SIMULTANEOUS DEAL.

11    HOW MANY HAVE YOU NOT TRANSCRIBED?

12    MR. KIRBY:  YOUR HONOR, I THINK WE HAVE FOUR

13  AUDIOTAPES, ONE OF WHICH WE HAVE BEEN UNABLE TO PLAY.  ONE

14  OTHER THAT WAS AN HOUR AND 15 MINUTES.  THAT'S BEEN

15  TRANSCRIBED.  AND THEN THERE ARE TWO OTHERS THAT HAVE BEEN

16  SUMMARIZED BUT NOT TRANSCRIBED.  AND THEN THERE IS ONE THAT

17  IS MISSING ALTOGETHER.

18    THE COURT:  HAVE YOU MET AND CONFERRED WITH RESPECT

19  TO THE INOPERABLE -- HAVE YOU MET AND CONFERRED REGARDING THE

20  INOPERABLE TAPE AND THE ONE YOU CONSIDER MISSING?

21    MR. KIRBY:  MY -- I KNOW MY PARALEGAL HAS BEEN IN

22  CONTACT WITH THE FOLKS -- WHOEVER THE PERSON IS WHO ACTUALLY

23  SENDS US THE DISCOVERY; AND THERE HAS BEEN SOME BACK AND

24  FORTH.  BUT I HAD AN I.T. PERSON LOOK AT IT AND HE CAN'T --

25  HE SAID IT'S CORRUPTED AND IT'S NOT COMING BACK.  SO I NEED

1  ANOTHER COPY OF IT.

2        THE COURT:  ANYTHING ELSE FROM THE UNITED STATES?

3        MR. RAPP:  WELL, JUDGE, ALL I CAN SAY IS THAT TO OUR

4  LATEST MOTION DISCOVERY RESPONSE, THERE IS AN EXHIBIT D THAT

5  TRIES TO GIVE A MATRIX OF ALL OF THE CONTACT WITH THESE TWO

6  WITNESSES AND ALL THE AVAILABLE DISCOVERY.

7        AND SO IF THE DEFENSE CAN IDENTIFY WHICH AUDIO THEY

8  WERE REFERRING TO BY DATE, THEN WE CAN -- WE ARE ABLE TO

9  DETERMINE WHETHER OR NOT -- IT COULD BE VERY WELL THAT THIS

10  CORRUPTED TAPE THEY ARE REFERRING TO CAME TO US CORRUPTED AND

11  THERE IS NOTHING ON IT.

12        MR. KIRBY:  JUST FYI, IT'S 10/9/2013.

13        MR. RAPP:  SO IF YOU GO TO EXHIBIT D, THE 10/9

14  CONTACT WITH SANCHEZ IS JUST A MEMORANDUM OF INTERVIEW.

15  THERE IS NO RECORDING ASSOCIATED WITH THAT.

16        MR. KIRBY:  YOUR HONOR, I DON'T BELIEVE THAT'S

17  CORRECT, PARTICULARLY SINCE MY PARALEGAL HAS BEEN CONFERRING

18  WITH THEIR I.T. PERSON TO TRY TO FIX IT.

19        THE COURT:  THAT'S THE INTERVIEW WHERE THERE WAS A

20  PHOTO LINEUP PRESENTED?

21        MR. RAPP:  NO.  I BELIEVE THE PHOTO LINEUP IS ON

22  10/2.

23        MS. MARSH:  THERE IS AN AUDIO FILE FROM 10/2.

24        THE COURT:  DO YOU HAVE THAT ONE, SIR?

25        MR. KIRBY:  IT'S UP ON THE COMPUTER, YES.  BUT IT

1    DOESN'T PLAY.

2             MS. MARSH:  IS THAT FROM 10/2?

3             MR. KIRBY:  IT'S HARD TO SAY, BUT IT LOOKS LIKE

4    IT.

5             THE COURT:  WHY DON'T YOU MEET AND CONFER.  WHY

6    DON'T YOU TAKE A MOMENT TO MEET AND CONFER.

7             ALLOW ME TO DO THIS:  LET'S TRAIL THIS MATTER.  I

8    HAVE A MATTER THAT SHOULD BE RATHER BRIEF THAT FOLLOWS THIS

9    ONE.  ALLOW ME TO HANDLE THAT.  ALL RIGHT.  AND I DIRECT THE

10   PARTIES TO MEET AND CONFER WITH RESPECT TO THE DISCOVERY

11   THAT'S IN CONTENTION.

12             (RECESS, 11:50 A.M. TO 2:05 P.M.)

