<pre>
 1                UNITED STATES DISTRICT COURT

 2               SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,    )
                                  )
 5                PLAINTIFF,      )    CASE NO. 16MJ3668-WVG
                                  )
 6   VS.                          )    SAN DIEGO, CALIFORNIA
                                  )
 7   TYRONE CEDRIC DUREN,         )    TUESDAY,
                                  )    DECEMBER 13, 2016
 8                DEFENDANT.      )    3:11 P.M.
     _____)
 9

10

11               TRANSCRIPT OF DETENTION HEARING
            BEFORE THE HONORABLE WILLIAM V. GALLO
                UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:

14   FOR THE GOVERNMENT:       KEVIN M. RAPP
                               ABBIE B. MARSH
15                             ASSISTANT U.S. ATTORNEYS
                               880 FRONT STREET
16                             SAN DIEGO, CALIFORNIA  92101

17

     FOR THE DEFENDANT:        ANTHONY E. COLOMBO, JR.
18                             MICHAEL HERNANDEZ
                               ATTORNEYS AT LAW
19                             105 WEST F. STREET
                               SUITE 310
20                             SAN DIEGO, CALIFORNIA  92101

21

22   TRANSCRIPT ORDERED BY:   JOHN KIRBY, ESQ.

23   TRANSCRIBER:             CAMERON P. KIRCHER

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION.
25
</pre>

1        SAN DIEGO, CALIFORNIA - TUESDAY, DECEMBER 13, 2016

2                            3:11 P.M.

