```
 1            UNITED STATES DISTRICT COURT

 2           SOUTHERN DISTRICT OF CALIFORNIA

 3
     UNITED STATES OF AMERICA,        )
 4                                    ) CASE NO. 16CR2892-JAH
              PLAINTIFF,              )
 5                                    ) SAN DIEGO, CALIFORNIA
     VS.                              ) MONDAY,
 6                                    ) SEPTEMBER 16, 2019
     TYRONE CEDRIC DUREN,             ) 2:05 P.M.
 7                                    )
              DEFENDANT.              )
 8    _____)

 9

10         REPORTER'S TRANSCRIPT OF PROCEEDINGS

11            TELEPHONIC STATUS HEARING

12     BEFORE THE HONORABLE JOHN A. HOUSTON
              UNITED STATES DISTRICT JUDGE
13

14   APPEARANCES:

15   FOR THE GOVERNMENT:    ROBERT S. BREWER, JR., U.S. ATTORNEY
                            BY:  KEVIN M. RAPP, ESQ.
16                               ABBIE BROUGHTON MARSH, ESQ.
                            ASSISTANT U.S. ATTORNEY
17                          880 FRONT STREET, FIFTH FLOOR
                            SAN DIEGO, CALIFORNIA  92101
18

19   FOR THE DEFENDANT:     L. MARCEL STEWART
                            ATTORNEY AT LAW
20                          600 B STREET
                            SUITE 2100
21                          SAN DIEGO, CALIFORNIA  92101

22

23

24   REPORTED BY:  CAMERON P. KIRCHER
                   CSR NO. 9427, RPR, CRR, RMR
25                 E-MAIL:  CPKIRCHER@GMAIL.COM
```

1    SAN DIEGO, CALIFORNIA - MONDAY, SEPTEMBER 16, 2019

2              2:05 P.M.

3         (TELEPHONIC CHAMBERS CONFERENCE.)

