RICHARD M. BARNETT, Esq.
A Professional Law Corporation
SBN 65132
105 West F Street, 4th Floor
San Diego, CA 92101
Telephone: (619) 231-1182
Facsimile: (619) 233-3221
Email: richardmbarnett@gmail.com

Attorney for Petitioner

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 16-cr-02892-JAH |
| Plaintiff, | |
| TYRONE CEDRIC DUREN, | Petitioner's response in opposition to the government's motion to dismiss his petition |
| Defendant, | |
| ERNESTO SANCHEZ-BESNEIRIGOYEN, | |
| Petitioner. | |

## **Introduction**

Mr. Sanchez-Besneirigoyen ("Mr. Sanchez") respectfully requests the Court deny the government's motion to dismiss.

This is a criminal forfeiture proceeding. Unlike its civil counterpart, the property is not the defendant. Instead, the proceeding is against the criminal defendant (here,

1

Duren).  Accordingly, only property belonging to the criminal defendant is subject to criminal forfeiture.

As to the property at issue in Mr. Sanchez's petition, it is not criminal defendant Duren's.  Duren admits, "the money [was] obtained from Mr. Sanchez." Dckt. 211 at 3. Indeed, it is undisputed that Mr. Sanchez had possession of the money. *See United States v. Premises Known as 7725 Unity Avenue North, Brooklyn Park, Minn.*, 294 F.3d 954, 956 (8th Cir. 2002) (an ownership interest sufficient for standing "can be shown by *actual possession*, control, title, and financial stake.") (emphasis added).

This is more than enough for standing. *See United States v. $ 191,910.00 in U.S. Currency*, 16 F.3d 1051, 1057-58 (9th Cir. 1994) (the assertion of a possessory interest in seized currency is sufficient to have standing to challenge a forfeiture).  Under binding Ninth Circuit law, "simply alleging an ownership interest is sufficient to give [the petitioner] standing to challenge the forfeiture under § 853(n)." *United States v. Alcaraz-Garcia*, 79 F.3d 769, 774 n.10 (9th Cir. 1996).  Mr. Sanchez has made that allegation.  As such, pursuant to 21 U.S.C. § 853(n), his petition is not subject to dismissal.

## **Discussion**

**A.     Overview of the relevant law.**

Criminal forfeiture is governed by 21 U.S.C. § 853.  For defendants convicted of drug offenses, the statute authorizes forfeiture of the proceeds "derived from" and "property used [in]" committing the crime. *See* 21 U.S.C. § 853(a).

In contrast to its civil counterpart, criminal forfeiture operates *in personam* – rather than *in rem* – against the assets of the defendant as part of his or her punishment. *See United States v. $ 814,254.76 in United States Currency*, 51 F.3d 207, 210 (9th Cir. 1995) ("A criminal forfeiture is an *in personam* judgment against a person convicted of a crime"). And "[b]ecause the [] criminal forfeiture statute for drug offenses acts *in personam*, it permits the forfeiture of the [criminal] defendant's interests only, *not the property of innocent parties*." *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005) (emphasis added, citation omitted).

Thus, section 853 allows an innocent third-party to file a petition challenging the criminal forfeiture. To establish standing, the petitioner need only "alleg[e] an ownership interest" in the subject property. *Alcaraz-Garcia*, 79 F.3d at 774 n.10. Thereafter, "the sole legal issue before the court is the ownership interests of the competing parties" – i.e., whether the petitioner or the defendant had the superior interest. *Nava*, 404 F.3d at 1124. (internal quotations and citations omitted). To resolve this issue, the district court must conduct an ancillary hearing under 21 U.S.C. § 853(n). *See id.* at 1125. During the hearing, the petitioner has a right to present evidence in support of his or her ownership claim. *See id.*

And the petitioner will prevail "upon showing, by a preponderance of the evidence, that he possessed a vested or superior legal right, title, or interest in the property at the time the criminal acts took place[.]" *Id.* And this issue – who had the

superior interest – is determined under state law. *See id.* at 1127 ("'[s]tate law determines whether Claimants have a property interest'") (citation omitted).

In other words, to properly apply federal law – i.e., 21 U.S.C. § 853(n) – the Court must first determine the relevant property interest under state law. *See United States v. Lester*, 85 F.3d 1409, 1412-13 (9th Cir. 1996). That state law determines the claimant's substantive property-rights, which can then be placed into the federal forfeiture equation. *See id.* The basic rule can be expressed as follows: federal law holds that a third-party claimant's superior "legal right, title, or interest in the property" *cannot* be forfeited, 21 U.S.C. § 853(n)(6)(A), while state law defines the property interest and whether it is considered superior.

**B.     Under California law, Mr. Sanchez's bailment interest was and is superior to Duren's.**

Here, under California law, Mr. Sanchez was a bailee of the subject money at the time of Duren's crime. Thus, Mr. Sanchez's interest was superior to Duren's.

