UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>v.<br><br>TYRONE CEDRIC DUREN<br><br>                          Defendant. | Case No.: 3:16-cr-02892-JAH<br><br>**ORDER DENYING MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)**<br><br>**(ECF No. 358)** |

## I.    INTRODUCTION

Defendant Tyrone Cedric Duren ("Defendant") filed a *pro se* Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 358 ("Mot."). The Government opposed the motion, ECF No. 363 ("Opp'n"), and Defendant replied, ECF No. 367 ("Reply"). Based upon the law and the record, and for the reasons set forth below, the Court **DENIES** Defendant's Motion.

## II.    BACKGROUND

On April 29, 2019, Defendant pleaded guilty to ten counts of Transactional Money Laundering in violation of 18 U.S.C. § 1957(a), eight counts of False Statements to Federal Agents in violation of 18 U.S.C. § 1001(a)(2), and one count of Tax Evasion in violation of 26 U.S.C. § 7201. ECF No. 213. After four days of post-plea evidentiary hearings, the Court sentenced Defendant to an above the Guideline range sentence of 130-months in

custody, followed by three years of supervised release. ECF No. 336 ("Amended Judgment"). The Ninth Circuit Court of Appeals affirmed Defendant's sentence. ECF No. 341 ("Mandate"). Defendant is currently incarcerated at FCI Sheridan in Oregon, and his expected release date is January 19, 2029.[1]

### III.  LEGAL STANDARD

A court generally may not correct or modify a prison sentence once it has been imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). Defendant seeks modification of his sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). The Amendment to 18 U.S.C. § 3582(c)(1)(A) provides defendants with two direct routes to court: (1) file a motion after fully exhausting all administrative rights to appeal a failure of the Bureau of Prison's decision not to bring a motion on defendant's behalf, or (2) file a motion after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *See* 18 U.S.C. § 3852(c)(1)(A). Thereafter, the Court may determine whether (1) "extraordinary and compelling reasons warrant such a reduction" in the movant's term of imprisonment; (2) "a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) a reduction would be consistent with the factors set forth in 18 U.S.C. § 3553(a) (the "3553(a) factors").[2] *Id.* The Commission also requires the

---

[1]  Federal Bureau of Prisons, FIND AN INMATE, ://www.bop.gov/inmateloc/ (last visited August 15, 2024). The Court takes judicial notice of the BOP website and information contained therein. *See United States v. Basher*, 629 F.3d 1161, 1165 n.2 (9th Cir. 2011) (taking judicial notice of the BOP inmate locator that is available to the public).

[2]  Section 3553(a) factors include, but are not limited to, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; to provide the defendant with

defendant not pose a danger to the safety of the community as provided in 18 U.S.C. § 3142(g). *Id*. §1B1.13(a)(1)(B)(2).

## IV.  DISCUSSION

**A.  Exhaustion of Administrative Remedies**

A court may reduce a term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Here, Defendant sent a written request for compassionate release on November 11, 2023, to the Warden of FCI Sheridan, and has not received a response to his request. Ex. 2, ECF No. 358-1 at 5. Because this action was filed over thirty days from Defendant's request, he has satisfied the requirement that he exhaust any available administrative remedies. Accordingly, the Court proceeds to review Defendant's motion on the merits.

**B.  Defendant Fails to Demonstrate Extraordinary and Compelling Reasons Warranting Compassionate Release**

Defendant argues a combination of his medical conditions, the heightened risk of facing severe illness upon contracting COVID-19, and the harsh prison conditions at FCI Sheridan are "extraordinary and compelling" circumstances warranting relief. Mot. at 5-6. The Government argues that "the speculative possibility of COVID-19, even when combined with defendant's health issues and his refusal to receive a booster, is not an 'extraordinary and compelling' reason to release defendant early from his sentence, particularly considering BOP's efforts to contain the spread of COVID-19 in its facilities." Opp'n at 13.