13             THE COURT:  GOOD AFTERNOON.  THE RECORD SHALL

14   REFLECT THE PARTIES ARE PRESENT.

15             HAS THERE BEEN ANY PROGRESS AS A RESULT OF THE

16   MEET-AND-CONFER?

17             MR. RAPP:  WELL, I THINK SO.  I THINK IT WAS USEFUL.

18             JUST FOR THE RECORD, MYSELF, MS. MARSH AND TWO OF

19   THE CASE AGENTS MET WITH MR. KIRBY, HIS CLIENT AND I THINK

20   WHAT IS MR. KIRBY'S PARALEGAL, AND WE TRIED TO GO THROUGH

21   SOME OF THE DISCOVERY TODAY; SO THERE FOR SURE WAS A

22   FREE-FLOW OF INFORMATION.

23             I THINK WHERE WE ARE, JUST TO KEEP THINGS IN

24   PERSPECTIVE, WE HAVE THIS DEPOSITION SCHEDULED FOR TOMORROW.

25             THE COURT:  YES.

1          MR. RAPP:  THE DEFENSE'S POSITION IS, THERE ARE

2     STATEMENTS THAT WE DO NOT HAVE IN OUR POSSESSION, SUCH THAT

3     WE CANNOT FEEL COMFORTABLE IN EFFECTIVELY CROSS-EXAMINING

4     THIS WITNESS.

5          AND I THINK THOSE STATEMENTS COME DOWN TO THREE:

6     ONE IS AN AUDIO RECORDING THAT WAS DISCLOSED ON APRIL 27TH OF

7     2017.  IT WAS DISCLOSED WITH TWO OTHER AUDIO RECORDINGS THAT

8     DO HAVE A STATEMENT.  IT IS OUR POSITION THAT THIS THIRD

9     AUDIO RECORDING HAS BEEN CORRUPTED AND THERE IS NOTHING ON

10    IT.

11         THE DEFENSE I THINK HAS A THEORY AS TO WHY THERE

12    MIGHT BE SOMETHING ON IT, BUT I CAN TELL THE COURT, WE HAVE

13    TRIED TO RECOVER INFORMATION FROM IT.  THE AGENT PROVIDED

14    MR. KIRBY AN EXPLANATION AS TO HOW THAT RECORDING WAS TAKEN.

15    SHE'D BE HAPPY TO -- WILL TESTIFY TO THE WAY THAT HAPPENED AT

16    TRIAL, IF IT COMES UP.

17         BUT THE REALITY IS THAT THERE IS NOTHING ON THAT

18    AUDIO RECORDING FROM OUR PERSPECTIVE.  BUT IN ANY EVENT, IT

19    WAS DISCLOSED ON APRIL 27TH, 2017, AND IT'S ONLY IN THE LAST

20    TWO WEEKS THAT WE HAVE HEARD THAT THERE IS AN ISSUE WITH IT.

21         THE SECOND ONE IS FROM THE OCTOBER 18TH, 2016 ARREST

22    OF ERNESTO.  AND THIS WAS DONE IN THE SAN DIEGO AREA.  HE WAS

23    IN POSSESSION OF, I BELIEVE, SEVEN POUNDS OF METHAMPHETAMINE.

24    THIS RESULTED IN A STATE PROSECUTION.  WE OBTAINED WHAT WE

25    THOUGHT WAS ALL THE RECORDS FROM THAT ARREST, INCLUDING A

1  SUMMARY OF HIS STATEMENT, CERTAINLY THE FACTS SURROUNDING

2  THAT ARREST.  THAT WAS DISCLOSED TO THE DEFENSE ON MARCH 3RD,

3  2017.