3              THE CLERK:  CALLING MATTER NO. 10, 16MJ3668, THE

4     UNITED STATES OF AMERICA VERSUS TYRONE CEDRIC DUREN.

5              MR. RAPP:  GOOD AFTERNOON.  KEVIN RAPP AND ABBIE

6     MARSH ON BEHALF OF THE UNITED STATES

7              THE COURT:  GOOD AFTERNOON.

8              MS. MARSH:  GOOD AFTERNOON, YOUR HONOR.

9              THE COURT:  GOOD AFTERNOON.

10             MR. COLOMBO:  GOOD AFTERNOON, YOUR HONOR.  ANTHONY

11    COLOMBO AND MICHAEL HERNANDEZ ON BEHALF OF MR. DUREN, WHO IS

12    IN CUSTODY AND WILL BE PRESENT SHORTLY.

13             THE COURT:  GOOD AFTERNOON.

14             MR. DUREN, GOOD AFTERNOON.  THIS IS THE TIME SET FOR

15    YOUR ARRAIGNMENT ON AN INDICTMENT AS WELL AS A DETENTION

16    HEARING.

17             WE'LL START FIRST WITH THE ARRAIGNMENT.

18             THE CLERK:  TYRONE CEDRIC DUREN, IS THAT YOUR TRUE

19    NAME?

20             THE DEFENDANT:  YES.

21             THE CLERK:  YOU ARE HEREBY INFORMED THAT AN

22    INDICTMENT HAS BEEN FILED, CHARGING YOU WITH CONSPIRACY TO

23    COMMIT MONEY LAUNDERING, TRANSACTIONAL MONEY LAUNDERING,

24    INTERNATIONAL MONEY LAUNDERING, STRUCTURING FINANCIAL

25    TRANSACTIONS, FALSE STATEMENTS, BANK FRAUD, CONSPIRACY AND

1    CRIMINAL FORFEITURE.

2         COUNSEL, HAVE YOU RECEIVED A COPY OF THE INDICTMENT

3    AND DO YOU WAIVE FURTHER READING?

4         MR. COLOMBO:  YES.

5         THE CLERK:  YOU ARE FURTHER INFORMED THAT YOU HAVE

6    THE RIGHT TO BE REPRESENTED BY COUNSEL AT ALL PROCEEDINGS

7    BEFORE THE COURT.  YOU HAVE THE RIGHT TO REMAIN SILENT.  YOU

8    HAVE THE RIGHT TO TRIAL BY JURY.  YOU HAVE THE RIGHT TO

9    CONFRONT AND CROSS-EXAMINE ANY WITNESSES WHO TESTIFY AGAINST

10   YOU, AND YOU HAVE THE RIGHT TO HAVE WITNESSES SUBPOENAED TO

11   TESTIFY ON YOUR BEHALF.

12        HOW DO YOU NOW PLEAD TO THE COUNTS IN WHICH YOU ARE

13   NAMED, GUILTY OR NOT GUILTY?

14        MR. COLOMBO:  PLEASE ENTER A PLEA OF NOT GUILTY,

15   YOUR HONOR.

16        THE COURT:  MR. DUREN, A NOT-GUILTY PLEA IS ENTERED

17   FOR YOU AT THIS TIME.

18        YOU ARE TO APPEAR BEFORE JUDGE HOUSTON ON JANUARY

19   THE 9TH AT 10:30 IN THE MORNING FOR A MOTION HEARING AND

20   TRIAL SETTING.

21        MR. DUREN, DO YOU UNDERSTAND?

22        THE DEFENDANT:  I DO.

23        THE COURT:  ALL RIGHT.  BOTH SIDES READY TO PROCEED

24   WITH THE DETENTION HEARING?

25        MR. RAPP:  THE UNITED STATES IS, YOUR HONOR.

1          MR. COLOMBO:  YES, YOUR HONOR.

2          THE COURT:  ALL RIGHT.  I HAVE RECEIVED AND READ THE

3    GOVERNMENT'S MOTION FOR DETENTION, ALONG WITH THE DEFENDANT'S

4    RESPONSE IN OPPOSITION TO THAT MOTION.  I'M READY TO PROCEED

5    AS WELL.

6          MR. RAPP.

7          MR. RAPP:  JUDGE, JUST BY WAY OF REPLY, THE UNITED

8    STATES DOES NOT BELIEVE THE SURETY THAT THE DEFENSE IS

9    SUGGESTING IS APPROPRIATE FOR TWO REASONS.

10          ONE IS, THIS IS THE DEFENDANT'S PARENTS.  OUR

11    UNDERSTANDING IS THEY ARE IN A PRECARIOUS FINANCIAL

12    SITUATION.  THEY HAVE DECLARED BANKRUPTCY.  THIS PARTICULAR

13    PROPERTY HAS BEEN SUBJECT TO LIENS.  IN ANY EVENT, WE DON'T

14    BELIEVE $150,000 IN EQUITY IS SUFFICIENT TO SECURE THIS

15    DEFENDANT'S APPEARANCE.  SO FOR THAT REASON, WE DON'T BELIEVE

16    THAT THE SURETY IS APPROPRIATE.

17          SECONDLY, WE DON'T KNOW WHAT THIS DEFENDANT'S

18    FINANCIAL SITUATION IS.  THIS DEFENDANT HAD, OVER THE COURSE

19    OF FOUR YEARS, TWO MILLION DOLLARS FLOWING THROUGH HIS

20    ACCOUNTS.  AND THAT'S JUST THE MONEY THAT WAS DEPOSITED INTO

21    HIS ACCOUNTS.  WE DON'T KNOW WHAT CASH HOARDS HE HAS

22    AVAILABLE TO HIM.  AND SO FOR THAT REASON, WE DON'T THINK

23    THAT $150,000, EVEN IF IT COULD BE DEMONSTRATED THAT THE

24    DEFENDANT'S PARENTS ARE FINANCIALLY IN A POSITION TO CONTINUE

25    TO PAY ON THAT HOME.

1    ALSO, BY WAY OF REPLY TO THE DEFENDANT'S MOTION

2 WHERE HE SUGGESTS THIS DEFENDANT KNEW THAT HE WAS UNDER

3 INVESTIGATION AND REMAINED WITHIN THE SOUTHERN DISTRICT OF

4 CALIFORNIA, ONE HAS TO UNDERSTAND THE CHRONOLOGY OF EVENTS.

5    THIS DEFENDANT WAS NOTIFIED IN SEPTEMBER OF 2014

6 THAT HE WAS UNDER INVESTIGATION.  HE WAS INTERVIEWED.  BY

7 MARCH OF 2015, HE HAD RESIGNED HIS POSITION.

8    SHORTLY THEREAFTER, HE HAD TRAVELED TO EUROPE.

9 DURING THAT TRAVEL, HE HAD $4700 IN CASH ON HIM WHEN HE WAS

10 INSPECTED AT A PORT OF ENTRY.  BUT WHAT'S MOST IMPORTANT IS

11 HE SET UP BANK ACCOUNTS AND OBTAINED CREDIT CARDS IN CROATIA.

12    IN 2016, THE DURENS MADE TWO TRIPS INTERNATIONALLY.

13 ON THE FIRST TRIP TO EUROPE -- AND THIS WAS A MONTH-LONG TRIP

14 THAT TRAVERSED NOT ONLY COUNTRIES IN EUROPE BUT ISRAEL AND

15 RUSSIA -- HE ADDED HIS WIFE'S NAME TO THE BANK ACCOUNT IN

16 CROATIA.  HE THEN TOOK ANOTHER TRIP JUST RECENTLY -- AND THIS

17 IS WHAT RESULTED IN HIS ARREST -- TO AUSTRALIA AND NEW

18 ZEALAND.

19    THE DEFENDANT IN HIS PRETRIAL SERVICE REPORT

20 REPRESENTS THAT HE MAKES $5,000 A MONTH FROM HIS REAL ESTATE

21 BUSINESS.  WE DON'T HAVE ANY EVIDENCE THAT SUGGESTS THAT HE

22 MAKES THAT TYPE OF MONEY FROM THOSE RENTAL PROPERTIES.

23    THE REAL ESTATE INVESTMENTS THAT HE HAS IN

24 PHILADELPHIA ARE COMPLICATED BY THE FACT THAT THREE OF THE

25 PROPERTIES THAT HE HAS AS PART OF HIS REAL ESTATE BUSINESS

1    ARE SUBJECT TO A BANKRUPTCY RECEIVER.  IN OTHER WORDS, A

2    BANKRUPTCY RECEIVER HOLDS THE DEED OF TRUST ON THE PROPERTIES

3    THAT HAVE ANY EQUITY IN THEM.

4         THE DEFENDANT, IN ORDER TO CONTINUE TO HAVE AN

5    INTEREST IN THAT REAL ESTATE BUSINESS, HAD TO PAY THE

6    BANKRUPTCY RECEIVER $55,000.  WE HAVE NO IDEA WHERE HE GOT

7    THAT MONEY.  AND HE HAS TO CONTINUE TO PAY TO MAINTAIN HIS

8    REAL ESTATE BUSINESS, WHICH HE HAS REPRESENTED IS HIS PRIMARY

9    SOURCE OF REVENUE, HE HAS TO PAY THE BANKRUPTCY RECEIVER

10   $4100 A MONTH.