4         THE COURT:  THIS IS JUDGE HOUSTON.

5         MR. RAPP:  JUDGE HOUSTON, KEVIN RAPP FOR THE U.S.

6    ATTORNEY'S OFFICE.

7         MR. STEWART:  GOOD AFTERNOON, JUDGE.  IT'S MARCEL

8    STEWART.

9         FULL DISCLOSURE:  WE HAVE TYRONE DUREN HERE, AS WELL

10   AS MR. KIRBY'S ASSISTANT IS HERE AS WELL.

11        THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK

12   YOU.

13        WE'RE SET FOR A SENTENCING ON THE 20TH OF SEPTEMBER.

14   I UNDERSTAND THROUGH E-MAILS, THE DEFENSE HAS REQUESTED A

15   CONTINUANCE.

16        MR. STEWART:  YES, YOUR HONOR.  THE LONG AND SHORT

17   OF IT IS THAT ORIGINALLY I E-MAILED YOUR CLERK, COPYING THE

18   GOVERNMENT, ABOUT A SHORT CONTINUANCE.  I HAVE BEEN TIED UP

19   THE LAST FEW WEEKS ON SOME MATTERS, AND SO I COULDN'T REALLY

20   HANDLE PREPARING FOR SENTENCING.

21        JOHN WAS GOING TO HANDLE SOME OF THAT, AND HE HAS

22   BEEN ILL; AND I DIDN'T REALLY KNOW.  AND SO -- HE DIDN'T

23   KNOW.  SO HE WASN'T, UNFORTUNATELY BECAUSE OF HIS ILLNESS,

24   ABLE TO BE AS PRODUCTIVE WITH GETTING PREPARED FOR TYRONE'S

25   SENTENCING.

1    AND SO, IN FACT -- THEN I LEARNED LAST FRIDAY HE WAS

2    RUSHED TO THE EMERGENCY ROOM, WHERE HE'S BEEN IN THE HOSPITAL

3    SINCE.  AND HE'S EXPECTED TO BE THERE UNTIL LATER IN THE

4    WEEK.  APPARENTLY HE HAS WALKING PNEUMONIA AND SOME OTHER

5    AILMENTS.  AND SO NOW THAT I KNOW THAT HE HAS A MEDICAL

6    CONDITION THAT'S GOING TO REQUIRE A LITTLE BIT MORE TIME FOR

7    HIM TO GET OUT OF THE HOSPITAL AND FOR HIM TO RECOVER, I

8    REQUESTED -- OR I'D LIKE TO REQUEST ADDITIONAL TIME.

9    AS THE COURT KNOWS, AND MR. RAPP KNOWS, MR. KIRBY

10   HAS BEEN ON THIS CASE FOR A COUPLE OF YEARS, AND SO HE'S LEAD

11   COUNSEL.  I CAME ON MAYBE A YEAR, OR NOT EVEN A YEAR AGO.

12   AND SO MR. DUREN WOULD LIKE JOHN TO BE ABLE TO FINISH

13   PROVIDING REPRESENTATION THROUGH THE END OF THE CASE WITH THE

14   SENTENCING COMING UP.

15   BUT IN ALL FAIRNESS TO JOHN, I KNOW THAT IF HE GETS

16   OUT OF THE HOSPITAL AT THE END OF THE WEEK, AND THE DOCTOR

17   SAID HE'S GOING TO PUT HIM ON HOME REST FOR ANOTHER WEEK, I

18   DON'T THINK THAT OCTOBER 4TH WOULD PROBABLY BE REALISTIC FOR

19   HIM TO REALLY DO WORK.  AND SO THAT'S WHY I'M REQUESTING MORE

20   TIME.

21   THE COURT:  MR. RAPP.

22   MR. RAPP:  WELL, OBVIOUSLY WE OBJECT TO THAT.  WE

23   DON'T -- WE DON'T SHARE THE VIEW, TO PUT IT MILDLY, THAT

24   MR. KIRBY IS THE LEAD ATTORNEY ON THIS CASE.  WE HAVE BEEN

25   DEALING PRIMARILY WITH MR. STEWART ON MOST OF THE ISSUES ON

1    THIS CASE.  OBVIOUSLY MR. STEWART HAS FILED MORE OF THE

2    SUBSTANTIVE MOTIONS IN THE CASE.  HE OBVIOUSLY TOOK THE LEAD

3    ON ARGUING THOSE.  HE NOT ONLY TOOK THE LEAD, HE WAS THE ONE

4    ARGUING ALL THOSE MOTIONS.

5         THE BULK OF WHAT MR. KIRBY DID ON THE CASE HAD TO DO

6    WITH THE OCTOBER -- OR STRIKE THAT, THE JULY 18TH, 2013 STOP.

7    THAT REALLY IS NO LONGER AN ISSUE IN THE CASE, AS THE

8    DEFENDANT HAS PLED GUILTY.  SO THE NOTION THAT MR. KIRBY HAS

9    BEEN TAKING THE LEAD ON THE CASE IS NOT ACCURATE, AND I THINK

10   THE COURT HAS OBSERVED THAT TO BE THE CASE IN THE COURTROOM.

11        SECONDLY, IF YOU LOOK AT MR. STEWART'S E-MAIL, THE

12   REASON FOR A CONTINUANCE OF THE SEPTEMBER 20TH DATE IS

13   BECAUSE HE HAS TO PREPARE WITNESS -- HE HAS WITNESS PREP -- I

14   PRESUME THAT'S HIS OWN WITNESSES -- AND HE WANTS TO DO A

15   SENTENCING MEMORANDUM, WHICH, YOU KNOW, LET'S BE HONEST, THAT

16   SHOULD HAVE BEEN ALREADY DONE.  YOU DON'T GET ALL THE TIME IN

17   THE WORLD TO DO A SENTENCING MEMORANDUM.

18        THERE WAS NO MOTION -- I MEAN, IF MR. KIRBY WENT

19   INTO THE HOSPITAL LAST FRIDAY, AS THEY SAY, THE SENTENCING

20   MEMORANDUM SHOULD HAVE BEEN FILED A COUPLE OF WEEKS AGO, OR

21   SOME WORK SHOULD HAVE BEEN DONE ON IT, BUT AT A MINIMUM, THEY

22   SHOULD HAVE ASKED FOR LEAVE FROM THE COURT TO FILE IT.  THAT

23   SAID, THEY COULD STILL FILE IT.

24        AS THE COURT KNOWS, THE DEFENDANT PLED GUILTY FIVE

25   MONTHS AGO, AND WE CARVED OUT THIS DATE ON THE 20TH TO AT

1    LEAST ADDRESS SOME OF THE RELEVANT CONDUCT WITH AN

2    EVIDENTIARY HEARING.  AND SO WE'RE PREPARED TO DO THAT.

3         HERE IS OUR SUGGESTION:  YOU DON'T HAVE A

4    CONSTITUTIONAL RIGHT TO HAVE TWO ATTORNEYS.  THAT'S JUST THE

5    WAY IT IS.  MR. STEWART, AS THE COURT I'M SURE HAS OBSERVED,

6    IS AN EFFECTIVE ATTORNEY.  WHAT WE WOULD RECOMMEND OR SUGGEST

7    TO THE COURT IS THAT WE GO FORWARD ON THE 20TH WITH THE

8    GOVERNMENT'S WITNESSES.

9         WE WILL PUT ON TWO WITNESSES ON FRIDAY.  THE DEFENSE

10   HAS HAD NOTICE OF THESE WITNESSES FOR NEARLY A YEAR AND A