"A bailment is the deposit of personal property with another, usually for a particular purpose." *Alcaraz-Garcia*, 79 F.3d at 774 n.11; *see also Niiya v. Goto*, 181 Cal. App. 2d 682, 687 (1960) ("In a broad sense [] bailment is the delivery of a thing to another for some special object or purpose, on a contract, express or implied, to conform to the objects or purposes of the delivery which may be as various as the transactions of men.") (citation omitted).

As relevant, it is undisputed the money at issue was delivered to Mr. Sanchez for purposes of transporting it to Mexico. This is a textbook example of a bailment – Mr. Sanchez as bailee and Mr. Aragon as bailor. *See id.* And vis-a-vis anyone other than the bailor, a bailee has a superior legal interest in the bailed property he or she is charged with safeguarding. *See id.* As such, given his assertion of a possessory interest, Mr. Sanchez's standing is clear. *See Alcaraz-Garcia*, 79 F.3d at 774 n.10.

**C.  The government's arguments are misplaced.**

    1.  <u>At the current pleading stage, the government cannot rely on Duren's admission that the money was drug proceeds.</u>

The government disputes this proposition. Its principal argument is that the "property involved was drug trafficking proceeds" and thus there could be no valid bailment under California law. Dckt. 271 at 5. But Mr. Sanchez does not concede the money at issue was drug proceeds. Thus, at this pleading stage, the government cannot rely on that disputed fact. *See United States v. Farley*, 919 F. Supp. 276 (S.D. Ohio 1996).

On this point, *Farley* is instructive. There, the government initiated a criminal forfeiture proceeding seeking $44,000 seized from the defendant as drug proceeds. *See id.* 277-78. Petitioner Ortiz filed a claim for the money. The government responded "that a hearing in this matter [was] unnecessary because the petitioner fail[ed] . . . to meet the standing requirements of § 853(n)." *Id.* at 278. It claimed, "the petitioner lacks standing under the statute because this Court found that the $ 44,000.00 at issue

5

constituted drug proceeds and the petitioner cannot contest the factual basis which determined forfeitability." *Id.*

The court rejected the argument, explaining: "Section 853(n) presents a reasonable process whereby a third party may assert an interest in the property subject to forfeiture. Confining a third party to the facts as determined by another's guilty plea when that third party is statutorily prohibited from participating in the proceeding, *see* 21 U.S.C. § 853(k)(2), flies in the face of logic as well as basic due process." *Id.*

Accordingly, "[w]hile it is true that one never acquires a property right to proceeds of illegal activity, it is equally true that a petitioner has the right to contest the constituency of the property to which he lays claim. Ortiz states under penalty of perjury that the U.S. currency is his. He further explains from whence the currency arose and why he possessed the currency on the date it was seized. His allegations will suffice to constitute both procedural and substantive standing under 21 U.S.C. § 853(n)." *Id.* at 279 (citation omitted).

The same is true here. Mr. Sanchez's petition sets forth sufficient facts demonstrating that his possessory interest in the money was superior to Duren's. *See United States v. Wilson*, 659 F.3d 947, 954 (9th Cir. 2011) ("The Government is merely standing in [the criminal defendant's] shoes, and its interest cannot exceed [the criminal

defendant's] interest."). For purposes of establishing standing, nothing further is required.[1]

### 2. To establish a bailment, there is no personal delivery requirement.

Nor does the fact that "Aragon failed to deliver or give the [] money to petitioner" alter this conclusion, as the government claims. Dckt. 271 at 6. The government posits a rule in which a bailment exists only if the bailor personally and physically hands the property to the bailee. *See id.* But it cites no authority for the proposition, and none exists. Indeed, the premise is non-sensical.

Surely, an individual can mail a package for safekeeping to a friend, or ask another friend to deliver it. The intermediary does not defeat the bailment. As the government notes, the bailment is created upon the "delivery of [the] thing." Dckt. 271 at 6. And here, for purposes of standing, the petition establishes that the thing (the money) was delivered to Mr. Sanchez for the special purpose of delivering it to Mexico for the benefit of Aragon. Again, that is a textbook bailment. Thus, the government's "delivery" argument is misplaced.

### 3. Mr. Sanchez is not an unsecured creditor.

So too is its claim about unsecured creditors. According to the government, "Petitioner may be an unsecured creditor of Duren, but he has no legal interest in the

---

[1] This also answers the government's final argument that, "[a]s petitioner was transporting drug trafficking proceeds, his claim necessarily must fail." Dckt. 271 at 8. To the contrary, for the reasons just discussed, this allegation has no impact on Mr. Sanchez's standing or ability to state a claim.

7

subject properties." Dckt. 271 at 6. Thus, it argues, he lacks standing. This is incorrect.

First, in both *United States v. Reckmeyer*, 836 F.2d 200, 206 (4th Cir. 1987), and *United States v. Mageean*, 649 F. Supp. 820, 829 (D. Nev. 1986), *aff'd*, 822 F.2d 62 (9th Cir. 1987), the courts held that unsecured creditors had standing under 21 U.S.C. § 853(n) to challenge an order of criminal forfeiture. As such, the government's argument is actually a concession of standing.

Second, the government works hard to confuse the property interest alleged in Mr. Sanchez's petition. He is principally a bailee of Mr. Aragon, not a creditor of Duren.