///

---

needed medical care in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

The relevant Sentencing Commission policy statement sets forth several "extraordinary and compelling reasons" a Court may consider alone or in combination with other factors: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) the defendant being a victim of abuse while in custody; (5) other reasons a court finds to be "similar in gravity to" Paragraphs (1)–(4), or; (6) an unusually long sentence. U.S.S.G. §1B1.13(b)(1)-(6).[3]

### i. Defendant's Medical Conditions Are Not Considered an Extraordinary and Compelling Reason Warranting Relief

Under §1B1.13(b), certain medical circumstances can be categorized as "extraordinary and compelling": (1) a terminal illness; (2) a serious physical or mental condition or impairment that "substantially diminishes the ability of the defendant to provide self-care within the . . . facility and from which he . . . is not expected to recover"; (3) a medical condition that "requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," or; (4) due to an actual or imminent risk of an ongoing infectious disease or ongoing public health emergency, defendant is at increased risk of suffering severe medical complications or death that cannot be timely mitigated. U.S.S.G. §1B1.13(b)(1)(A)-(D).

Defendant argues his severe asthma, uncontrolled hypertensive heart disease,[4] and two autoimmune disorders (idiopathic thrombocytopenia purpura ("ITP") and red blood

---

[3] The Ninth Circuit in *United States v. Aruda*, found there was no applicable policy statement for compassionate release motions initiated by defendants because U.S.S.G. §1B1.13 referred only to motions filed by the BOP Director. 993 F.3d 797, 802 (9th Cir. 2021). However, in November 2023, the Sentencing Commission passed Amendment 814, clarifying that the current policy statement is applicable to motions filed by both the Director of the BOP and a defendant. U.S. Sentencing Commission, Amendment 814 (Effective Nov. 1, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf ("[T]he amendment extends the applicability of the policy statement to defendant-filed motions [.]")

[4] Hypertensive heart disease is due to chronic high blood pressure. *United States v. Jackson*, 847 Fed.Appx. 792, 795 (11th Cir. 2021).

cell distribution width), "combined with the resurgence of COVID-19" are extraordinary and compelling reasons warranting relief. Mot. at 7. Defendant claims medical care is not being provided, putting his health at risk of serious deterioration or death. *Id.* The Court discusses Defendant's medical conditions in the order presented in the Motion.

First, Defendant argues his hypertension is "uncontrolled" and has been "unmanaged" throughout his incarceration, putting him at an "increased risk of early death, long-term health effects and/or shortened lifespan[.]" *Id.* Defendant's medical records confirm a diagnosis of hypertensive heart disease without heart failure. *See* ECF No. 366 ("M. Rec.").

Despite Defendant's argument, "[d]iagnoses for chronic conditions that are treatable by the BOP do not establish extraordinary and compelling reasons that merit compassionate release, even in light of the COVID-19 pandemic." *United States v. Esparza*, No. 1:15-CR-00319-JLT-SKO-1, 2024 WL 216558, at *2 (E.D. Cal. Jan. 18, 2024) (collecting cases). This Court and other district courts distinguish between essential hypertension and pulmonary hypertension, a medical condition specific to the lungs, finding the former is not generally a basis for compassionate release. *United States v. Villareal*, No. 8-cr-1332-JAH-2, 2022 WL 874967, at *4 (S.D. Cal. Mar. 24, 2022) (collecting cases), *aff'd*, 2023 WL 8044848 (9th Cir. Nov. 21, 2023). Defendant does not claim to suffer from pulmonary hypertension and appears to suffer from essential hypertension. Defendant's contention that his blood pressure is unmanaged is not directly rebutted by the Government. However, according to the medical records, Defendant's hypertension is monitored by visits to the FCI Sheridan Medical facility and treated with prescriptions for hydrochlorothiazide, losartan potassium and metoprolol. M. Rec. at 13, 22. As such, Defendant's argument that hypertension is an extraordinary and compelling reason warranting relief is mitigated by the BOP's ability to provide regular treatment for his condition and because FCI Sheridan has zero infections reported, *see infra* Section IV.B.ii, minimizing his chance of infection.