4         CONTAINED WITHIN THAT REPORT IS A REFERENCE TO A DVD

5  THAT WOULD BE THE RECORDING OF ERNESTO'S INTERVIEW, WHICH IS

6  SUMMARIZED IN WHAT'S -- WHAT THE COURT KNOWS IS A D.E.A. 6.

7  WE DON'T HAVE THAT RECORDING.  AND IT'S ONLY WITHIN THE LAST

8  TWO WEEKS THAT THE DEFENSE HAS EVEN RAISED THAT WITH US.

9         THE LAST CATEGORY OF STATEMENTS ARE TRANSLATIONS OF

10  A RECORDED INTERVIEW OF ERNESTO BY BORDER PATROL ON

11  OCTOBER 13TH, 2013.  THAT WAS DISCLOSED ON APRIL 27TH, 2017.

12  AND AS I UNDERSTAND IT FROM THE DEFENSE, THE DEFENSE IS STILL

13  IN THE PROCESS OF HAVING THOSE TRANSLATED.

14         MR. KIRBY:  YOUR HONOR, JUST TO PUT THIS IN

15  PERSPECTIVE, I WOULD LIKE TO.

16         THE COURT:  THANK YOU.  THANK YOU, SIR.

17         MR. KIRBY:  THE GOVERNMENT HAS TURNED OVER 220,000

18  FILES TO THE DEFENSE.  I HAVE BEEN ON THIS CASE 15 MONTHS.

19  WERE I HAVE TO HAVE REVIEWED EVERYTHING BY NOW, I WOULD HAVE

20  HAD TO REVIEW 500 FILES PER DAY, 7 DAYS A WEEK.

21         THE GOVERNMENT HAS A LOT MORE PEOPLE HERE IN THE

22  COURTROOM TO HELP THEM THAN I DO.  THEY HAVE HAD THIS CASE

23  FOR FOUR YEARS.  I'M PUTTING IT TOGETHER AS BEST I CAN.  I'M

24  HIRING A NEW ATTORNEY TO ASSIST ME AS WELL.

25         I DIDN'T REALIZE THESE TRANSCRIPTIONS WERE GOING TO

1  TAKE AS LONG AS THEY WERE.  IT WAS SHOCKING TO ME, QUITE

2  FRANKLY, THAT IT WOULD TAKE 40 HOURS TO DO AN HOUR AND 15

3  MINUTES OF INTERVIEW.  BUT THERE YOU ARE.  I HAVE SOMEBODY

4  IN -- A CERTIFIED INTERPRETER, WHO CAN CERTIFY THE ROUGH

5  DRAFTS OR FIX THE ROUGH DRAFTS.  BUT IT'S TAKING ME TIME.

6          I MEAN, I STILL BELIEVE THAT MR. DUREN DESERVES TO

7  HAVE THESE PEOPLE IN COURT, LIVE, WHEN THEY ARE TESTIFYING AT

8  HIS TRIAL.  IF THE GOVERNMENT WANTS TO MAKE THEM MATERIAL

9  WITNESSES, THEY CAN.  IF THEY ARE MADE MATERIAL WITNESSES AND

10 THEY CAN'T MAKE BOND, THEN WE CAN REVISIT THE ISSUE.  BUT IF

11 THEY ARE MATERIAL WITNESSES AND THEY CAN MAKE BOND, THERE IS

12 NO REASON TO TAKE THEIR DEPOSITIONS, AND IT HURTS MY CLIENT.

13          THE COURT:  ALL RIGHT.  THANK YOU.

14          GOING BACK TO THE DISCOVERY.

15          MR. KIRBY:  YES.

16          THE COURT:  OKAY.  THERE IS A TAPE -- THERE IS A

17 CORRUPT TAPE.  NO ONE HAS ACCESS TO THE CORRUPT TAPE.

18          MR. KIRBY:  WE'RE STILL WORKING ON THAT, YES.

19          THE COURT:  BUT THE GOVERNMENT DOESN'T HAVE ACCESS

20 TO IT, EITHER.

21          MR. KIRBY:  EXACTLY.  AT THIS POINT.

22          THE COURT:  YOU'VE HAD TRANSLATED ONE OF THESE

23 AUDIOS.

24          MR. KIRBY:  YES.  AND THERE ARE TWO MORE TO GO.

25          THE COURT:  AND THIS EVIDENCE IS THE SUM TOTAL OF

1     THE EVIDENCE FROM THE INTERACTIONS WITH THIS MR. SANCHEZ?

2         MR. RAPP:  YES.

3         MR. KIRBY:  WITH THE ONE INTERVIEW THAT WE STILL

4     DON'T HAVE FOR THE OCTOBER 18TH, 2016 ARREST.

5         THE COURT:  YOU MEAN YOU DON'T HAVE THE RECORDING?

6         MR. KIRBY:  IT WAS A DVD THAT WAS MADE FROM HIS

7     POST-ARREST STATEMENT.  WE DO NOT HAVE THAT.

8         THE COURT:  DO YOU HAVE THAT NOW?

9         MR. RAPP:  WE DON'T HAVE IT.

10        MR. KIRBY:  YOUR HONOR, THERE IS ALSO THE ISSUE

11     OF -- AND THIS IS SOMETHING THAT -- IN ALL OF THIS DISCOVERY,

12     I JUST DETERMINED THAT THERE WAS AN FBI INFORMANT WHO

13     ORIGINALLY GAVE HOMELAND INFORMATION THAT IS SOMEWHAT

14     CONTRADICTORY ON THE JULY 18TH, 2013 STOP.  AND I'VE ASKED

15     MR. RAPP TO FACILITATE AN INTERVIEW OR AT LEAST INQUIRE, AND

16     HE HAS STATED THAT HE WOULD NOT, ABSENT A SUBSTANTIVE

17     MOTION.

18        THE COURT:  I'M SORRY?

19        MR. KIRBY:  HE WOULD NOT, ABSENT A SUBSTANTIVE

20     MOTION ON THAT POINT.

21        MR. RAPP:  JUST SO WE'RE CLEAR ON THAT, JUDGE.  THAT

22     WAS JUST RAISED WITHIN THE LAST -- THAT WAS NOT PART OF THE

23     DISCOVERY MOTION AND THAT HAS NOT BEEN REQUESTED IN THE

24     PREVIOUS 15 MONTHS.

25        THE COURT:  AND THE GENTLEMAN ARRESTED ON

1  OCTOBER 18TH, 2016 IS THE OTHER WITNESS IN THE CASE?

2  MR. RAPP: NO. HE ACTUALLY IS MR. SANCHEZ, THE ONE

3  WHO IS CURRENTLY SCHEDULED FOR THE DEPOSITION TOMORROW.

4  THE COURT: OH, I SEE.

5  MR. KIRBY: SO I GUESS MY -- YOUR HONOR, I'D

6  ASK THAT THE GOVERNMENT, IF THEY WANT THEM AROUND, MAKE THEM

7  MAT WITS. ABSENT THAT, I NEED 30 DAYS AT LEAST TO GET READY

8  FOR -- TO DEPOSE THEM, WHICH I DON'T WANT TO DO. I DON'T