11        HIS MORTGAGE ON HIS HOUSE HE REPRESENTS IS $2500 A

12   MONTH.  AND HE SAYS THAT HIS MONTHLY INCOME -- I DON'T KNOW

13   IF IT'S NET OR GROSS -- IS $5,000 A MONTH.  HERE IS THE

14   BOTTOM LINE IS, HIS FINANCES MAKE ABSOLUTELY NO SENSE, AND SO

15   WE DON'T KNOW THE STATE OF HIS FINANCES.

16        HE'S DEMONSTRATED TO BE UNTRUSTWORTHY AND NOT

17   CREDIBLE.  CERTAINLY IN THE INTERVIEWS WITH THE AGENTS, FOR

18   EXAMPLE, REPRESENTS THAT HE WAS NOT PART OF A -- WHAT WE

19   BELIEVE TO BE NEARLY A $450,000 SEIZURE FROM TWO DRUG

20   TRAFFICKERS.  HE IN A RECORDED INTERVIEW SAID HE WASN'T

21   THERE.  HE'S CLEARLY ON TAPE, VIDEOTAPE WITH THOSE DRUG

22   TRAFFICKERS.

23        WE KNOW IN ANALYZING HIS ROLE IN A LOT OF SEIZURES,

24   HE NEVER FOLLOWED FUNDAMENTAL STANDARD OPERATING PROCEDURE,

25   WHICH ALLOWED HIM ACCESS TO THIS MONEY.  THIS DEFENDANT IS

1    NOT TRUSTWORTHY.  WE DON'T BELIEVE THAT A SURETY PLUS

2    CONDITIONS WOULD -- THERE IS NOTHING IN HIS BACKGROUND THAT

3    SHOWS THAT HE WOULD BE COMPLIANT WITH THOSE CONDITIONS.

4           AND FOR THOSE REASONS, WE BELIEVE HE SHOULD BE HELD

5    DETAINED.

6           THE COURT:  MR. COLOMBO.

7           MR. COLOMBO:  YOUR HONOR, I BELIEVE THAT IN THIS

8    CASE THERE IS A CONDITION OR COMBINATION OF CONDITIONS THAT

9    COULD SECURE MR. DUREN'S FUTURE APPEARANCE TO COURT.

10          WHAT WE HAVE PROPOSED IS A PROPERTY BOND IN THE

11   AMOUNT OF $150,000, WHICH IS OWNED BY MR. DUREN'S PARENTS.

12   HIS FATHER, WHO IS IN COURT TODAY, AS WELL AS HIS MOTHER.

13   HIS FATHER IS DENNIS, AND HIS MOTHER, CHARLEEN, ARE BOTH IN

14   COURT TODAY TO DEMONSTRATE THEIR CONCERN AND THEIR SUPPORT

15   FOR MR. DUREN AND THAT THEY ARE WILLING TO BE SURETIES ON THE

16   BOND.

17          IN REVIEWING THE PAPERWORK THAT I HAVE RECEIVED FROM

18   THEM, THEY PURCHASED THEIR HOME IN 1994.  IT IS IN OCEANSIDE.

19   THEY HAVE OWNED IT SINCE THEN.  THE APPRAISAL THAT THEY

20   PROVIDED TO ME THAT THEY RECEIVED YESTERDAY DEMONSTRATES THAT

21   THE HOME IS APPRAISED AT APPROXIMATELY $540,000.  AND THEY

22   OWE APPROXIMATELY $356,000.

23          THE PRELIMINARY TITLE REPORT REPRESENTS THAT THEY

24   ARE CURRENT ON THEIR TAXES.  AND FROM SPEAKING WITH

25   MR. DUREN'S FATHER, THEY ARE CURRENT ON THEIR MORTGAGE.  AND

1    THEIR HOME WAS NEVER A PART OF THEIR BANKRUPTCY THAT WAS

2    SEVERAL YEARS AGO AND NOW HAS CONCLUDED.  SO THE HOME DOES

3    HAVE APPROXIMATELY 184,000 IN EQUITY.  I WASN'T SURE AT THE

4    TIME THAT I PREPARED THE RESPONSE EXACTLY THE EQUITY BECAUSE

5    I HAD NOT RECEIVED THE APPRAISAL OR ANY OF THE OTHER

6    INFORMATION.

7            MR. DUREN'S PARENTS ARE BOTH RETIRED.  MR. DUREN'S

8    FATHER IS RETIRED FROM THE DEPARTMENT OF HOUSING AND URBAN

9    DEVELOPMENT WHERE HE WAS A MANAGER.  HIS MOTHER IS BOTH

10   RETIRED FROM THE VETERANS AFFAIRS ADMINISTRATION AS WELL AS

11   THE I.R.S.  SHE WAS A CLERK FOR THE I.R.S. AND WAS A CLAIMS

12   MANAGER FOR THE V.A.  THEY ARE BOTH RETIRED AND RECEIVING

13   THEIR PENSIONS FROM THEM.

14           THEY PROVIDED THEIR TAX RETURNS FROM 2013 TO 2015.

15   IT INDICATES THEY MAKE COMBINED APPROXIMATELY $80,000 OR SO.

16   SO THEY ARE INDIVIDUALS WHO COULD POST THEIR HOME, WHO HAVE

17   OWNED THEIR HOME SINCE 1994 IN THIS COMMUNITY.

18           NOW, IN TERMS OF THE OTHER CONDITIONS, WE WOULD NOT

19   BE OPPOSED TO THOSE THAT HAVE BEEN SIMILARLY SET FOR

20   MR. DURENS'S WIFE, WHO WAS ARRAIGNED BEFORE YOUR HONOR AND