11   HALF AND HAS HAD ALL THE JENCKS MATERIALS, ALL THE EXHIBITS.

12   THEY HAVE HAD AN EXHIBIT LIST.  WE HAVE RECENTLY WITHIN THE

13   LAST COUPLE WEEKS SEGREGATED THOSE -- TAKEN THOSE TWO

14   WITNESSES OFF THE TRIAL WITNESS AND EXHIBIT LIST AND GAVE

15   THEM THE TWO WITNESSES WITH THE EXHIBITS THAT THEY ARE GOING

16   TO USE.

17        AND OUR SUGGESTION IS THAT WE GO FORWARD WITH THESE

18   TWO WITNESSES.  THE DEFENSE DOES NOT HAVE TO CROSS-EXAMINE

19   THEM.  WE CAN DEFER CROSS-EXAMINATION UNTIL A LATER DATE, BUT

20   AT LEAST WE GET STARTED ON THIS HEARING.  AND THAT SEEMS --

21   THAT SEEMS TO BE FAIR.  THEY DON'T HAVE TO -- THEY ARE NOT

22   UNDER ANY EXPECTATION THAT THEY HAVE TO CONDUCT

23   CROSS-EXAMINATION.  THEY CAN ORDER UP THE TRANSCRIPT.  THEY

24   COULD PREPARE THEIR CROSS-EXAMINATION FOR ANOTHER DATE.

25        OTHERWISE, THIS IS GOING TO GET -- THERE IS NO

1     WAY -- COUNSEL AND I HAVE BEEN TELLING JUDGES OVER HERE THAT

2     WE CAN'T HAVE TRIALS THIS WEEK.  WE CAN'T HAVE HEARINGS THIS

3     WEEK.  AND WE'VE GOT SOME FAIRLY COMPLEX LITIGATION OVER HERE

4     AND MY CO-COUNSEL, WHO IS NOT EVEN ON THIS CONFERENCE CALL,

5     SHE'S IN TRIAL PREP; SHE'S STARTING A TRIAL NEXT WEEK.  AND

6     SO THAT'S WHY ANY DATE IN EARLY OCTOBER OR THE SECOND WEEK IN

7     OCTOBER WOULDN'T WORK.  BUT SHE IS AVAILABLE ON FRIDAY

8     BECAUSE WE PLANNED ACCORDINGLY.

9         SO IT SEEMS LIKE MR. STEWART COULD AT LEAST HEAR OUT

10     THESE WITNESSES ON FRIDAY.  HE COULD DEFER HIS

11     CROSS-EXAMINATION TO ANOTHER DATE, AND MAYBE MR. KIRBY CAN

12     JOIN IN PROGRESS AND ASSIST.  BUT THE FACT OF THE MATTER IS

13     YOU JUST DON'T GET TWO ATTORNEYS AND IT'S NOT CORRECT THAT

14     MR. KIRBY IS THE LEAD ATTORNEY ON THIS CASE, BECAUSE WE'VE

15     BEEN DEALING WITH MR. STEWART ON ABOUT EVERY ISSUE.

16     THE COURT:  LET'S GO BACK TO THE WITNESSES BEFORE I

17     HEAR FROM YOU, MR. STEWART.

18     SO THE GOVERNMENT INTENDS TO CALL TWO WITNESSES ON

19     RELEVANT CONDUCT?

20     MR. RAPP:  YES.  WE'RE CALLING -- THE FIRST WITNESS

21     WOULD BE AGENT WEAVER.  SHE'S -- HER EXHIBITS AND HER JENCKS

22     HAVE BEEN DISCLOSED FOR OVER A YEAR.  THE SECOND WITNESS IS

23     JOCELYN TSAI.  HER EXHIBITS AND JENCKS HAVE BEEN DISCLOSED

24     FOR OVER A YEAR.  WE HAVE PROVIDED -- IN ADVANCE OF THE

25     FRIDAY HEARING, WE HAVE PROVIDED, AGAIN, SORT OF AN

1  ABBREVIATED EXHIBIT LIST WITH THOSE -- JUST THOSE EXHIBITS

2  THAT WOULD APPLY TO THOSE TWO WITNESSES.

3       WE DON'T EVEN KNOW WHO THE DEFENSE WITNESSES ARE

4  THAT MR. STEWART NEEDS ADDITIONAL TIME TO PREPARE, BUT THAT'S

5  FINE.  JUST LET US KNOW AT A LATER DATE WHO THEY ARE AND WHAT

6  EXHIBITS YOU INTEND TO USE WITH THEM, AND WE'LL PREPARE

7  ACCORDINGLY, BUT AT LEAST WE CAN GET STARTED ON THE DEFENSE

8  WITNESSES.  AND, AGAIN, THEY WOULD BE -- THERE WOULD BE NO

9  EXPECTATION THAT THEY WOULD HAVE TO CONDUCT

10 CROSS-EXAMINATION.  THEY COULD DEFER IT TO ANOTHER DATE.

11      THE COURT:  HOW LONG DO YOU ANTICIPATE THE

12 EXAMINATIONS TO LAST FOR YOUR TWO WITNESSES?

13      MR. RAPP:  WELL, I WOULD -- I SUSPECT THAT PROBABLY

14 AGENT WEAVER WOULD BE AN HOUR AND A HALF TO TWO HOURS AND

15 REVENUE AGENT TSAI WOULD PROBABLY BE AN HOUR.  YOU KNOW, IT

16 COULD BE A LITTLE BIT LONGER.  I UNDERSTOOD THAT THE COURT

17 HAD BLOCKED OUT THE ENTIRE DAY FOR THIS HEARING, BUT I DON'T

18 SEE IT GOING A FULL DAY.

19      THE COURT:  MR. STEWART, DO YOU ANTICIPATE CALLING

20 WITNESSES FOR SENTENCING?

21      MR. STEWART:  YES, YOUR HONOR.

22      THE COURT:  HOW MANY?  HOW MANY?

23      MR. STEWART:  I BELIEVE -- I BELIEVE THREE, YOUR

24 HONOR.  ONE BEING MR. HANDELMAN, THE EXPERT, HANDELMAN.

25      AND JUST AS A CAVEAT, THE FINANCIAL EXPERT,

1    HANDELMAN, MR. KIRBY HAS BEEN WORKING WITH HIM.  THAT'S

2    CRITICAL, BECAUSE HANDELMAN IS PROVIDING MR. KIRBY THE

3    INFORMATION, YOU KNOW, TO KNOW HOW TO CROSS-EXAMINE THE

4    GOVERNMENT'S FINANCIAL EXPERT, MEANING -- I DON'T BELIEVE

5    IT'S AGENT WEAVER.  MAYBE IT'S AGENT TSAI.  BUT WHOEVER IS

6    GOING TO BE THEIR FINANCIAL PERSON, THAT'S SOMETHING THAT

7    MR. KIRBY HAS BEEN HANDLING WITH OUR EXPERT.

8           AND SO EVEN IF I TAKE IT OVER -- IT MAKES IT

9    DIFFICULT NOW TO TAKE IT OVER BECAUSE BEFORE, THAT'S BEEN IN

10   HIS PROVENCE.

11          THE SECOND WITNESS THAT WE ANTICIPATE CALLING WOULD

12   BE --

13          THE REPORTER:  I'M SORRY.

14          THE COURT:  MR. STEWART, MR. STEWART, WHAT WAS THE

15   NAME AGAIN?

16          MR. STEWART:  NICHET, N-I-C -- I'M SORRY.

17          THE COURT:  THE SECOND WITNESS.

18          MR. STEWART:  YES.

19          -- KELLY, NICHET KELLY.  N-I-C-H-E-T K-E-L-L-Y.