Unlike a bailor-bailee relationship, a general creditor enters into a financial transaction with a debtor, such that the creditor no longer owns the subject property, but rather a debt. *See* Cal. Civ. Code § 3430 ("A creditor, within the meaning of this title, is one in whose favor an obligation exists, by reason of which he is, or may become, entitled to the payment of money."). In the criminal forfeiture context, this creditor-debtor arrangement generally precludes the creditor from meeting his or her burden under section 853(n)(6). He or she cannot show an "interest in specific forfeited property," because its ownership has already been transferred to the debtor. *See*, *e.g.*, *United States v. BCCI Holdings (Lux.), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995) ("a *general creditor* can never have an interest in specific forfeited property, no matter what the relative size of his claim vis-a-vis the value of the defendant's post-forfeiture estate.") (emphasis added).

8

The converse is true in the bailor-bailee arrangement. By virtue of the bailment, "*the identical thing bailed or the product of, or substitute for, that thing*, together with all increments and gains, is to be returned or accounted for by the bailee[.]." *Goto*, 181 Cal. App. 2d at 687 (emphasis added); *see also* Cal. Civ. Code § 1822 ("A depositary [bailee] must deliver the thing to the person for whose benefit it was deposited, on demand, whether the deposit was made for a specific time or not").

The California Supreme Court provides a helpful summary of the distinction between creditors and bailors, as applied to cash transactions:

"When money or its equivalent is deposited in a bank without any special agreement, the law implies that it is to be mingled with the other funds of the bank, the relation of *debtor and creditor* is created between the bank and the depositor, and the deposit is general. In such a transaction the bank becomes the owner of the fund. When, on the other hand, money or its equivalent is so deposited with an accompanying agreement that the identical thing deposited shall be returned . . . the relation thus created is *not* that of debtor and creditor. Such a transaction is a special deposit [bailment], and the bank is liable [] as bailee. In such a case the fund is a trust fund, the bank acquires no title thereto, and is a mere trustee for the safekeeping[.]" *Cabrera v. Thannhauser & Co.*, 183 Cal. 604, 607-08 (1920) (emphasis added).

The upshot of the bailment relationship, therefore, is that the bailor and bailee – unlike a general creditor – will have a superior interest in the subject property, including money. Even if the bailed property (be it cash or cars) has been sold to a third party or

9

otherwise transferred, the bailment interest under California law remains superior and unaltered because such a transfer would be unlawful.

On this issue, *Harpending v. Meyer*, 55 Cal. 555 (1880) is instructive. The case involved the conversion of jewelry belonging to the plaintiff, which had been deposited for safekeeping with a bailee. *See id.* at 557. It was a gratuitous bailment and there was no agreement between the parties requiring notice before the bailor could retake possession. *See id.* at 557-58. The bailee, however, pawned the jewelry with the defendant and, not having redeemed the pledge, defendant then sold it to yet another person. *See id.* at 557.

The California Supreme Court held that the defendant's possession was tortious and constituted a conversion, because it was obtained from the bailee who had no right to transfer it. *See id.* at 560-61. In other words, even as to a downstream purchaser, the bailor's property right remained superior. *See id.*

Critically, this same rule applies to cash bailments under California law. In *Bank of America Nat'l Trust & Sav. Asso. v. California Sav. & Commercial Bank*, 218 Cal. 261, 276 (1933), the California Supreme Court held: "A special deposit [bailment] of money augments the assets of the [bailee] by the amount thereof. The [bailee] is under a duty to retain in cash at all times, and not to use in its general business, an amount equal to such [bailment]. Therefore, as its balance of cash is reduced, it must be presumed that its general funds are being consumed, rather than that its special funds, which it has no right to pay out, are being dissipated."

The court continued: "The special depositors [bailors] are in effect *tracing and reclaiming their own property, rather than asserting a preference in the [bailee's] general assets*." *Id.* (emphasis added). Thus, "it is not required that there be a physical segregation of money to constitute a special deposit [bailment]." *Id.* at 278.

As a bailee under California law, therefore, Mr. Sanchez never lost his possessory interest in the bailed property. And Duren never acquired any right to dispose of the money or use it to buy real property. Indeed, his doing so was itself an unlawful conversion. *See id.*; *Meyer*, 55 Cal. at 561. Thus, contrary to the government's argument based on creditors, the specific property purchased by Duren would necessarily be deemed subject to the bailment interest. *See id.*; *Goto*, 181 Cal. App. 2d at 687 ("the identical thing bailed or the product of, *or substitute for*, that thing . . . is to be returned or accounted for by the bailee[.]") (emphasis added).

In short, by this third-party claim, Mr. Sanchez is now "in effect tracing and reclaiming" the property as to which he was the legitimate bailee. *California Sav. & Commercial Bank*, 218 Cal. at 276. As such, standing is established.

## Conclusion

Mr. Sanchez has standing. The motion to dismiss should be denied.

Dated: December 19, 2019                    /s/ *Richard Barnett*
                                            Richard Barnett

11