///

Second, Defendant argues he suffers from severe asthma, "which has been identified as a risk factor for severe illness or death from [C]ovid-19." Mot. at 9. However, Defendant's asthma is managed under a doctor's supervision, and his medical record "notes good control" with a prescription. M. Rec. at 13. The record also notes Defendant does not need to utilize a rescue inhaler on a daily basis. *Id.*

Third, Defendant argues ITP[5] and a high red blood cell distribution width[6] are rare autoimmune disorders that heighten his risk of severe illness or death if he were to contract COVID-19. Defendant's failure to provide any evidence that he currently suffers from any autoimmune disorder is fatal to his argument. Defendant's medical records indicate a history of ITP, however the condition is labeled "resolved" as of May 9, 2023, and Defendant provides no current medical diagnosis to the contrary. M. Rec. at 47. In fact, the only medical record provided by Defendant to evidence these conditions is a blood work chart dated June 6, 2021, containing no medical diagnosis in association. ECF No. 358-1 at 2-3. Defendant also seems to assert the low platelet count shown in the lab report attached to his Motion is evidence of ITP, Mot. at 10, however the Court is not in the position to decipher or interpret a diagnosis based on a lab report. *Cf. Hatfield v. Berryhill*, No. 2:17-cv-00105-TLF, 2017 WL 4161690, at *6 (W.D. Wash. Sep. 18, 2017), *aff'd*, 768 F. App'x 629 (9th Cir. 2019) ("Without a medical source's interpretation of or diagnosis based on that objective medical data, . . . this Court is not in a position to evaluate it[.]")

---

[5]   Idiopathic thrombocytopenia purpura, or ITP, is a bleeding disorder in which the immune system destroys platelets. *Dengue Glossary and Acronyms*, CDC, https://www.cdc.gov/dengue/training/cme/ccm/Dengue_Glossary_F.pdf (last visited August 8, 2024). For purposes of this motion, the Court takes judicial notice of information available on the Center for Disease Control and Prevention's website. *See* Fed. R. Civ. P. 201(b).

[6]   A red blood cell distribution width test measures the differences in the volume and size of red blood cells. *RDW (Red Blood Cell Distribution Width)*, MedlinePlus, https://medlineplus.gov/lab-tests/rdw-red-cell-distribution-width/ (last visited Aug. 8, 2024).

(citation omitted). Similarly, Defendant asserts that a high red blood cell distribution width is an autoimmune disease that places him at an increased risk of illness. Defendant does not cite—and the Court cannot find—any authority or medical journal that states that a high red blood cell distribution width that exceeds the normal range is an autoimmune disease. Finally, Defendant's concerns stem from his April 2022 lab report, however, his August 2023 lab report indicates a red blood cell distribution width within the normal range. M. Rec. at 59.

For these reasons, Defendant has failed to show that his conditions individually amount to extraordinary and compelling circumstances warranting relief.

### ii. The Conditions at FCI Sheridan Are Not an Extraordinary and Compelling Reason Warranting Reduction

Defendant argues that COVID-19 is an ongoing, public health crisis, that prison confinement fosters an environment conducive to the spread of the disease, and his medical conditions put him at increased risk of severe complications or death. Mot. at 12-17. In support, Defendant provides CDC statistics of increased hospitalization rates in the state of Oregon and news reports covering COVID-19 variants that emerged in 2023. Defendant also alleges "because he suffers from ITP, a third or fourth vaccine has shown to likely exacerbate his already defective immune tolerance leading to other complications." Mot. at 10. The Government contends the BOP "has taken aggressive steps to protect inmates' health and to keep COVID-19 out of its facilities." Opp'n at 8. The Government further contends that Defendant is protected from COVID-19 by two doses of the vaccine, and his refusal to accept a third dose of the vaccine "undercuts his claim" of extraordinary and compelling circumstances, asserting "speculative concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling." *Id.* at 10-11.

The Court is unpersuaded by general and speculative concerns regarding COVID-19. *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"); *United States v. Esparza*, No.