9  THINK IT'S CALLED FOR.

10  THEY HAVE BEEN IN REGULAR CONTACT. THEY CAN MAKE

11  THEM MAT WITS. AS I SAID, IF THEY BECOME MAT WITS AND ONE OF

12  THEM CAN'T MAKE BOND, OKAY, THEN WE'RE BACK AT WHERE WE ARE

13  AND WE'RE LOOKING AT DEPOSITIONS; BUT WE DON'T HAVE ANY

14  EVIDENCE THAT THEY COULDN'T MAKE BAIL.

15  THE COURT: ANYTHING ELSE FROM THE GOVERNMENT?

16  MR. RAPP: WELL, I JUST WANT TO ADDRESS THIS

17  MATERIAL WITNESS. USUALLY THE SCENARIO IS THEY ARE ARRESTED,

18  AND THEY ARE MATERIAL WITNESSES IN THE CASE, BUT THEY ARE --

19  TYPICALLY, IN THE SOUTHWEST BORDER STATE, LIKE THE SOUTHERN

20  DISTRICT OF ARIZONA, THEY RESIDE IN MEXICO. THEN THEY CAN

21  HAVE A BOND.

22  THIS IS DIFFERENT. THEY LIVE IN MEXICO AND HAVE NO

23  LEGAL RIGHT TO COME INTO THE UNITED STATES. AND SO WHAT WE'D

24  BE ASKING THEM IS --

25  THE COURT: COME TO THE BORDER, GET ARRESTED, COME

1   TO COURT.

2        MR. RAPP: AND WOULD YOU PUT UP A BOND, AND THEN

3   WHEN YOU GO BACK TO MEXICO, GUESS WHAT, YOU'RE GOING TO LOSE

4   THAT DE MINIMIS BOND THAT'S ON PAPER, IF YOU DON'T SHOW UP

5   FOR TRIAL.

6        NOW, THAT REALLY -- I APPRECIATE THE SUGGESTION, BUT

7   IN THIS SCENARIO, IT'S NOT VERY REALISTIC. THE ONLY

8   REALISTIC THING IS IS FOR THESE TWO WITNESSES OUT OF THE

9   GOODNESS OF THEIR HEART TO AGREE TO COME TO THE BORDER TO BE

10   PAROLED IN FOR PURPOSES OF TRIAL. THEY CAN CHOOSE NOT TO DO

11   THAT.

12        AND SO WE WANT THEM TO TESTIFY AT TRIAL, BUT IF WE

13   START TRIAL AND SOMETHING HAPPENS TO THEM OR ONE OF THEIR

14   FAMILY MEMBERS -- OR MR. ARAGON, WHO IS THE SECOND WITNESS,

15   THIS IS THE CLASSIC EXAMPLE. WE CALLED HIM TODAY. WE HAVE

16   SCHEDULED -- WE HAVE SCHEDULED YOUR DEPOSITION FOR 1:30

17   TOMORROW. WE'LL MEET YOU AT THE BORDER AND PAROLE YOU IN,

18   TRANSPORT YOU TO THE COURTHOUSE AND HAVE YOU DEPOSED. AND HE

19   SAID, YOU KNOW WHAT, I CAN'T DO IT.

20        THE COURT: HE'S THE ONE WITH THE FAMILY --

21        MR. RAPP: YEAH, HE HAS A DEATH IN THE FAMILY.

22        THE COURT: -- MEMORIAL SERVICE.

23        MR. RAPP: I HAVE A FUNERAL TO GO TO. AND YOU KNOW

24   IF WE WERE IN THE MIDDLE OF THE TRIAL, AND HE WAS A UNITED

25   STATES CITIZEN WHO LIVED IN EL CAJON, WE WOULD SIMPLY SAY, NO

1   PROBLEM.  WE WILL PUT ON SOME OTHER WITNESSES.  WE'LL

2   RESCHEDULE YOUR TESTIMONY FOR FRIDAY.

3           WE CAN'T DO THAT IN THIS CASE.  SO THAT'S WHY IT IS

4   IMPORTANT FOR THESE TWO WITNESSES FOR US TO MEMORIALIZE THEIR

5   TESTIMONY IN THE EVENT WE LOOK UP AT TRIAL AND WE'RE UNABLE

6   TO GET THEM.  AND EVEN THEN, WE WOULD HAVE TO PRODUCE

7   EVIDENCE FROM OUR AGENTS, THEY WOULD HAVE TO EITHER TAKE THE

8   STAND IN A HEARING OR PRESENT THE COURT WITH SOME SUPPORTING

9   DECLARATION TO SAY WHY THESE WITNESSES ARE NOW UNAVAILABLE.

10          SO THERE IS SOME PROTECTIONS HERE FOR THE DEFENSE.

11  THEY ARE NOT PREJUDICED IN THE FACT THAT IF THEY ARE

12  AVAILABLE AND CAN BE LIVE WITNESSES, HERE THEY ARE.  BUT IF

13  THEY ARE NOT, THE GOVERNMENT IS PREJUDICED.  SO FOR THAT

14  REASON, WE'D ASK THAT WE GO FORWARD WITH THESE DEPOSITIONS.

15  IF THE COURT BELIEVES THAT THEY ARE PREJUDICED BY NOT HAVING

16  SOME OF THESE STATEMENTS, WE WILL MAKE OUR BEST EFFORTS TO

17  GET THEM PRONTO, AND WE COULD SET A DEPOSITION DATE OUT WHEN

18  IT'S CONVENIENT.

19          BUT IF WE COULD HAVE A HEARING SOMETIME MAYBE A WEEK

20  IN ADVANCE OF THAT DEPOSITION, TO MAKE SURE THERE IS NO

21  ISSUES REGARDING DISCOVERY, SO WE CAN GO FORWARD.  OTHERWISE,

22  WE'LL KEEP COMING UP TO THE LINE, AND THEN THERE WILL BE SOME

23  OTHER DISCOVERY ISSUE, REAL OR IMAGINED, THAT WOULD PREVENT

24  US DOING THE DEPOSITION.

25          THE COURT:  ALL RIGHT.  I TAKE IT THERE IS NO

1   DISCOVERY DISPUTES WITH RESPECT TO ARAGON, THERE IS NOTHING

2   IN THE PAPERS REGARDING HIM.

3            MR. KIRBY:  NO.

4            THE COURT:  HE'S THE ONE WITH THE CIRCUMSTANCE

5   TOMORROW?

6            MR. RAPP:  YEAH.  HE'S THE ONE WHO HAS ADVISED US

7   EARLIER THIS MORNING, HEY, I'M SORRY.  I CAN'T DO IT.

8            THE COURT:  WHICH ON THE OTHER HAND -- WELL, IT

9   INFERS TO THE COURT THAT HE'S A WILLING WITNESS.  HE JUST HAS

10  A CIRCUMSTANCE TOMORROW, A FAMILY CIRCUMSTANCE.

11           MR. RAPP:  WELL, WHAT I CAN TELL YOU OF THE TWO, THE

12  CONTACT WITH HIM IS THE MOST SPORADIC.

13           THE COURT:  ALL RIGHT.