21   BAIL SET IN THE AMOUNT OF $50,000, WHICH INCLUDED CONDITIONS

22   OF, I BELIEVE, HOME DETENTION AND ELECTRONIC MONITORING.  SO

23   THERE ARE, I BELIEVE, CONDITIONS THAT COULD BE SET TO SECURE

24   HIS FUTURE PRESENCE IN COURT.

25           IN LOOKING AT THE 3142(G) FACTORS, YOUR HONOR, THE

1  COURT HAS TO BE REASONABLY ASSURED BUT NOT GUARANTEED THAT

2  MR. DUREN WOULD APPEAR AT HIS FUTURE APPEARANCES IN COURT.

3  AND I WOULD SAY THE FIRST AND MOST IMPORTANT FACTOR IS, AS

4  THE GOVERNMENT INDICATED, MR. DUREN WAS AWARE THAT HE WAS

5  UNDER INVESTIGATION.  AND HE WAS AWARE THAT HE WAS UNDER

6  INVESTIGATION FOR SEVERAL YEARS AND HE DID NOT FLEE.

7        HE DID TRAVEL ABROAD AND LIVED HIS LIFE, AS ANY

8  INDIVIDUAL SHOULD OR COULD UNDER THE CIRCUMSTANCES.  AND HE

9  RETURNED EACH TIME TO THE UNITED STATES.  IN FACT, WHEN HE

10  WAS ARRESTED, HE WAS ON A RETURN FLIGHT TO SAN DIEGO AND

11  THAT'S WHEN HE WAS ARRESTED.

12        SO DESPITE BEING AWARE THAT HE WAS UNDER

13  INVESTIGATION, HE'S ALWAYS RETURNED TO THE UNITED STATES.

14  AND HE'S HAD AMPLE AMOUNT OF TIME TO FLEE IF HE DOES HAVE

15  THESE CASH HOARDS THAT THE GOVERNMENT INDICATED MIGHT BE OUT

16  THERE.

17        IN ADDITION, MR. DUREN DID RETAIN MR. HERNANDEZ, AND

18  MR. HERNANDEZ HAS HAD ONGOING COMMUNICATION AND DIALOGUE WITH

19  THE GOVERNMENT CONCERNING THE INVESTIGATION.  SO THE -- IN

20  CONSIDERING THIS, HE'S HAD AMPLE OPPORTUNITY TO FLEE AND

21  DIDN'T.

22        BUT SPECIFICALLY LOOKING AT THE 3142(G) FACTORS.

23  FIRST, THE NATURE AND CIRCUMSTANCES OF THE OFFENSE.  THIS IS

24  NOT A PRESUMPTION CASE.  MR. DUREN HAS NOT BEEN CHARGED WITH

25  ANY VIOLENT OFFENSE OR ANY THREATS, INJURIES, AND IN THIS

1  PARTICULAR CASE, THERE IS NO PRESUMPTION THAT HE WOULD FLEE.

2  IN FACT, THE PRESUMPTION IS THAT BAIL SHOULD BE SET AND IS

3  APPROPRIATE.  SO THE NATURE AND CIRCUMSTANCES, I BELIEVE,

4  CLEARLY WEIGH IN FAVOR OF SETTING BOND.

5        CONSIDERING THE WEIGHT OF THE EVIDENCE, YOUR HONOR.

6  AS INDICATED IN MY MOVING PAPERS, AND I'M SURE AS YOUR HONOR

7  IS AWARE, THE WEIGHT OF THE EVIDENCE IS THE LEAST IMPORTANT

8  FACTOR; AND I THINK THAT THAT MAKES SENSE FOR TWO REASONS.

9  NUMBER ONE IS THAT AT THIS STAGE, THE GOVERNMENT HAS NOT

10 PROVIDED ANY DISCOVERY, AND WE ARE NOT IN A POSITION TO

11 SPECIFICALLY DISPUTE ANY OF THE ALLEGATIONS MADE IN THE

12 INDICTMENT.

13        IN ADDITION, I THINK UNDER 3142(G)(A), THE

14 PRESUMPTION OF INNOCENCE PREVAILS AT THIS PARTICULAR HEARING.

15 SO IN LOOKING AT THE WEIGHT OF THE EVIDENCE, I DON'T BELIEVE

16 THAT THAT WOULD WARRANT DETENTION IN THIS PARTICULAR CASE.

17        IN CONSIDERING THE HISTORY AND CHARACTERISTICS OF

18 MR. DUREN, HE'S A 46-YEAR-OLD UNITED STATES CITIZEN, BORN IN

19 PHILADELPHIA, PENNSYLVANIA.  HE MOVED TO CALIFORNIA WITH HIS

20 PARENTS IN APPROXIMATELY 1985 OR SO WHEN HE WAS 16 YEARS OLD.

21 HE MOVED TO SOUTHERN CALIFORNIA WITH HIS TWO BROTHERS, DENNIS

22 AND DUANE.  BOTH DENNIS AND DUANE DO MAINTAIN RESIDENCES

23 LOCALLY IN SOUTHERN CALIFORNIA.  AS INDICATED, HIS PARENTS DO

24 AS WELL.

25        HOWEVER, HIS YOUNGER BROTHER, DENNIS, WORKS -- I'M

1  SORRY, DUANE WORKS WITH MR. DUREN IN PHILADELPHIA IN THE REAL

2  ESTATE INDUSTRY, THE GRANITE HILLS PROPERTY THAT THEY BOTH

3  RUN AND MANAGE.

4         MR. DUREN DOES HAVE ONE 18-YEAR-OLD DAUGHTER WHO IS

5  ATTENDING HIGH SCHOOL LOCALLY AT MIRA COSTA HIGH SCHOOL.  SHE

6  HAS MET WITH OR I BELIEVE SPOKE WITH PRETRIAL SERVICES AND