20          AND THEN THE THIRD -- AND I THINK, KEVIN, YOU GOT

21   THIS E-MAIL.  I DON'T KNOW IF WE NEED THIS WITNESS, IT'S MORE

22   TO AUTHENTICATE.

23          ONE OF OUR INVESTIGATORS BASICALLY AUTHENTICATED,

24   THROUGH PULLING FROM OLD E-MAILS, A BUNCH OF RECORDS THAT

25   PROVIDE MR. DUREN'S COMPANY'S FINANCIALS THROUGH THE YEARS AT

1    ISSUE.  AND SO I E-MAILED THE GOVERNMENT TO FIND OUT IF I

2    COULD GET A DECLARATION CONCERNING THAT ASPECT OF

3    AUTHENTICATION, OR IF I NEED TO BRING THE INVESTIGATOR AS A

4    WITNESS.  I NEVER GOT A RESPONSE BACK.

5            KEVIN, DID YOU GET THAT E-MAIL?

6            MR. RAPP:  ABBIE -- FOR THE RECORD, ABBIE MARSH JUST

7    JOINED ME.

8            MR. STEWART:  HI, ABBIE.

9            MS. MARSH:  WE HAVE NOT RESPONDED.  I JUST HAVEN'T

10   HAD AN OPPORTUNITY TO DISCUSS IT WITH MR. RAPP.

11           MR. STEWART:  OKAY.

12           MS. MARSH:  WE GOT THE E-MAIL WHILE HE WAS OUT OF

13   THE COUNTRY, AND I DON'T THINK THAT WE HAVE RESPONDED

14   ADDRESSING THAT.

15           MY INCLINATION IS NOT TO STIPULATE TO THAT BECAUSE I

16   DON'T KNOW THAT WE WILL AGREE TO AUTHENTICATION OR HIS

17   ABILITY TO VERIFY THE AUTHENTICITY OF WHAT APPEARS, TO ME, TO

18   BE SOMETHING THAT MAY OR MAY NOT BE ADMISSIBLE AT SENTENCING,

19   BUT WE CAN DISCUSS THAT FURTHER.

20           MR. RAPP:  RIGHT.  JUST TO FOLLOW UP ON THAT, I

21   MEAN, JUDGE, HE'S GOT THREE WITNESSES.  AND I THINK MY -- OUR

22   SUGGESTION EVEN MAKES MORE SENSE.  IF THEY TRULY NEED

23   MR. HANDELMAN TO ASSIST IN THE CROSS-EXAMINATION OF THESE

24   WITNESSES, WHY THEN, THEY CAN JUST ORDER UP THE TRANSCRIPT

25   AND THEY CAN MEET WITH MR. HANDELMAN.

1      I MEAN, OBVIOUSLY, IF THE COURT MIGHT RECALL, WE'VE

2   HAD SOME REAL ISSUES WITH MR. HANDELMAN.  HE WAS RELYING UPON

3   THE WORK THAT WAS DONE ON THE FORENSICS BY THIS GENTLEMAN WHO

4   HAD A FELONY CONVICTION AND SOME OTHER -- SOME OTHER ISSUES

5   THAT MADE -- YOU KNOW, WHICH CAUSED US SOME CONCERN ABOUT

6   WHETHER MR. HANDELMAN COULD EVEN TESTIFY.

7      BUT THAT'S FINE.  THAT'S FOR ANOTHER DATE.  THEY CAN

8   FOR SURE -- WE COULD PICK A DATE OUT IN THE FUTURE.  THEY CAN

9   SIT DOWN WITH THE TRANSCRIPT OF THE DIRECT EXAMINATION OF

10  AGENT TSAI.  THEY CAN SIT THERE AND PREPARE CROSS-EXAMINATION

11  ALL DAY LONG.  WE COULD BRING THOSE TWO WITNESSES BACK.  THEN

12  THEY COULD BE SUBJECT TO CROSS-EXAMINATION AND THEN THE

13  DEFENSE COULD PUT ON THESE THREE WITNESSES.

14     HANDELMAN FOR SURE WAS SOMEBODY WE WERE FAMILIAR

15  WITH FROM OBVIOUSLY LITIGATION AND SOME EFFORTS CALLED ON AT

16  TRIAL.  THE OTHER TWO WE'VE NEVER HEARD OF, BUT THAT'S FINE.

17  WE'LL CROSS THAT BRIDGE WHEN WE GET TO IT.

18     IT JUST SEEMS LIKE THE COURT HAS CARVED OUT THIS

19  DATE, FRIDAY, THAT WE ALL ANTICIPATED.  MR. STEWART IS

20  CERTAINLY AVAILABLE AND, YOU KNOW, CAN TAKE NOTES AND HE CAN

21  GET THE TRANSCRIPT OF THE PROCEEDING.  BUT AT LEAST WE DON'T

22  PUT THIS OFF EVEN LONGER AND HAVE MULTIPLE DAYS.  AND IT

23  LOOKS LIKE THIS MIGHT VERY WELL GO INTO A MULTIPLE-DAY

24  SENTENCING HEARING, AND I DON'T THINK ANYBODY -- THAT'S

25  PROBABLY -- THAT'S WHAT HAPPENS WHEN YOU DON'T HAVE A PLEA

1 AGREEMENT AND NO AGREEMENTS REGARDING RELEVANT CONDUCT AND

2 THE LIKE.

3        SO I JUST THINK THERE IS NO REASON WHY WE CAN'T

4 START IT ON FRIDAY.

5            THE COURT:  ALL RIGHT.  MR. STEWART.

6            MR. STEWART:  YES, YOUR HONOR.

7        YOUR HONOR, THE OTHER ISSUE IS THAT, YOU KNOW, I'VE

8 PREPARED THE OBJECTIONS TO THE PRE-SENTENCE REPORT, AND THOSE

9 WERE FILED.  MR. KIRBY WAS PREPARING THE SENTENCING

10 MEMORANDUM.  AND HE MADE PROGRESS ON IT BEFORE HE GOT ILL,

11 BUT THEN HE GOT ILL.  AND SO --

12            MS. GONZALEZ:  HE WENT TO THE HOSPITAL FRIDAY WHILE

13 HE WAS TRYING TO DO THE SENTENCING MEMO.

14            MR. STEWART:  AND SO WE DO THINK THAT THAT