17cr1101-JAH, 2020 WL 2838732, at *2 (S.D. Cal. Jun. 1, 2020) (noting general concerns about exposure to COVID-19 alone do not establish eligibility for compassionate release). Although the Court recognizes that moderate to severe asthma and hypertension may increase Defendant's risk of severe COVID-19 illness, Defendant provides no evidence of an imminent risk of a COVID-19 outbreak at FCI Sheridan.  The statistics and news publications cited by Defendant evidence the existing prevalence of COVID-19 as a virus in general, not that FCI Sheridan is at a uniquely imminent risk of an outbreak.  In fact, BOP statistics show that as of August 8, 2024, there are zero open cases of COVID-19.[7] Federal Bureau of Prisons, *Inmate COVID-19 Data*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Aug. 8, 2024).  Moreover, the risk of COVID-19 has already been partially mitigated by the BOP, as over half of the inmates at FCI Sheridan are fully inoculated and Defendant himself has received two doses of the Moderna COVID-19 vaccine.  *Id.*; M. Rec. at 27.  When a defendant is vaccinated, there is a "rebuttable presumption that the risk of severe harm from COVID-19 is not [] 'extraordinary and compelling[.]' " *United States v. George*, No. 1:17-CR-00030-JLT, 2022 WL 17812892, at *2 (E.D. Cal. Dec. 19, 2022) (citing *United States v. Smith*, 538 F.Supp.3d 990, 999 (E.D. Cal. May 11, 2021)).  To further support his claims, Defendant cites to a New York Times article, asserting that "[p]ast doses of the COVID vaccine will not protect [him] against the current strains[,]" and "[v]accine efficacy wanes after three to sixth months." Reply at 7.  On the one hand, the CDC recommends "[p]eople aged 12 years and older who got Pfizer-BioNT or Moderna COVID-19 vaccines before September 12, 2023 . . . should get 1 updated . . . vaccine." *Staying Up to Date with COVID-19 Vaccines*, CDC, https://www.cdc.gov/covid/vaccines/stay-up-to-date.html (last

---

[7]  This Court takes judicial notice of the BOP coronavirus update and considers the number of cases reported by the BOP. *United States v. Miles*, No. 2:17-cr-00127-KJM, 2020 WL 3256923, at *1, n.2 (E.D. Cal. June 16, 2020) (explaining that like "other courts, this court takes judicial notice of the information presented by the BOP at https://www.bop.gov/coronavirus/") (citation omitted).

visited July 25, 2024). On the other hand, the fact that Defendant refused a booster vaccine offered by the BOP on April 22, 2022, undermines any merit this argument may have held. *See Esparza*, 2024 WL 216558, at *3 ("[C]ourts have 'nearly uniformly denied' compassionate release where 'an inmate cites the risk of contracting COVID-19 as a basis of relief but refuses to receive a vaccine.' ") (citing *United States v. McCarns*, No. 2:08-CR-00116-KJM-5, 2023 WL 5487428, at *3 (E.D. Cal. Aug. 24, 2023)). Defendant's argument that ITP "makes it implausible to consider taking additional covid-19 vaccines" is not well-taken as he provides no evidence that he is currently suffering from ITP or that ITP precludes the administration of a COVID-19 vaccine. Nor does Defendant provide a physician's order that a third vaccine is incompatible with his health conditions. *See United States v. Gerrans*, No. 18-cr-00310-EMC-1, 2023 WL 7637353, at *5 (N.D. Cal. Nov. 14, 2023) ("[W]here the inmate can show that there is a real and serious health risk in taking the vaccine, his refusal should not prevent compassionate release.") (citation omitted).

Accordingly, Defendant has failed to show that the risk of contracting COVID-19 at FCI Sheridan, in combination with his existing medical conditions are "extraordinary and compelling" reasons warranting a modification of his sentence.

### iii. Harsh Prison Conditions at FCI Sheridan and the Combination of Defendant's Circumstances Are Not Extraordinary and Compelling

Defendant claims COVID-19 lockdown policies create harsher prison conditions, restricting inmate's visitation from family, decreasing programs, and limiting access to computers, among other confinement protocols. Mot. at 17. He further argues these harsh conditions in combination with his medical circumstances are extraordinary and compelling. *Id.* The Government rebuts that "conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently 'extraordinary and compelling' to warrant compassionate release." Opp'n at 13.

The Sentencing Commission's policy statement provides a catch-all provision, allowing the court to consider "other reasons of similar gravity, either independently or collectively" that may be extraordinary and compelling. U.S.S.G. §1B1.13(b)(5).

However, circumstances that affect inmates equally are not a basis for compassionate release. *See United States v. Samal*, No. CR18-0214JLR, 2023 WL 2579887, at *4 (W.D. Wash. Mar. 16, 2023) (collecting cases). In the same vein, this Court joins other district courts in rejecting the argument that harsher prison conditions resulting from COVID-19 warrant a sentence reduction. *Id.* Therefore, Defendant's contention that harsher prison conditions weigh in favor of compassionate release is unpersuasive.