14           MR. RAPP:  FOR MONTHS, WE WENT WITHOUT HIM RETURNING

15  PHONE CALLS.  AND IT WAS ONLY JUST RECENTLY THAT WE

16  RE-ENGAGED WITH HIM, AND THEN WE'RE NOW ADVISED WITHIN THE

17  LAST 24 HOURS WHEN WE STARTED MAKING ARRANGEMENTS FOR HIM TO

18  COME UP, HE'S THE ONE WHO SAID, I CAN'T DO IT.

19           MR. KIRBY:  YOUR HONOR, THE GOVERNMENT'S INTEREST IS

20  SERVED BY MAKING THESE PEOPLE MAT WITNESSES.  THEY CROSS BACK

21  AND FORTH.  THERE IS GOING TO BE A PULL ON THEM BECAUSE THEY

22  KNOW IF THEY DON'T GO SHOW UP, THEY ARE GOING TO GET ARRESTED

23  FOR CONTEMPT THE NEXT TIME THEY DO SHOW UP.

24           MR. RAPP:  I DO WANT TO CORRECT THAT.  NO, THEY

25  CAN'T CROSS BACK AND FORTH.  THEY ARE ABSOLUTELY PRECLUDED

1   FROM COMING INTO THE UNITED STATES.  NEITHER OF THEM HAVE

2   CROSSING CARDS.

3           THE COURT:  AT LEAST ONE HAS BEEN DEPORTED.

4           MR. RAPP:  ONE HAS A CONVICTION WHO DID PRISON TIME

5   FOR METH WITHIN THE LAST TWO YEARS.

6           THE COURT:  AND HE'S BEEN DEPORTED?

7           MR. RAPP:  YES.  HE'S BEEN REMOVED.

8           THE COURT:  ONE SECOND.

9           COUNSEL, THE COURT'S ORDER IS THIS:  THE COURT

10  ORDERS THAT THE DEPOSITIONS BE DELAYED TO NO LATER THAN

11  APRIL 4.

12          FIRST, AS TO MR. ARAGON, THERE ARE NO DISCOVERY

13  ISSUES RELATING TO HIM.  IT APPEARS THAT HE WOULD BE

14  OTHERWISE AVAILABLE TOMORROW, EXCEPT FOR HIS MORAL OBLIGATION

15  AT A FUNERAL.  IT SEEMS THAT HE WOULD BE -- FIND IT

16  GRATUITOUS TO CONTINUE HIS DEPOSITION BECAUSE OF THAT.  THERE

17  SHOULD BE NO PREJUDICE ON THE PART OF THE UNITED STATES OR

18  THE DEFENDANT IN THAT REGARD.

19          WITH RESPECT TO SANCHEZ.  BOTH PARTIES IN THIS CASE

20  HAVE, OF COURSE, THE RIGHT AND OBLIGATION TO PLAN ITS

21  STRATEGIES AS TO HOW IT PROCEEDS WITH THIS CASE.  THIS IS NOT

22  A -- THIS IS NOT A TRADITIONAL MATERIAL WITNESS TYPE OF CASE.

23  THE COURT RECOGNIZES THE UNITED STATES' CHALLENGES WITH

24  RESPECT TO WITNESSES OF THIS NATURE, HAVING THEM AS WITNESSES

25  AND DEALING WITH THE LEVEL OR EXTENT OF THEIR CONTROL OVER

1    THESE WITNESSES TO BE AVAILABLE.

2         ON THE OTHER HAND, THE DEFENSE HAS HAD THIS

3    DISCOVERY FOR QUITE A BIT OF TIME.  AND PERHAPS IT WAITED

4    UNTIL AFTER TRYING TO WORK A DEAL BEFORE LOOKING INTO IT.

5    BUT WHATEVER THAT STRATEGY WAS, THERE HAS BEEN TIME TO START

6    WORKING ON THE DEPOSITIONS OF THESE TWO PRIMARY WITNESSES.

7    THESE -- THIS IS THE CORE OF THE GOVERNMENT'S CASE.  THESE

8    ARE THE SEEDS OF THE GOVERNMENT'S CASE, IT APPEARS FROM WHAT

9    HAS BEEN SHARED WITH ME HERE TODAY.

10        SO FOR THE DEFENSE TO WAIT UNTIL A MONTH AGO TO

11   START WORKING ON THESE DEPOS SHOULD NOT BE HELD AGAINST THE

12   UNITED STATES.  IT SHOULDN'T PREJUDICE THE GOVERNMENT IN

13   GOING FORWARD WITH A DEPOSITION THAT THE COURT HAS ALREADY

14   ORDERED.

15        I'M OF THE MIND THAT THE TWO WEEKS, SLIGHTLY MORE

16   THAN TWO WEEKS IS ENOUGH TIME TO CONTINUE.  THE DEFENSE NEED

17   ONLY FOCUS ON THE TWO STATEMENTS FOR -- YOU KNOW, FOR

18   MR. SANCHEZ OR THE DISCOVERY ON THE AUDIOS FOR MR. SANCHEZ

19   THAT IT HAS NOT HAD AN OPPORTUNITY TO LOOK INTO, FOCUS ITS

20   ATTENTION AND BE PREPARED FOR THE DEPO.  YOU SHOULD BE

21   PREPARED FOR THE BALANCE OF SANCHEZ'S TESTIMONY ALREADY.

22        THE DEPO IS SET FOR TOMORROW.

23        MR. KIRBY:  I'M SORRY, YOUR HONOR?

24        THE COURT:  I'M SORRY.  THE DEPO WAS SET FOR

25   TOMORROW.  SO YOU SHOULD HAVE BEEN PREPARED WITH THE BALANCE

1    OF ANY EVIDENCE OR DISCOVERY YOU'VE RECEIVED ON SANCHEZ

2    BEFORE YOU BEGAN YOUR -- I MEAN, HOW CAN YOU EVEN NEGOTIATE

3    RESOLUTION UNLESS YOU KNOW WHAT SANCHEZ IS GOING TO SAY?  HOW

4    DO YOU GET INTO A SETTLEMENT DISCUSSION WITHOUT KNOWING WHAT

5    SANCHEZ IS GOING TO SAY?

6          SO YOU HAD TO BE PREPARED FOR THAT ANYWAY IN DEALING

7    WITH YOUR PLEA NEGOTIATIONS.  SO THIS ISN'T NEWLY DISCOVERED

8    EVIDENCE.  BUT AT THE SAME TIME, I AM AWARE FROM OTHER CASES

9    IN THIS DISTRICT, WE HAVE QUITE A FEW OF THEM WITH FEDERAL

10    DEFENDERS AND EVERYONE ELSEWHERE WHERE THESE -- THE

11    TRANSCRIPTION TAKES A LOT OF TIME.  EVEN A VIDEOTAPE

12    DEPOSITION TAKES A LOT OF TIME TO TRANSCRIBE IN A BUSY

13    DISTRICT, TO MAKE THEM COURT CERTIFIED, READY TO BE PRESENTED

14    IN THE COURTROOM.

15          I'M OF THE MIND THAT A CONTINUANCE TO APRIL 4TH IS

16    MORE THAN ENOUGH TIME FOR THE DEFENDANT TO GET READY FOR THE

17    SANCHEZ DEPO AND ALSO FOR THE SECOND WITNESS' DEPO.  AND THAT

18    WE'LL PROCEED FROM THERE.  THERE IS NOT GOING TO BE ANOTHER

19    COURT APPEARANCE.  I'M GOING TO BE OUT OF THE DISTRICT ON

20    APRIL 4TH, AND I'M NOT RETURNING UNTIL THE 30TH OF APRIL.

21    IT'S DONE APRIL 4TH.

22          IF THE GOVERNMENT HAS TROUBLE HAVING ITS WITNESSES

23    SHOW UP ON THAT DATE, YOU CAN SCHEDULE -- AFTER YOU CONTACT

24    THEM, I'LL BE IN THE DISTRICT NEXT MONDAY.  SO IF YOU'D LIKE

25    TO HAVE A TELEPHONE CONFERENCE, IF THERE IS SOME ISSUES ABOUT

1 AVAILABILITY, THAT'S A DIFFERENT ISSUE AT THIS POINT, BECAUSE

2 OF THE NATURE OF THE WITNESSES. THEY ARE NOT CITIZENS, THEY

3 CAN'T JUST GO AND KNOCK ON THE DOOR AND TELL THEM TO BE THERE

4 OR ISSUE A SUBPOENA FOR THEIR PRESENCE.

5 SO ABSENT AN AVAILABILITY ISSUE THAT I WILL ADDRESS

6 BEFORE CLOSE OF BUSINESS ON THE 30TH OF APRIL AND -- I'M

7 SORRY, IT'S MONDAY, THE 2ND OF APRIL, EXCUSE ME, THE 2ND OF

8 APRIL. WHILE I'LL BE IN THE DISTRICT THE MORNING OF THE 3RD

9 OF APRIL, AFTER THAT, I'M GONE UNTIL THE 30TH OF APRIL. SO

10 ABSENT AN AVAILABILITY ISSUE, THE DEPOS WILL TAKE PLACE NO

11 LATER THAN APRIL 4.

12 I'LL SET IT FOR APRIL 4TH. IF THERE IS A DATE

13 CONVENIENT A DAY OR TWO BEFORE THEN, THAT'S AVAILABLE TO THE

14 WITNESSES AND TO ALL PARTIES, YOU CAN MEET AND CONFER AND WE

15 CAN DISCUSS IT. IF THERE IS A NEED FOR AN EMERGENCY MEETING,

16 WE CAN DO IT BY TELEPHONE. OKAY. THE DEFENDANT IS ON BOND.

17 HE CAN PARTICIPATE BY PHONE AS WELL.

18 MR. KIRBY: THANK YOU, YOUR HONOR.

19 THE COURT: AS OPPOSED TO PULLING EVERYBODY ELSE

20 HERE.

21 BUT I'M OF THE MIND, AFTER CONSIDERING ALL THE

22 CIRCUMSTANCES, THE DEFENDANT'S RIGHT TO BE PREPARED FOR A

23 DEPOSITION THAT MIGHT BE THE LAST OPPORTUNITY TO ADDRESS

24 THESE WITNESSES -- WE DON'T KNOW -- AND THE GOVERNMENT'S

25 RIGHT TO PUT ON ITS CASE AND TO PRESERVE ITS CASE, I'M OF THE

1    MIND THAT A DEPO ON APRIL 4TH IS APPROPRIATE FOR BOTH

2    PARTIES.  ALL RIGHT.

3         MR. KIRBY:  THANK YOU, YOUR HONOR.

4         THE COURT:  I AM NOT ORDERING ANY OTHER DISCOVERY.

5    I WOULD DIRECT THE PARTIES TO CONTINUE TO MEET AND CONFER

6    ABOUT THE MISSING DVD FROM THE 2016 ARREST, OCTOBER 18TH,

7    2016 ARREST.  BUT THE DEPO IS GOING FORWARD EVEN WITHOUT

8    THAT, AND THEN WE'LL DEAL WITH IT IN MOTIONS IN LIMINE, IF

9    THERE IS SOMETHING THERE THAT WE NEED TO DEAL WITH IN A

10   MOTION-IN-LIMINE SESSION THEREAFTER.

11        MR. KIRBY:  YOUR HONOR, IF I MIGHT.  THE REQUEST FOR

12   PHONE RECORDS THAT WAS CONTAINED IN THE MOTION HEARING, IN

13   THE MOTION I MADE.  THOSE HAVEN'T BEEN ADDRESSED.

14        THE COURT:  AS TO SANCHEZ' PHONE RECORDS?

15        MR. KIRBY:  NO.  AS TO THE PEOPLE THAT MR. DUREN

16   WOULD HAVE BEEN IN CONTACT WITH ON JULY 18TH REGARDING THE

17   SEIZURE AT BANK OF AMERICA.

18        THE COURT:  HOW DOES THAT FACTOR IN WITH SANCHEZ?

19        MR. KIRBY:  WELL, SANCHEZ IS ONE OF THOSE PEOPLE.

20   NO, THIS IS NOT DISCOVERY AS TO SANCHEZ IN PARTICULAR.  THIS

21   IS DISCOVERY IN GENERAL, AND IT GOES TO THE JULY 18TH, 2013

22   BANK OF AMERICA SUPPOSED SEIZURE.

23        AND WE'VE ASKED FOR CERTAIN NUMBERS OF INDIVIDUALS

24   THAT MR. DUREN WOULD HAVE CALLED.  AND WE'RE ASKING FOR THE

25   RECORDS OF THOSE INDIVIDUALS, BECAUSE IF HE WAS CALLING ABOUT

1    A LEGITIMATE SEIZURE, THEN CERTAIN OTHER PEOPLE WOULD BE

2    MAKING CALLS.  FOR EXAMPLE, HIS ANALYST, RENNER, WOULD HAVE

3    CALLED THE PORT, WOULD HAVE CALLED OTHER AGENCIES, THE

4    SHERIFF, C.H.P., CAN THEY HELP WITH THE STOP.  AND THAT

5    REBUTS THE GOVERNMENT'S CONTENTION THAT IT WAS AN ILLEGAL

6    SEIZURE.

7           THE COURT:  SO YOU'RE REQUESTING ALL SUBJECTS AND

8    VEHICLES EVER RUN IN NCIC OR TECS BY THE DEFENDANT FROM --

9    YOU HAVE FROM 2008 TO MARCH OF 2015.

10           MR. KIRBY:  I'M SORRY.  THAT'S A DIFFERENT REQUEST

11    ALTOGETHER.

12           THE COURT:  THAT'S A DIFFERENT REQUEST?

13           MR. KIRBY:  THIS JUST DEALS WITH PHONE NUMBERS AND I

14    GUESS CELL SITE INFORMATION FOR THE PEOPLE THAT HE CALLED ON

15    JULY 18TH.

16           THE COURT:  DOES THE GOVERNMENT HAVE EVIDENCE OF THE

17    DEFENDANT'S CELL PHONE RECORDS OR CELL SITE COVERAGE?

18           MR. RAPP:  WE DO.  BUT THAT'S ACTUALLY NOT WHAT HE'S

19    ASKING.  LET ME MAKE -- MAYBE I CAN CRYSTALLIZE THE

20    REQUEST.

21           THE COURT:  ALL RIGHT.

22           MR. RAPP:  THERE ARE A NUMBER OF PEOPLE THAT WOULD

23    HAVE BEEN INVOLVED IN A STOP.  ONE OF THEM IS A GUY BY THE

24    NAME OF RENNER, WHO ACTUALLY IS LOCATED IN THE WASHINGTON,

25    D.C. AREA.  ONE IS POSSIBLY THE DEFENDANT'S SUPERVISOR.  AND

1    THEN THERE ARE TWO OTHERS.  ONE IS A BORDER PATROL AGENT AND

2    THEN THERE IS THE PHONE RECORDS FOR THE BORDER PATROL DUTY

3    LINE.

4            MR. KIRBY:  IT'S ACTUALLY THE CANINE UNIT.

5            MR. RAPP:  CANINE UNIT.  HERE IS WHY WE'RE NOT

6    INCLINED TO GET THOSE RECORDS.  BECAUSE WHAT -- THE DEFENDANT

7    WAS QUESTIONED IN A RECORDED INTERVIEW AND UNAMBIGUOUSLY

8    SAID, I WASN'T PART OF THAT STOP.  I DON'T KNOW THESE GUYS.

9    I NEVER MET WITH THEM.  I WAS NEVER AT A BANK OF AMERICA.

10   ZERO.  HE ALSO SAYS, I WAS NEVER INVOLVED IN A TRAFFIC STOP

11   OF A CAR SINCE 2008.

12           NOW, THIS INTERVIEW TOOK PLACE ON SEPTEMBER 8TH OF

13   2014.  SO WHAT -- THE DEFENSE IS CHANGING THE THEORY IN

14   SAYING, WAIT A MINUTE, HE WAS INVOLVED IN THAT STOP, AND FOR

15   THAT REASON, WE WANT ALL OF THESE PEOPLE'S TELEPHONE RECORDS

16   TO CORROBORATE THAT HE CALLED THEM BEFORE HE BECAME INVOLVED

17   IN THE STOP.

18           IT'S A REMARKABLE CHANGE IN A THEORY OF DEFENSE;

19   THEY DON'T HAVE TO HAVE A DEFENSE, BUT IT'S A REMARKABLE

20   CHANGE IN THAT HE'S ALREADY GIVEN A RECORDED INTERVIEW WHERE

21   HE SAYS, I WASN'T INVOLVED IN A STOP AT ALL.  ZERO.

22           SO WE'RE STRUGGLING TO UNDERSTAND WHY IS IT THAT WE

23   WOULD HAVE TO GO BACK NEARLY FIVE YEARS TO TRY TO UNCOVER

24   THESE PHONE RECORDS FOR A STOP THAT HE SAYS HE WAS NEVER

25   INVOLVED IN.

1          MR. KIRBY:  AND YES, YOUR HONOR, THERE HAS BEEN A

2     CHANGE IN THE DEFENDANT'S THEORY, WHICH IS ALLOWABLE.  WE

3     PLAN THAT MR. DUREN WILL TAKE THE STAND AND DESCRIBE THE

4     EVENTS LEADING UP TO HIM CALLING ANALYST -- WHAT WAS IT,

5     BRENNER? -- RENNER AND HIS BOSS AND CANINE AGENT AND THE

6     BORDER PATROL AGENTS.

7          MR. RAPP:  WHAT I WOULD SAY TO THAT IS THAT HE HAS

8     BEEN GIVEN HIS OWN PHONE RECORDS FOR HIS GOVERNMENT-ISSUED

9     PHONE AND FOR HIS PERSONAL PHONE.  HE HAS THAT IN SPADES FOR

10    JULY 18TH, 2013.  IF HE CALLED ANY OF THESE PEOPLE, THOSE

11    NUMBERS WOULD SHOW UP ON HIS OWN PHONE NUMBERS.

12         MR. KIRBY:  BUT NOT THE NUMBERS THAT PERSON CALLED,

13    LIKE THE PORT, LIKE SHERIFFS, C.H.P. IN RESPONSE TO

14    MR. DUREN'S CALL TO, FOR EXAMPLE, MR. RENNER.

15         THE COURT:  DOES THAT MATTER?

16         MR. KIRBY:  YEAH.  BECAUSE IT SHOWS THAT HE WAS

17    CALLING --

18         THE COURT:  IF HE REPORTED THE STOP TO A SUPERVISOR,

19    TO SOMEONE IN THE CHAIN PURSUANT TO THE PROTOCOL, WHAT DOES

20    IT MATTER WHAT THEY DID WITH THE INFORMATION?

21         MR. KIRBY:  BECAUSE IF IT WAS NOT A LEGAL SEARCH, IF

22    THIS WAS NOT HIM GOING THERE AS AN AGENT BUT RATHER JUST TO

23    STEAL MONEY, THEN HE WOULDN'T CALL IT IN.

24         THE COURT:  WELL, IF HIS RECORDS REFLECT HE CALLED

25    IT IN, THEN YOU'VE GOT YOUR THEORY.  I MEAN, HOLD ON.  IF

1  THAT'S ONE OF YOUR THEORIES OF DEFENSE, THAT IT WAS A LAWFUL

2  STOP AND IT WAS REPORTED, HIS RECORDS SHOULD SHOW THAT.  AND

3  HOW MUCH FURTHER DO YOU HAVE TO GO?

4         OTHERWISE, IT'S A FISHING EXPEDITION TO TRY TO SHOW

5  THAT 15 OTHER PEOPLE WERE CALLED; BUT IT'S NOT HIS BURDEN TO

6  PROVE THAT.  THE GOVERNMENT WOULD HAVE TO DISPROVE THAT HE

7  MADE THAT CALL OR HE DIDN'T CALL, FOR THE SAME REASONS.

8         MR. KIRBY:  IT BUTTRESSES -- IT BUTTRESSES

9  MR. DUREN'S THEORY OF DEFENSE.

10        THE COURT:  BUT HIS OWN PHONE RECORDS SHOULD SHOW

11 HIS THEORY OF DEFENSE.

12        MR. KIRBY:  IT WILL NOT SHOW WHO THOSE OTHER PEOPLE

13 CALLED, OR, MORE IMPORTANTLY, FOR BORDER PATROL AND CANINE,

14 WHETHER THEY WERE, IN FACT, ON THEIR WAY AS DIRECTED BY

15 MR. DUREN.  BECAUSE WHY WOULD HE SEND PEOPLE DOWN TO HIM IF

16 HE WAS STEALING MONEY?

17        THE COURT:  EXACTLY.  SO THAT'S YOUR THEORY.

18        MR. KIRBY:  WELL, I NEED THE CELL SITE FOR THE

19 CANINE AND FOR THE BORDER PATROL TO SHOW THAT THEY ARE ON

20 THEIR WAY TOWARDS WHERE HE IS.

21        THE COURT:  TO SHOW THAT SOMEONE ELSE DID THEIR JOB?

22        MR. KIRBY:  IN RESPONSE --

23        THE COURT:  HE DID HIS IF HE REPORTS THE STOP;

24 RIGHT?  HE HAS DONE HIS JOB IF HE REPORTS THE STOP.  IT'S OUT

25 OF HIS HANDS AT THAT POINT.  IT'S SOMEBODY ELSE'S

1   RESPONSIBILITY.

2          ALL RIGHT.  I'M NOT ASKING YOU TO AGREE WITH ME, BUT

3   IF HIS THEORY IS THAT THIS WAS A LAWFUL STOP AND HE CALLED IT

4   IN, HIS RECORDS SHOULD REFLECT THAT.

5          MR. KIRBY:  BUT THEY WON'T REFLECT THE CONTENTS OF

6   THE CALL, OBVIOUSLY.

7          THE COURT:  WELL, ARE YOU SUGGESTING THE CALLS

8   WERE -- IS THIS TO DISPATCH?

9          MR. KIRBY:  THIS IS TO HIS ANALYST THAT HE WORKS

10  WITH REGULARLY.  AND HE CALLS HIM WHEN HE'S ABOUT TO MAKE A

11  STOP, SO THAT THAT PERSON CAN MAKE OTHER NECESSARY CALLS TO

12  ASSIST, LIKE CALLING THE PORT OF ENTRY.  WE HAVE SOMEBODY

13  HEADED SOUTH.  LIKE CALLING C.H.P., WE HAVE A LONE AGENT EN

14  ROUTE TO A POSSIBLE SEIZURE, CAN YOU PROVIDE BACKUP?

15         THE COURT:  WELL, THE COURT FINDS THAT ANY EVIDENCE

16  THAT THE GOVERNMENT HAS THAT WILL CORROBORATE ANY PHONE CALL

17  MADE TO A GOVERNMENT OFFICER OR OFFICE ON THAT DAY SHOULD BE

18  RELEASED.

19         FOR EXAMPLE, IF HE CALLS HIS ANALYST AND THE ANALYST

20  IS REQUIRED TO RECORD THAT CALL IN SOME KIND OF FASHION IN

21  GOVERNMENT RECORDS AND TO MAKE ANOTHER CALL, TO PROVIDE

22  COMMUNICATIONS THAT THE ANALYST HAS TO SHOW THAT A CALL WAS

23  MADE, THAT'S EXCULPATORY.

24         BUT AS TO WHAT HAPPENS DOWN THE CHAIN, SIR, CELL

25  SITES AND ALL THAT, I THINK THAT'S GOING TOO FAR ASTRAY.  IF

1   THERE IS ANY CORROBORATION ON THAT THEORY, IF HE MADE A CALL

2   TO A GOVERNMENT AGENT OR -- AGENT OR OFFICER PURSUANT TO

3   PROTOCOL, THE COURT IS OF THE MIND THAT IT'S EXCULPATORY IF

4   THAT POINT OF CONTACT HAS EVIDENCE THAT THAT CALL WAS MADE,

5   WHATEVER IT MIGHT BE, OTHER THAN JUST HIS RECORDS.

6          MR. RAPP:  SO JUST TO BE CLEAR.  SO THIS RENNER

7   PERSON THAT THEY HAVE BEEN REFERRING TO, THEY HAVE HIS --

8          THE COURT:  IF THERE IS SOME LOG THAT HE HAS TO

9   HAVE, ANY TYPE OF WAY THAT IT'S MEMORIALIZED OR BY -- IS IT

10  RENNER?

11         MR. RAPP:  RENNER.

12         THE COURT:  RENNER.  IF THAT'S HIS POINT OF CONTACT,

13  HIS PHONE REFLECTS HE MADE A CALL TO THAT INDIVIDUAL, THEN I

14  THINK IT'S FURTHER EXCULPATORY TO DETERMINE THAT THAT CALL

15  WAS LODGED OR THAT PERSON DID SOMETHING WITH THAT CALL.

16  BEYOND THAT, IT'S FISHING AS TO HOW MANY UNITS WERE CALLED

17  IN, BECAUSE IT SHOULDN'T GO ANY FURTHER THAN THAT.

18         MR. RAPP:  ALL RIGHT.

19         MR. KIRBY:  THANK YOU, YOUR HONOR.

20         MR. RAPP:  UNDERSTOOD.

21         THE COURT:  ANYTHING ELSE?

22         MR. KIRBY:  I DON'T THINK SO, YOUR HONOR.

23         THE COURT:  ALL RIGHT.

24         MR. KIRBY:  WE WILL MEET AND CONFER IN THE MEANTIME

25  AND WE'LL HAVE THE DEPOSITIONS DONE BY THE 4TH.

1          THE COURT:  ALL RIGHT.  I HAVE A CONFERENCE ROOM

2     DOWN THE HALL.  IF YOU WANT TO MEET AND CONFER FURTHER TODAY,

3     I'LL LET YOU USE IT.  I MEAN, A LARGER CONFERENCE ROOM, WHERE

4     YOU CAN SPREAD OUT AND REALLY GET DOWN TO SOME BRASS TACKS

5     AND IRON OUT SOME OTHER THINGS, IF YOU HAVE THE TIME OR IF

6     YOU HAVE THE INTEREST IN DOING THAT NOW.

7          BUT, SIR, AND -- MR. DUREN, APRIL 4TH.  AND THE ONLY

8     EXTRAORDINARY CIRCUMSTANCE IS THE UNAVAILABILITY OF A

9     WITNESS.  ALL RIGHT.

10          MR. KIRBY:  YES, YOUR HONOR.

11          MR. RAPP:  THANK YOU, SIR.

12          THE COURT:  ALL RIGHT.  COUNSEL, I APPRECIATE YOUR

13     TAKING THE TIME TO MEET AND CONFER THROUGH THE LUNCH HOUR.

14          MR. KIRBY:  THANK YOU, YOUR HONOR.

15          (PROCEEDINGS CONCLUDED AT 2:40 P.M.)

16                         --OOO--

17                  C E R T I F I C A T I O N

18          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
       QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
19     STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND
       CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN THE
20     AFOREMENTIONED CAUSE; THAT SAID TRANSCRIPT IS A TRUE AND
       CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE
21     FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS
       OF THE UNITED STATES JUDICIAL CONFERENCE.

22          DATED:  APRIL 25, 2018, AT SAN DIEGO, CALIFORNIA.

23                              S/CAMERON P. KIRCHER

24                              CAMERON P. KIRCHER

25

COMPUTER-AIDED TRANSCRIPTION