7  PROVIDED VERIFICATION FOR THE INFORMATION PROVIDED BY

8  MR. DUREN WHEN HE WAS INTERVIEWED BY PRETRIAL SERVICES.

9         ALL OF MR. DUREN'S IMMEDIATE FAMILY CONTACTS ARE

10  LOCALLY IN SOUTHERN CALIFORNIA, IN SAN DIEGO, IN OCEANSIDE.

11  HE DOES, HOWEVER, HAVE FAMILIAL CONTACTS AS WELL AS BUSINESS

12  CONTACTS IN PENNSYLVANIA.

13         IN CONSIDERING HIS EMPLOYMENT, MR. DUREN -- AND HIS

14  EDUCATION, MR. DUREN IS A COLLEGE GRADUATE.  AS INDICATED IN

15  MY MOVING PAPERS, HE ATTENDED COLLEGE LOCALLY.  HE ALSO

16  ATTENDED COLLEGE IN COLORADO.  HE HAS RECEIVED ADVANCED

17  DEGREES, AS WELL AS GRADUATING FROM HIGH SCHOOL.

18         HE DID WORK FOR OR OWN A TELECOMMUNICATION BUSINESS,

19  CELL PHONE BUSINESS THAT HE SOLD PRIOR TO THEN GOING INTO LAW

20  ENFORCEMENT.  HE WORKED FOR CALIFORNIA HIGHWAY -- AS A

21  CALIFORNIA HIGHWAY PATROL OFFICER AND THEN, OF COURSE, FOR

22  THE DEPARTMENT OF HOMELAND SECURITY, RESIGNING IN 2015

23  AFTER -- SOME TIME AFTER HE HAD BEEN ADVISED OF THE

24  INVESTIGATION.

25         SO HIS LENGTH OF RESIDENCE IN THE COMMUNITY, HIS

1    EMPLOYMENT, HIS FAMILY TIES, HIS COMMUNITY TIES, EVERYTHING

2    WEIGHS IN FAVOR OF THE COURT SETTING BAIL IN THIS PARTICULAR

3    CASE.

4            IN ADDITION, MR. DUREN HAS NO HISTORY OF ANY DRUG OR

5    ALCOHOL ABUSE OR ANY MENTAL OR HEALTH ISSUES THAT WOULD

6    PREVENT HIM FROM MAKING HIS COURT APPEARANCE.  HE HAS

7    ABSOLUTELY NO CRIMINAL HISTORY.  NEVER BEEN ARRESTED OR EVEN

8    GOTTEN A TRAFFIC TICKET IN THE PAST.

9            IN TERMS OF HIS RECORD OF COURT APPEARANCES, WELL,

10   OF COURSE, THERE ISN'T ANY NEGATIVE COURT APPEARANCES BECAUSE

11   HE HAS NO RECORD OF ANY CRIMINAL ARREST.  IN TERMS OF BEING

12   ON PROBATION, PAROLE OR SUPERVISED RELEASE, OF COURSE THAT'S

13   NOT AN ISSUE.

14           I THINK, YOUR HONOR, IN TERMS OF ADDRESSING THE

15   FINANCES AND WHAT THE GOVERNMENT HAS ALLEGED.  THE GOVERNMENT

16   CERTAINLY COULD HAVE EXECUTED SEARCH WARRANTS AT ANY NUMBER

17   OF PARTICULAR LOCATIONS TO SEIZE ANY HOARDS OF CASH.  AND

18   IT'S MY UNDERSTANDING THAT THEY HAVE NOT DONE THAT.

19           WHAT THEY HAVE DONE IS ANY ACCOUNTS THAT THEY HAVE

20   FOUND, THEY HAVE FROZEN.  SO ANY MONEY THAT WAS IN THE BANK

21   THAT IS ASSOCIATED WITH MR. DUREN IS NOT ACCESSIBLE AND HAS

22   BEEN FROZEN.  OF COURSE, THAT'S A PREVENTATIVE MEASURE THAT

23   THEY HAVE TAKEN TO SECURE HIS FUTURE APPEARANCE IN COURT.

24           IN TERMS OF HIS EMPLOYMENT AND HIS INCOME FROM THE

25   GRANITE HILLS PROPERTY, I BELIEVE THE $5,000 IS MR. DUREN'S

1    INCOME PER MONTH THAT HE RECEIVES OUT OF THE BUSINESS.  THE

2    GROSS RECEIPTS WOULD BE SIGNIFICANTLY IN EXCESS OF THAT, BUT

3    THAT'S WHAT HE REALIZES EACH MONTH OUT OF THE BUSINESS.

4         IN ADDRESSING SOME OTHER ALLEGATIONS THAT THE

5    GOVERNMENT SET FORTH TO SUPPORT DETENTION, WHICH I DON'T

6    BELIEVE IS -- WOULD SUPPORT DETENTION, I THINK THERE ARE TWO

7    THINGS.  NO. 1 IS THE ACCOUNT IN CROATIA.  THAT WAS OPENED

8    LAST YEAR WHILE MR. DUREN KNEW THAT HE WAS UNDER

9    INVESTIGATION.  HE WAS GOING TO INVEST IN A GRAFFITI REMOVAL

10   BUSINESS IN ROME AND IN CROATIA, AND THAT WAS PART OF THE

11   INVESTMENT.

12        THE GOVERNMENT BECAME AWARE BECAUSE MR. DUREN FILLED

13   OUT THE APPROPRIATE FORMS, SUBMITTED THE FORMS, AND WHEN HE

14   WAS INSPECTED ON HIS RETURN FROM THE COUNTRY, PROVIDED THAT

15   FORM TO THE INSPECTOR.  SO THEY WERE MADE AWARE OF THIS

16   INVESTMENT BY MR. DUREN HIMSELF.

17        IN ADDITION, YOUR HONOR, CONCERNING THE TAX RETURNS.

18   MR. DUREN WAS UNDER ADVICE FROM HIS CIVIL ATTORNEY -- HE WAS

19   SUED BY HIS PREVIOUS PARTNER IN THE GRANITE HILLS PROPERTY,

20   AND THAT WAS ASSOCIATED WITH THE BANKRUPTCY AS WELL -- TO NOT

21   FILE THE RETURNS.  AND HE TOOK THE ADVICE OF HIS ATTORNEY AND

22   DID NOT FILE THE RETURNS.  BUT I DON'T BELIEVE THAT ANY OF

23   THIS WOULD INDICATE THAT HE IS A RISK OF FLIGHT.

24        WITH REGARD TO ECONOMIC DANGER, I THINK IT'S VERY

25   CLEAR THAT THE GOVERNMENT HAS NOT MOVED UNDER 3142(F).  THIS

1    IS NOT A DANGER CASE.  IT IS NOT A SITUATION WHERE ECONOMIC

2    DANGER WOULD BE AN APPROPRIATE GROUND FOR DETENTION.  IT IS,

3    HOWEVER, A SITUATION WHERE YOUR HONOR CAN SET CONDITIONS OF

4    RELEASE TO ADDRESS SOME OF THE GOVERNMENT'S CONCERN, BUT

5    CERTAINLY NOT DETAIN HIM ON THAT PARTICULAR GROUND.

6         I THINK IN LOOKING AT THE TOTALITY OF THE

7    CIRCUMSTANCES HERE, ESPECIALLY CONSIDERING THAT MR. DUREN'S

8    CONTINUED DETENTION WOULD POSE A RISK TO HIS SAFETY, AS

9    ACKNOWLEDGED BY THE UNITED STATES MARSHALS BY HOUSING HIM IN

10   ADMINISTRATIVE SEGREGATION FOR HIS OWN PROTECTION, GIVEN HIS

11   LAW ENFORCEMENT BACKGROUND, TO CONTINUE TO DETAIN HIM WOULD

12   BE UNFAIR.

13        I THINK THERE IS A COMBINATION OF CONDITIONS THAT

14   HAS BEEN PROPOSED, AND I WOULD REQUEST THAT YOUR HONOR DENY

15   THE GOVERNMENT'S MOTION FOR DETENTION AND SET BOND AS

16   REQUESTED.

17             THE COURT:  MR. RAPP, ANYTHING ELSE?

18             MR. RAPP:  JUST ONE BRIEF RESPONSE.

19        IN TERMS OF THE DOCUMENTS THAT DEMONSTRATED THAT

20   THIS DEFENDANT -- AFTER HE WAS NOTIFIED HE WAS UNDER

21   INVESTIGATION, THE DOCUMENTS THAT SUPPORT THE ACCOUNTS IN

22   CROATIA, THOSE WERE NOT PROVIDED TO THE GOVERNMENT.  THOSE

23   WERE TAKEN FROM THE DEFENDANT AT A PORT SEARCH.

24        HE ACTUALLY WAS VERY RESISTANT TO PROVIDING THOSE

25   DOCUMENTS.  COPIES OF THOSE DOCUMENTS WERE MADE UNBEKNOWNST

1  TO HIM AND THEN RETURNED TO HIM.  SO I JUST WANT TO CORRECT

2  THAT, THAT HE DIDN'T VOLUNTEER ANY OF THOSE DOCUMENTS.

3          THE COURT:  ALL RIGHT.  THANK YOU.

4          I'VE READ THE GOVERNMENT'S PAPERS.  I'VE READ THE

5  DEFENDANT'S PAPERS.  I'VE REVIEWED SOME OF THE CASE LAW CITED

6  IN THOSE DOCUMENTS, LISTENED TO THE ARGUMENTS TODAY, AND I

7  FIND THAT THE UNITED STATES HAS NOT MET ITS BURDEN TO SHOW

8  THAT THE DEFENDANT IS A FLIGHT RISK.

9          I ALSO DON'T THINK THAT FINANCIAL DANGER, IN AND OF

10  ITSELF, IS A VALID BASIS FOR DETENTION.  BUT EVEN IF IT WERE,

11  I WOULD FIND THAT THE UNITED STATES HAS NOT MET ITS BURDEN BY

12  CLEAR AND CONVINCING EVIDENCE THAT THE DEFENDANT IS A

13  FINANCIAL DANGER.

14          I THINK THE EVIDENCE SET FORTH IN THE GOVERNMENT'S

15  PAPERS IS A VERY COMPELLING CASE AGAINST THE DEFENDANT.  IT

16  MAY SHOW THAT HE'S A FINANCIAL MENACE, IT MAY SHOW THAT HE'S

17  UNSCRUPULOUS AND UNTRUSTWORTHY AND HAS VIOLATED THE TRUST OF

18  THE PEOPLE OF THE UNITED STATES WHEN HE WAS WEARING THE

19  BADGE; IT MAY SHOW ALL OF THAT.  BUT GIVEN HIS TIES TO THIS

20  COMMUNITY, PARENTS, BROTHERS, HAVING LIVED HERE FOR ALMOST 32

21  YEARS FROM WHAT I CAN TELL FROM THE PRETRIAL SERVICES' REPORT

22  AND THE OTHER INFORMATION THAT I HAVE, I FIND THAT HE IS NOT

23  A FLIGHT RISK.

24          ONE THING I AM CONCERNED ABOUT, HOWEVER, IS IT

25  APPEARS FROM THE INDICTMENT AND THE PAPERS THAT I'VE RECEIVED

1  THAT THE DEFENDANT HAS ABUSED HIS TRUST IN COMMITTING SOME OF

2  THE -- ALLEGEDLY COMMITTING SOME OF THE CRIMES THAT ARE

3  CONTAINED IN THE INDICTMENT.

4       THIS IS THE SAME KIND OF TRUST THAT THE COURT IS

5  GOING TO IMPOSE UPON THE DEFENDANT TO COMPLY WITH THE

6  CONDITIONS, SO I AM CONCERNED ABOUT THAT, MR. DUREN, THAT YOU

7  APPARENTLY VERY WILLINGLY AND CAVALIERLY VIOLATED THE TRUST

8  GIVEN TO YOU WHEN YOU WERE AN OFFICER OF THE UNITED STATES.

9  YOU MAY JUST AS EASILY VIOLATE THAT TRUST WITH THE CONDITIONS

10 THAT I SET.

11      BUT I DO THINK CONDITIONS CAN BE SET.  I THINK THEY

12 CAN BE HARSH CONDITIONS.  IF YOU'RE ABLE TO MEET THE

13 CONDITIONS, THEN YOU WOULD BE RELEASED; AND IF YOU CAN'T,

14 THEN YOU WON'T BE.  AND IF YOU ARE RELEASED, THE CONSEQUENCES

15 WOULD BE SEVERE SHOULD YOU VIOLATE ANY OF THE CONDITIONS.

16 BUT I DO THINK CONDITIONS CAN BE SET THAT WOULD ASSURE THE

17 COURT THAT YOU'RE GOING TO MAKE YOUR FUTURE COURT

18 APPEARANCES.

19      ALL RIGHT.  MR. DUREN, I'M GOING TO SET BOND AT

20 $150,000.  IT WILL BE SECURED BY A TRUST DEED ON YOUR

21 PARENTS' HOME, PLUS A $25,000 CASH DEPOSIT.  YOU'RE TO

22 SURRENDER ANY PASSPORT THAT YOU MAY HAVE.  I UNDERSTAND IT

23 MAY HAVE BEEN SEIZED FROM YOU, BUT IF YOU HAVE A PASSPORT OR

24 ANY OTHER TRAVEL DOCUMENTS, YOU ARE TO SURRENDER THAT, THOSE

25 DOCUMENTS TO PRETRIAL SERVICES.

1       IF YOU'RE RELEASED, YOU ARE TO ACTIVELY SEEK AND

2  MAINTAIN FULL-TIME EMPLOYMENT, SCHOOLING OR A COMBINATION OF

3  BOTH.

4       YOU WILL BE SUBJECT TO HOME DETENTION AND GPS

5  MONITORING.  YOU ARE TO PAY FOR THE MONITORING TO THE EXTENT

6  THAT YOU'RE ABLE.

7       YOUR TRAVEL WILL BE RESTRICTED TO THE SOUTHERN

8  DISTRICT OF CALIFORNIA AND YOU ARE NOT TO ENTER MEXICO.

9       YOU ARE NOT TO COMMIT A FEDERAL, STATE OR LOCAL

10  CRIME WHILE YOU'RE RELEASED.

11      YOU MUST MAKE ALL OF YOUR COURT APPEARANCES.  YOU

12  MUST REPORT FOR SUPERVISION AS DIRECTED BY PRETRIAL SERVICES.

13      YOU ARE NOT TO POSSESS ANY DRUGS WITHOUT A VALID

14  DOCTOR'S PRESCRIPTION OR POSSESS ANY FIREARMS, DANGEROUS

15  WEAPONS OR DESTRUCTIVE DEVICES WHILE YOUR CASE IS PENDING.

16      YOU MUST READ THE ADVICE OF PENALTIES AND SANCTIONS

17  FORM AND INDICATE YOUR UNDERSTANDING OF THAT FORM AND PROVIDE

18  AN ADDRESS WHERE YOU ARE GOING TO BE UPON BEING RELEASED AND

19  KEEP IT CURRENT AT ALL TIMES.

20      MR. DUREN, DO YOU UNDERSTAND THE BOND AND THE

21  CONDITIONS THAT I'VE SET?

22      THE DEFENDANT:  YES, I DO.

23      THE COURT:  MS. HAZARD, DO YOU HAVE ANYTHING TO

24  OFFER?

25      MS. HAZARD:  YES, YOUR HONOR.  WE'RE JUST REQUESTING

1   THAT THE DEFENDANT BE RELEASED TO PRETRIAL SERVICES.

2          THE COURT:  THAT'S CORRECT.  TO BE RELEASED TO

3   PRETRIAL SERVICES THE FOLLOWING BUSINESS DAY BY 10:00.

4          MS. HAZARD:  THANK YOU, YOUR HONOR.

5          THE COURT:  ANYTHING ELSE?

6          MS. HAZARD:  NO, YOUR HONOR.  THANK YOU.

7          THE COURT:  MR. RAPP, ANYTHING ELSE YOU'D LIKE TO

8   OFFER OR ADD?

9          MR. RAPP:  YES, JUDGE.

10          I WOULD REQUEST ONE CONDITION BE THAT ANY FINANCIAL

11   TRANSACTION EXCEEDING $1,000 BE FIRST APPROVED BY PRETRIAL

12   SERVICES.

13          THE COURT:  DOESN'T SOUND UNREASONABLE, GIVEN THE

14   CIRCUMSTANCES OF THIS CASE, MR. COLOMBO.

15          MR. COLOMBO:  YOUR HONOR, WOULD THAT BE PERSONAL

16   TRANSACTIONS OR THOSE RELATED TO THE BUSINESS, THE GRANITE

17   HILLS PROPERTY?

18          THE COURT:  I THINK ANY TRANSACTIONS.

19          MR. RAPP, I KNOW YOU'D AGREE WITH THAT; RIGHT?

20          MR. RAPP:  YES.

21          THE COURT:  OKAY.

22          MR. COLOMBO:  OKAY.  YOUR HONOR --

23          THE COURT:  WHAT WOULD BE THE DIFFERENCE BETWEEN A

24   PERSONAL AND A BUSINESS TRANSACTION, A TRANSACTION WITH THE

25   AMOUNT IN QUESTION IS --

1      MR. COLOMBO:  WELL, I THINK THE NORMAL OPERATION OF

2   THE BUSINESS WOULD INCUR MORE THAN $1,000 OF FINANCIAL

3   TRANSACTIONS ON A REGULAR BASIS.  IF IT BECOMES A PROBLEM OR

4   BURDENSOME, THEN I WOULD -- I CAN PUT THE CASE ON FOR A

5   STATUS AND I GUESS WE CAN CLARIFY IT FROM THERE.

6      SO AT THIS TIME, I WOULD SUBMIT ON THE GOVERNMENT'S

7   REQUEST AND I GUESS WE'LL SEE HOW IT GOES.

8      THE COURT:  MR. DUREN, I'M ALSO IMPOSING THE

9   CONDITION THAT FINANCIAL TRANSACTIONS IN EXCESS OF $1,000 BE

10  VETTED THROUGH PRETRIAL SERVICES.

11     DO YOU UNDERSTAND THAT AS WELL, SIR?

12     THE DEFENDANT:  YES, I DO, YOUR HONOR.

13     THE COURT:  ALL RIGHT.  ANYTHING ELSE, MR. COLOMBO?

14     MR. COLOMBO:  YOUR HONOR, WE DO HAVE THE ISSUE OF

15  THE STATUS OF COUNSEL.  AS I INDICATED, MR. DUREN'S -- MANY

16  OF MR. DUREN'S ACCOUNTS HAVE BEEN FROZEN, AND THAT OBVIOUSLY

17  CREATES SOME DIFFICULTY IN TERMS OF FINALIZING THE RETAINER

18  AGREEMENT.

19     WHAT I WOULD REQUEST IS JUST TO CONTINUE THE STATUS

20  OF COUNSEL MAYBE FOR TWO WEEKS.  IF WE CAN HAVE A DATE BEFORE

21  YOUR HONOR, SO THAT THIS WAY I CAN FINALIZE THE FINANCIAL

22  ARRANGEMENTS.  AND IF THINGS CAN'T BE FINALIZED, THEN I WOULD

23  PROBABLY REQUEST PROVISIONAL APPOINTMENT OF COUNSEL AT THAT

24  PARTICULAR TIME.

25     THE COURT:  ANY OBJECTION, MR. RAPP?

1          MR. RAPP:  NONE, YOUR HONOR.

2          THE COURT:  ALL RIGHT.  HOW DOES DECEMBER 27TH, 2:15

3     WORK?

4          MR. COLOMBO:  THAT'S FINE, YOUR HONOR.

5          AND ON BEHALF OF THE GOVERNMENT, SINCE THEY ARE

6     TRAVELING FROM ARIZONA, I DON'T -- I'M NOT SURE IF IT WOULD

7     BE APPROPRIATE FOR THEM TO TELEPHONICALLY APPEAR, AS THEY DID

8     BEFORE.  I DON'T WANT TO CAUSE THEM ANY UNNECESSARY TRAVEL

9     EXPENSE COMING FROM THERE.

10         THE COURT:  THAT'S MIGHTY BIG OF YOU, MR. COLOMBO.

11         MR. COLOMBO:  WELL, I FIGURED IN CASE YOU FORGOT.

12         THE COURT:  ALL RIGHT.  WELL, WE'LL CROSS

13    THAT BRIDGE, BECAUSE WHO KNOWS WHAT'S GOING TO COME UP AT

14    THAT HEARING.  I SUPPOSE WE CAN DECIDE CLOSER TO THE DATE

15    WHETHER TELEPHONIC APPEARANCE WOULD BE APPROPRIATE OR NOT.

16         MR. DUREN, YOU ARE ORDERED TO RETURN BACK TO THE

17    COURTROOM ON DECEMBER 27TH AT 2:15.

18         DO YOU UNDERSTAND, SIR?

19         THE DEFENDANT:  YES, YOUR HONOR.  I DO, YOUR

20    HONOR.

21         THE COURT:  OKAY.

22         MR. COLOMBO:  THANK YOU, YOUR HONOR.

23         THE COURT:  ANYTHING ELSE, COUNSEL?

24         MR. COLOMBO:  NO.  THANK YOU.

25         MR. RAPP:  NOT FROM THE UNITED STATES.

1          THE COURT:  ALL RIGHT.  THAT'S ALL FOR TODAY.

2          (PROCEEDINGS CONCLUDED AT 3:44 P.M.)

3                    -- OOOOO --

4          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

5     FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE

6     ABOVE-ENTITLED MATTER.

7

8     /S/CAMERON P. KIRCHER          8-26-18
      TRANSCRIBER                    DATE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25