15 SENTENCING MEMORANDUM, FOR MR. DUREN'S BENEFIT, IS SOMETHING

16 THAT, IN ALL GOOD FAITH, WE SHOULD SUBMIT.  AND SO THE

17 CHALLENGE, AGAIN, IS I CAN PICK IT UP, BUT NOW I JUST NEED

18 TIME TO PICK IT UP AND COMPLETE IT.  AND I'M PREPARED TO WORK

19 ON THAT THIS WEEK.

20        BUT THAT'S THE REASON WHY IT WASN'T FILED, BECAUSE

21 JOHN HAD WORKED ON IT.  HE DIDN'T COMPLETE IT.  HE GOT ILL.

22            MS. GONZALEZ:  HE HAS WALKING PNEUMONIA.

23            MR. STEWART:  AND SO HE WASN'T ABLE PHYSICALLY TO

24 COMPLETE IT.  AND I DIDN'T KNOW, UNTIL HE BECAME ILL IS WHEN

25 I FOUND OUT.  SO THAT'S THE ISSUE THERE.

1    THIS IS THE FIRST TIME I'VE HEARD OF MAYBE SPLITTING

2    IT UP.  IT SEEMS LIKE MAYBE WE'RE NOW ADDING MORE DAYS TO THE

3    COURT'S CALENDAR, BUT I'M NOT NECESSARILY OPPOSED TO IT.  BUT

4    IT SEEMS LIKE WE MIGHT BE ADDING MORE DAYS TO THE COURT'S

5    CALENDAR KIND OF.  BUT, YOU KNOW, WHATEVER THE COURT DECIDES.

6    I JUST THINK THAT WE DO NEED A LITTLE BIT OF EXTRA TIME.

7    I THINK THAT -- IN ALL FAIRNESS, I DISAGREE WITH

8    MR. RAPP.  THERE HAVE BEEN PORTIONS OF THESE PROCEEDINGS THAT

9    I'VE JUMPED IN THERE, AND I DON'T HAVE A PROBLEM.  BUT AT THE

10    SAME TIME, MR. KIRBY DOES REMAIN LEAD COUNSEL IN THIS CASE.

11    HE HAS BEEN ACTIVELY INVOLVED.  AND WE SPLIT THINGS UP.

12    AND SO THAT'S WHERE -- THAT'S WHERE WE ARE, YOUR

13    HONOR.  AND WHATEVER THE COURT CHOOSES TO DO TIME-WISE, WE'LL

14    WORK WITH.

15    MR. RAPP:  I WOULD ONLY JUMP IN AND JUST SAY THAT WE

16    HAVE NOT FILED OUR SENTENCING MEMORANDUM EITHER.  MS. MARSH

17    IS TAKING THE LEAD ON THAT, AND SHE'S BEEN DELAYED HERSELF.

18    BUT THAT COULD BE FILED, YOU KNOW, PERHAPS CLOSER TO THE

19    SECOND DATE.

20    MAYBE WE COULD COME UP WITH SOME KIND OF A SCHEDULE

21    OF WHEN THAT WOULD BE FILED, AND THAT WOULD GIVE, YOU KNOW,

22    BOTH SIDES TIME TO FILE IT PRIOR TO THE COURT ACTUALLY

23    PRONOUNCING SENTENCE.  BUT AT LEAST WE COULD GET STARTED ON

24    SOME OF THESE EXTRANEOUS RELEVANT-CONDUCT ISSUES.

25    THE COURT:  HOLD ON.  HOLD ON.  EXCUSE ME, COUNSEL.

1    EXCUSE ME.

2           MR. STEWART:  TO FILE IT THE DAY BEFORE SENTENCING,

3    THIS IS A FAIRLY COMPLEX CASE AND THERE ARE DIFFERENT ISSUES.

4    IT SEEMS LIKE WE NEED TO PROVIDE THAT TO THE COURT AT LEAST A

5    WEEK, MAYBE TWO IN ADVANCE.

6           I MEAN, THERE MAY BE SOME, YOU KNOW, DIFFERENT

7    EXHIBITS, DIFFERENT ISSUES.  SO I DON'T THINK THAT IS WISE

8    FOR US TO FILE OUR SENTENCING MEMORANDUM IN THIS CASE,

9    PARTICULARLY GIVEN THAT THERE IS NO PLEA AGREEMENT, A DAY OR

10   SO BEFORE SENTENCING.

11          THE COURT:  THE ISSUE I SEE HERE, ANOTHER ISSUE THAT

12   HAS NOT BEEN RAISED IS THAT IF I HEAR RELEVANT-CONDUCT

13   TESTIMONY THIS WEEK, AND THEN THERE IS A SENTENCING

14   MEMORANDUM FILED BY THE GOVERNMENT, THERE HASN'T BEEN

15   CROSS-EXAMINATION ON THOSE WITNESSES, AND TO REQUIRE

16   DEFENDANT TO SUBMIT A SENTENCING MEMORANDUM BEFORE AN

17   EVIDENTIARY HEARING ON RELEVANT CONDUCT WOULD REQUIRE A

18   SUPPLEMENTAL TO PAINT A FULL PICTURE IN THE SENTENCING

19   MEMORANDUM, AND THEN WE WOULD HAVE DEFENSE WITNESSES LATER.

20          MR. RAPP:  WELL, I WASN'T SUGGESTING THEY FILE THAT

21   SENTENCING MEMORANDUM THIS WEEK.

22          THE COURT:  NO.  WHAT I MEAN -- SIR, WHAT I MEAN,

23   SIR, TO FILE IT EVEN AFTER THE GOVERNMENT WITNESSES SPEAK IS

24   BEFORE THERE IS AN OPPORTUNITY TO CROSS-EXAMINE THEM, TO

25   PAINT A FULL PICTURE IN THE MEMO.

1          MR. RAPP:  WELL, MAYBE -- YEAH, I WASN'T BEING VERY

2     CLEAR.

3          I JUST THOUGHT THAT THE SENTENCING IS SORT OF

4     BIFURCATED.  THERE IS THE OFFENSE CONDUCT AND RELEVANT

5     CONDUCT, WHICH WOULD BE FLESHED OUT DURING AN EVIDENTIARY

6     HEARING.

7          YOU KNOW, WE WOULD HAVE THE GOVERNMENT WITNESSES

8     TESTIFY, AND THEN THE DEFENSE WOULD HAVE THE OPPORTUNITY TO

9     CROSS-EXAMINE THEM, AND THEN I PRESUME THEY WOULD PUT ON SOME

10    OR ALL OF THE WITNESSES THAT THEY MENTIONED AND THEN WE WOULD

11    CROSS-EXAMINE THEM.  AND THEN I SUSPECT THE COURT WOULD SET

12    ANOTHER DATE FOR THE ACTUAL IMPOSITION OF SENTENCING, AND IT

13    WOULD BE PRIOR TO THAT DATE THAT I EITHER -- BOTH SIDES COULD

14    FILE A MOTION, SORT OF EXPLORING THE 3553 FACTORS AND THE

15    LIKE.

16         BUT I JUST THINK THAT THERE IS TWO PARTS OF THE

17    SENTENCING, BECAUSE THERE IS NO PLEA AGREEMENT AND NO

18    AGREEMENT AS TO RELEVANT CONDUCT, IS THAT WE WOULD FIRST

19    EXPLORE ANY EVIDENTIARY BASIS FOR RELEVANT CONDUCT AND THEN

20    WE WOULD PROCEED TO ANOTHER DATE WHERE WE WOULD -- WHERE THE

21    COURT WOULD CONSIDER SENTENCING MEMORANDUMS.  WE WOULDN'T

22    WANT TO FILE OUR SENTENCING MEMORANDUM UNTIL AFTER WE HEARD

23    FROM THE DEFENSE WITNESSES.

24         I MEAN, WE WERE SORT OF WAITING TO SEE WHAT THE

25    COURT DID TODAY.  AND IF THE COURT SAID, NO, WE'RE PROCEEDING

1   ON SENTENCING NOTWITHSTANDING THE ISSUES WITH MR. KIRBY,

2   WE'RE GOING FORWARD ON FRIDAY AND I'M GOING TO LIMIT THE --

3   BOTH SIDES TO CERTAIN TIME LIMITS AND WE'RE GOING TO PROCEED

4   TO SENTENCING, THEN WE WOULD FILE A SENTENCING MEMORANDUM

5   TODAY.  BUT GIVEN THE FACT THAT IT'S UNCLEAR WHEN THE ACTUAL

6   DATE OF THE IMPOSITION OF SENTENCING IS, WE WERE GOING TO

7   HOLD IT IN ABEYANCE UNTIL WE KNEW THAT DATE SO WE COULD GIVE

8   THE COURT A FULL PICTURE.

9         BUT I DO REALLY THINK WE COULD START AT LEAST

10  EXPLORING THE RELEVANT CONDUCT THIS WEEK.  AND I THINK IT'S

11  FAIR THAT IF THE DEFENSE TRULY WANTS TO REVIEW THE EVIDENCE

12  OF THESE WITNESSES -- OR THE TESTIMONY OF THESE WITNESSES

13  WITH THEIR OWN EXPERT TO ASSIST THEM IN CROSS-EXAMINATION,

14  THEY HAVE THE BENEFIT THAT THEY -- THAT THE DEFENSE ALMOST

15  NEVER GETS IN TRIAL OR SENTENCING, IS THAT THEY GET TO GET

16  THE TRANSCRIPT AND TAKE THE TIME TO REVIEW IT AND TO BE FULLY

17  PREPARED TO CROSS-EXAMINE.

18        THE COURT:  ALL RIGHT.  THANK YOU.  I'M GOING TO

19  PLACE YOU ON HOLD FOR A SECOND.

20        MR. STEWART:  OKAY.

21        (BRIEF PAUSE IN PROCEEDINGS.)

22        THE COURT:  MR. STEWART.

23        MR. STEWART:  YES.

24        THE COURT:  COUNSEL, WE'RE BACK ON THE RECORD.

25        MR. STEWART:  OKAY.

1      THE COURT:  I'M CONSIDERING MOVING THE FRIDAY

2  HEARING TO THE AFTERNOON, TO 11:30 OR 12:00 TO START, DIRECT

3  EXAMINATION ONLY.  AND THEN CONTINUING THE CASE TO THE 18TH

4  OF OCTOBER FOR CROSS-EXAMINATION AND TO HEAR YOUR WITNESSES.

5      WHAT'S YOUR THINKING ON THAT?

6      MR. STEWART:  THE ONLY THING, YOUR HONOR, THE 18TH

7  I'M ACTUALLY OUT OF THE DISTRICT.  HOLD ON.  I'M SORRY.  LET

8  ME JUST DOUBLE-CHECK.

9      I'M ACTUALLY OUT OF THE DISTRICT ON A SLIGHT LITTLE

10  VACATION THAT'S ALREADY PAID FOR WITH ABOUT TEN PEOPLE.  IF

11  WE CAN DO THE SECOND PART, ANY OTHER WEEK, THAT WOULD BE

12  HELPFUL -- OR ANY OTHER DATE.

13      THE COURT:  MY INITIAL THOUGHT WAS THE 17TH OF

14  OCTOBER, BUT I HAVE A CIVIL TRIAL GOING THE WEEK BEFORE THAT

15  STARTS ON THE 7TH OF OCTOBER AND IT'S GOING TO BLEED INTO

16  THAT SECOND WEEK.  AND, YOU KNOW, WE HAVE A MONDAY HOLIDAY

17  THAT SECOND WEEK ON THE 14TH OF OCTOBER, AND THAT MIGHT

18  CREATE A PROBLEM HAVING THE HEARING ON THE 17TH IF EVERYONE

19  TRAVELS HERE.

20      MS. MARSH:  YOUR HONOR, I'M IN TRIAL -- THIS IS

21  ABBIE MARSH.

22      I'M IN TRIAL THE 11TH AND THE 16TH THROUGH 18TH HERE

23  IN ARIZONA.

24      MR. RAPP:  MY DAUGHTER IS A COLLEGE SWIMMER AND

25  SHE'S GOT A SWIM MEET ON THE 18TH UP IN SEATTLE; SO I'M

1   ALREADY BOOKED TO GO ON THAT.

2           MR. STEWART:  I MIGHT SEE YOU AT THE AIRPORT.  IS

3   SHE AT THE UNIVERSITY OF WASHINGTON?

4           MR. RAPP:  NO, AT SEATTLE UNIVERSITY.

5           THE COURT:  OKAY.  ONE SECOND.  HOLD ON AGAIN.

6           (BRIEF PAUSE IN PROCEEDINGS.)

7           THE COURT:  COUNSEL, JUDGE HOUSTON.  THE SECOND

8   HEARING DATE NOVEMBER 1ST.

9           MR. STEWART:  OKAY.

10          YOUR HONOR, I HAD ONE THOUGHT.

11          THE COURT:  EXCUSE ME.  BEFORE THAT -- BEFORE, IS

12  EVERYONE CLEAR ON THAT DATE?

13          MR. RAPP:  THE GOVERNMENT IS, YOUR HONOR.

14          MS. GONZALEZ:  JOHN IS FREE.

15          THE COURT:  OKAY.  MR. STEWART.

16          MR. STEWART:  THE ONE QUESTION I HAD, NOW THAT WE'RE

17  KIND OF FLESHING THIS OUT, IN THAT THE FIRST DATE IS GOING TO

18  DEAL WITH POTENTIAL RELEVANT CONDUCT, WOULD IT BE APPROPRIATE

19  FOR THE GOVERNMENT TO FILE SOME TYPE OF A MOTION TO GIVE US

20  ALL KINDS OF A HEADS UP OF KIND OF THE NATURE OF THIS

21  RELEVANT CONDUCT THAT IT'S GOING TO PRESENT SO THAT WE CAN

22  MAYBE BE MORE PREPARED TO MORE EFFICIENTLY DEAL WITH IT, AS

23  OPPOSED TO JUST KIND OF GOING THROUGH ALL OF THIS TESTIMONY

24  AND THEN REALIZING THERE ARE LARGE PIECES OF IT THAT SHOULD

25  HAVE BEEN CARVED OUT TO BEGIN WITH.

1          SO I GUESS THAT'S MORE OF AN ISSUE FOR BOTH THE

2     COURT -- I KNOW FOR DEFENSE COUNSEL, SINCE WE'RE GOING TO

3     HAVE TO, YOU KNOW, RESPOND TO THE ISSUES OF RELEVANT CONDUCT.

4     IF WE HAVE PERHAPS EVEN OBJECTIONS AS TO CERTAIN THINGS EVEN

5     BEING CONSIDERED, WE'D BE IN A POSITION TO MAKE THOSE

6     OBJECTIONS AT THE BEGINNING OF THE HEARING, AND THAT COULD

7     POTENTIALLY SAVE TIME OF GOING THROUGH TESTIMONY IF THE COURT

8     DECIDED THAT CERTAIN TESTIMONY OR EVIDENCE WAS NOT

9     PERMISSIBLE ANYHOW.

10          SO I DON'T KNOW IF THAT WOULD BE SOMETHING THAT

11     MIGHT BE USEFUL, FOR THE GOVERNMENT TO FILE SOME TYPE OF A

12     MEMORANDUM OF SOME TYPE PUTTING FORTH, YOU KNOW, AT LEAST ITS

13     THEORIES AND GENERAL EVIDENCE OF WHAT IT PROPOSES TO PUT

14     BEFORE THE COURT CONCERNING RELEVANT CONDUCT.

15          AND THEN WE WOULD HAVE A LITTLE BIT OF THE ABILITY

16     TO COME PREPARED MORE SPECIFICALLY TO WHATEVER THAT IS, AND

17     EVEN TO LODGE OBJECTIONS THAT PERHAPS COULD BE ADDRESSED AND

18     MIGHT BE ABLE TO SHORTEN THE POTENTIAL TESTIMONY IF THE COURT

19     WERE TO FIND THAT SOME OF THE PROPOSED EVIDENCE OR THEORIES,

20     THERE IS NOT SUFFICIENT BASIS FOR, INSTEAD OF HAVING HOURS OF

21     TESTIMONY ON.

22          THE COURT:  ALL RIGHT.  MR. RAPP, THE COURT CAN DO

23     THAT, OR OTHERWISE THE COURT WILL PERMIT OBJECTIONS TO BE

24     FILED AFTER THE TESTIMONY BEFORE THE NEXT SESSION AND FOR THE

25     COURT TO DETERMINE WHETHER TO STRIKE PORTIONS.

1        MR. RAPP:  OKAY.  I WOULD ONLY NOTE, JUDGE, THAT IT

2   WAS PRETTY CLEAR DURING THE CHANGE OF PLEA THAT DESPITE THE

3   FACT THAT A NUMBER OF THE COUNTS, PRIMARILY THOSE COUNTS

4   PRIOR TO JULY 18TH OF 2013, THOSE -- THAT STRUCTURING COUNT,

5   TRANSACTIONAL MONEY-LAUNDERING COUNT -- TRANSACTIONAL

6   MONEY-LAUNDERING COUNTS, RATHER, THOSE WERE ALL -- IT WAS

7   CLEAR FROM AT LEAST THE WAY THE PLEA PROCEEDED, THAT THOSE,

8   THE GOVERNMENT CONSIDERED THOSE TO BE RELEVANT CONDUCT.  AND

9   IN ADDITION, THE SEVERED COUNT, COUNT 35, WHICH WAS BASICALLY

10  A MORTGAGE FRAUD COUNT, THE GOVERNMENT VIEWS THAT TO BE

11  RELEVANT CONDUCT.

12        AND I THINK ONE COULD ONLY LOOK NO FURTHER THAN THE

13  P.S.R., YOU'LL SEE THAT THE PRESENCE WRITER LAYS OUT ALL

14  OF THAT AS RELEVANT CONDUCT, AND THEN MR. STEWART HIMSELF

15  FILED A MOTION IN -- OBJECTING TO ALL THE DISMISSED COUNTS AS

16  BEING RELEVANT CONDUCT.  SO I THINK THAT'S THE ONLY THING

17  WE'RE FOCUSING ON.

18        WE'RE ONLY FOCUSING ON COUNTS THAT WOULD OTHERWISE

19  BE DISMISSED AS TO TIME AT THE IMPOSITION OF SENTENCING THAT

20  THE DEFENDANT DIDN'T PLEAD TO.  WE VIEW THOSE AS RELEVANT

21  CONDUCT.  AND CERTAINLY THE LOSS -- MORE IMPORTANTLY, MORE

22  IMPORTANTLY, THE LOSS ASSOCIATED WITH THOSE COUNTS UNDER

23  2B1.1 AS RELEVANT CONDUCT.

24        AND I THINK THAT'S -- THAT IS SORT OF LAID OUT IN

25  OUR SINGLE OBJECTION TO THE LOSS AMOUNT.

1    MR. STEWART:  AND I WOULD JUST NOTE, IF THE COURT

2  WILL RECALL, THAT WITH REGARD TO MONEY LAUNDERING AND

3  S.U.A.'S, THE GOVERNMENT HAD THIS THEORY OF BASICALLY UNKNOWN

4  RISK THAT MUST HAVE OCCURRED.  AND IN ADDRESSING THAT DURING

5  THE HEARING, YOU KNOW, THE COURT INDICATED THAT THERE HAS TO

6  BE SOME TYPE OF EVIDENCE BASIS, FACTUAL BASIS, THAT THE

7  GOVERNMENT, YOU KNOW, CAN HINGE ON TO ARGUE THAT THESE THINGS

8  EVEN TOOK PLACE.

9    AND SO TO THE EXTENT THAT THE GOVERNMENT IS GOING TO

10  TRY TO PUT FORTH THAT ARGUMENT DURING THIS FIRST HEARING, IT

11  COULD BE USEFUL, GIVEN THAT THE COURT HAS ALREADY INDICATED

12  THAT YOU NEED TO BE ABLE TO PRESENT SOME FACTUAL BASIS.  AND

13  IF THE GOVERNMENT SUBMITS SOMETHING, AND THERE IS NO SPECIFIC

14  FACTUAL BASIS THAT COULD PUT THE COURT IN THE POSITION TO

15  DETERMINE THAT, YOU KNOW, AS TO THOSE PARTICULAR COUNTS,

16  WHETHER OR NOT A SUFFICIENT FACTUAL BASIS IN TERMS OF EVEN A

17  PROFFER, THE COURT IS NOT GOING TO ENTERTAIN HOURS OF

18  TESTIMONY ON THOSE.

19    OR AS THE COURT INDICATED, WE COULD DEAL WITH IT

20  AFTER THE FACT; BUT THAT MIGHT TAKE TIME FROM THE COURT THAT

21  MIGHT OTHERWISE NOT BE NEEDED.

22    THE COURT:  WELL, THE PROFFER JUST PRESENTED IS THAT

23  THE RELEVANT CONDUCT WILL BE -- WILL INVOLVE COUNTS THAT WERE

24  NOT PLED GUILTY TO AND ALSO ISSUES RELATING TO LOSS AMOUNTS.

25    SHOULDN'T THAT BE SUFFICIENT TO FOCUS ON, COUNSEL?

1          MR. STEWART:  WELL, THE PROBLEM IS WITH THE

2     MONEY-LAUNDERING COUNTS, THE WHOLE ARGUMENT KIND OF LEADING

3     UP TO SOME OF THE HEARINGS WAS THAT THERE WAS NO S.U.A.  AND

4     THE GOVERNMENT HAD NOT PROVIDED ANY -- ANY EVIDENCE, EITHER

5     BY WAY OF PROFFER OF S.U.A.'S TO SUPPORT ANY MONEY-LAUNDERING

6     COUNTS BEFORE JULY OF 2013.  AND SO IT STILL REMAINS THE CASE

7     THAT THE DISCOVERY HAS NOT SHOWN ANY EVIDENCE OF ANY

8     MONEY-LAUNDERING COUNTS.

9          THE GOVERNMENT, WHEN ASKED ABOUT THIS PARTICULAR

10    ISSUE, YOU KNOW, COULDN'T POINT TO ANY EVIDENCE OF ANY OTHER

11    S.U.A.'S FOR MONEY-LAUNDERING, YOU KNOW, COUNTS.  AND SO TO

12    SAY WE'RE GOING TO PROCEED ON TRYING TO PROVE THOSE UP, YOU

13    KNOW, IF THEY CAN AT LEAST MAKE SOME TYPE OF PROFFER IN TERMS

14    OF THE S.U.A.'S THAT SUPPORT ANY OF THE OTHER

15    MONEY-LAUNDERING COUNTS, BUT IN THE ABSENCE OF THAT, IT SEEMS

16    LIKE THEY ARE MISSING A VERY CRITICAL PIECE OF THE

17    MONEY-LAUNDERING COUNTS, THAT THERE IS NO S.U.A. THAT THEY

18    CAN EVEN PROFFER OCCURRED.

19          THE COURT:  MR. RAPP, LAST WORD, AND THEN I'LL --

20          MR. RAPP:  WELL, LOOK, DURING 2011 AND 2012, IT IS

21    TRUE THAT WE CAN'T IDENTIFY A SPECIFIC SEIZURE THAT THIS

22    DEFENDANT WAS INVOLVED IN WHERE HE WAS RIPPING OFF A

23    BULK-CASH SMUGGLER.

24          WHAT WE HAVE CIRCUMSTANTIALLY, THOUGH, IS HIS

25    INVOLVEMENT AS SOMEBODY INTERDICTING BULK-CASH SMUGGLERS AND

1    NEARLY A MILLION DOLLARS IN CASH THAT CANNOT BE TIED OUT TO A

2    LEGITIMATE SOURCE OF INCOME COURSING THROUGH HIS BANK

3    ACCOUNTS, AND SOME OF HIS VERY SUSPICIOUS ACTIVITY OF

4    STRUCTURING CASH DEPOSITS 78 TIMES BETWEEN 2011 AND 2012 ALL

5    IN SOUTHERN CALIFORNIA, NOT WHERE HE WOULD BE RECEIVING

6    RENTAL INCOME; HIS STOPPING -- HIS NOT PAYING TAXES DURING

7    THAT TIME PERIOD.

8         YES, YOU KNOW, CIRCUMSTANTIAL EVIDENCE IS GOOD

9    EVIDENCE, AND CIRCUMSTANTIALLY THERE IS A STRONG CASE THAT

10   THE DEFENDANT WAS ENGAGING IN THE RIPS, OR SKIMMING OF

11   BULK-CASH SMUGGLING PROCEEDS DURING THAT TIME FRAME, BECAUSE

12   THERE IS NO OTHER LEGITIMATE EXPLANATION FOR THE CASH IN HIS

13   BANK ACCOUNTS.  AND SO I THINK WE COULD FLESH THAT OUT WITH

14   WITNESSES ON FRIDAY.

15        THE COURT:  ALL RIGHT.  MR. STEWART, I'M GOING TO

16   PERMIT THE GOVERNMENT TO PRESENT ITS CASE.  IT HAS TO BE IN

17   LINE WITH THE COURT'S PRE-TRIAL ORDERS.

18        THE COURT WILL GIVE THE GOVERNMENT THREE HOURS TOTAL

19   TO PRESENT ITS CASE ON DIRECT EXAMINATION.  YOU CAN FILE --

20   THE DEFENSE CAN FILE AN OBJECTION TO PORTIONS OF THAT -- THAT

21   TESTIMONY PRIOR TO YOUR CROSS-EXAMINATION OF THE WITNESSES.

22   ALL RIGHT.

23        MR. STEWART:  THANK YOU, YOUR HONOR.

24        THE COURT:  ALL RIGHT.  AND WE'LL SET A SENTENCING

25   DATE AT THE NOVEMBER 1ST CONFERENCE.

1          MR. RAPP:  OKAY.

2          MR. STEWART:  ALL RIGHT.

3          MR. RAPP:  JUDGE, CAN YOU REMIND US AGAIN WHAT TIME

4    WE'RE STARTING ON FRIDAY AND WHAT TIME WE'RE EXPECTED TO --

5    WHAT TIME YOU'RE ENDING FOR US.  I HEARD 11:30.

6          THE COURT:  I SAID 11:30 OR 12:00.  LET'S START AT

7    11:30.  IT WILL BE A THREE-HOUR EXAMINATION BY THE

8    GOVERNMENT, TOTAL.

9          MR. RAPP:  OKAY.

10          THE COURT:  ALL RIGHT.

11          MR. RAPP:  THANK YOU, SIR.

12          THE COURT:  AND WE'LL PICK UP ON NOVEMBER 1ST AT

13    9:00 A.M.

14          MR. RAPP:  ALL RIGHT.

15          MR. STEWART:  THANK YOU, YOUR HONOR.

16          MS. GONZALEZ:  THANK YOU.

17          MR. RAPP:  THANK YOU, YOUR HONOR.

18          THE COURT:  GOOD-BYE.

19          WE'RE IN RECESS.

20          (PROCEEDINGS CONCLUDED AT 2:45 P.M.)

21                    --OOO--

22

23

24

25

1                  C E R T I F I C A T I O N

2          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
    QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
3   STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND
    CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN THE
4   AFOREMENTIONED CAUSE; THAT SAID TRANSCRIPT IS A TRUE AND
    CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE
5   FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS
    OF THE UNITED STATES JUDICIAL CONFERENCE.

6
           DATED:  SEPTEMBER 23, 2019, AT SAN DIEGO,
7   CALIFORNIA.

8                              S/CAMERON P. KIRCHER
                               CAMERON P. KIRCHER
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    COMPUTER-AIDED TRANSCRIPTION