As each circumstance offered by Defendant, *supra* IV.B.i, has independently failed to amount to extraordinary and compelling, the combination of each is no more persuasive. Accordingly, the Court finds that Defendant has not met his burden to demonstrate extraordinary and compelling circumstances warranting compassionate release.

**C.   U.S.S.G. Amendment 821**

The Government's opposition addresses the applicability of Amendment 821 to Defendant's sentence, asserting that because Defendant received an upward adjustment at sentencing for Aggravating Role, the newly implemented downward adjustment under U.S.S.G. §4C1.1(a) is inapplicable. Opp'n at 14. Section 4C1.1(a) of the Sentencing Guidelines requires, among other things, that "the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848." Opp'n at 15 (citing U.S.S.G. §4C1.1(a)(10)). In reply, Defendant provides revised sentencing calculations and asserts that application of Amendment 821 results in his current sentence exceeding the Guideline range "by "approximately 8% respectively 10 months above the maximum sentence range for the highest offense level." Reply at 13.

Part B[8] of Amendment 821 added U.S.S.G. §4C1.1(a) which provides a two-point decrease in offense level for zero-point offenders who meets "all of the following criteria"

---

[8]   Part A of Amendment 821 is inapplicable because Defendant did not "commit[ ] the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. §4A1.1(e).

as set forth in U.S.S.G. §4C1.1(a)(1)-(10).  As noted by the Government, "[c]ourts have unanimously interpreted this section, and similar sections throughout the guidelines, as disqualifying a defendant who does not meet *either* one of the criteria in (a)(10) so that an aggravating role alone disqualifies a defendant from the zero-point offender reduction." Opp'n at 15 (emphasis in original) (citing *Pulsifer v. United States*, 601 U.S. 124 (2024)). The Supreme Court in *Pulsifer* read the safety valve provision of § 3553(f) in the disjunctive.[9]  That is, "a person fails to meet the requirements (and so cannot get relief) if he has any one of the three [requirements][.]"  *Pulsifer*, 601 U.S. at 127-128.  Here, U.S.S.G. §4C1.1(a)'s construction mirrors the safety valve provision, as such, the Court agrees with other sister courts interpreting this provision disjunctively.  *United States v. Martin*, No. 2:15-cr-00235-TLN, 2024 WL 2189635, at *2 (E.D. Cal. May 15, 2024) (citing *United States v. Arroyo-Mata*, No. 09-13, 2024 WL 1367796, *2 n.6 (N.D. Ga. Apr. 1, 2024)).  Accordingly, the Court finds Defendant is not eligible for a sentence reduction pursuant to Amendment 821, as U.S.S.G. §4C1.1(a)(10) requires Defendant did not receive an adjustment under §3B1.1 for Aggravating Role.

**D.    § 3353(a) Factors**

Assuming the motion presents extraordinary and compelling circumstances, or Part B of Amendment 821 applies, a sentence reduction must be consistent with the factors set forth in § 3553(a).  Here, Defendant was sentenced to an above the Guideline range of 130-months after a four-day post-plea evidentiary hearing.  The Court found that Defendant's use of a government vehicle, his position of trust and connection to traffickers to commit the charged conduct, and because this occurred during the course of his employment amounted to a "significant abuse of trust" that "not only speaks poorly for [Defendant], but it damages the image of other law enforcement officers[.]" Tr. Aug. 5, 2020, ECF No. 323

---

[9]     The safety valve provision requires in pertinent part "the defendant does not have – (A) more than 4 criminal history points, . . . ; (B) a prior 3-point offense, . . . ; and (C) a prior 2-point violent offense[.]"  18 U.S.C. § 3553(f)(1).

at 20. In essence, the Court determined that the nature of Defendant's conduct in committing the charges he pled guilty to was not fully contemplated by the Sentencing Commission in establishing the Sentencing Guidelines. As such, the nature and circumstances of the offense, and the need to deter future criminal conduct and adequately reflect the seriousness of the offense warrants the sentence imposed. The Court declines to exercise its discretion to reduce Defendant's sentence.

## V.  CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED Defendant's Motion for Compassionate Release is **DENIED.**

**IT IS SO ORDERED.**

DATED: August 19, 2024

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE